UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| AMERICAN POSTAL WORKERS UNION, AFL-CIO, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil No. 05-1771 (HHK) |
| UNITED STATES POSTAL SERVICE, | ) ) ) |
| Defendant. | ) ) |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR CONSOLIDATION AND STAY**

The American Postal Workers Union, AFL-CIO, ("APWU") opposes the United States Postal Service's motion to dismiss or consolidate and stay the APWU's complaint seeking enforcement of a labor arbitration award. The Postal Service's arguments for dismissal without prejudice or a stay of the APWU's suit are unjustified and unsupported. There are no material common issues of fact or law to be discerned that justify the resulting delay from consolidating this matter with <u>APWU v. USPS</u>, Case No. 04-1404 in which a motion to dismiss has been pending for almost a year. Accordingly, the Postal Service's motion should be denied.

Date: December 15, 2005            Respectfully submitted,

O'DONNELL, SCHWARTZ & ANDERSON, P.C.

By:_____
   Melinda K. Holmes (DC Bar # 458043)
   1300 L Street N.W., Suite 1200
   Washington, DC 20005-4178
   (202) 898-1707/ FAX (202) 682-9276
   mholmes@odsalaw.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN POSTAL WORKERS UNION, AFL-CIO, ) ) ) ) | |
| Plaintiff, ) ) ) | |
| v. ) ) | Civil No. 05-1771 (HHK) |
| UNITED STATES POSTAL SERVICE, ) ) ) | |
| Defendant. ) ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR CONSOLIDATION AND STAY**

Before the Court is a thinly-veiled effort by the United States Postal Service to dodge, or at least delay, a loss in a labor arbitration. The American Postal Workers Union, AFL-CIO ("APWU") has filed suit seeking the Court's enforcement of an arbitration award that was rendered through a mutually-designed arbitration procedure for addressing the specific grievance decided by the award. A copy of that award is attached at Exhibit A. Having lost the arbitration, the Postal Service has thrown up innumerable hurdles to implementation of the arbitration award, and the Postal Service's instant motion is another such hurdle. As with its other efforts at avoiding the result dictated by the award, there is no validity to the Postal Service's current claims that the APWU's lawsuit to enforce the award should be dismissed or stayed.

The APWU's suit is properly before the Court at this time, and there is no jurisdictional bar to the APWU's suit as the Postal Service claims. The parties have between them a contract specifically providing for the arbitration of the dispute decided by the arbitration award at issue. The Court has, in accordance with Section 1208 (b) of the Postal Reorganization Act of 1970,

jurisdiction to enforce a postal labor arbitration award. The Court's jurisdiction is not preempted by that of the National Labor Relations Board ("NLRB"). There is no authority that even suggests that questions about the remedy in an award, to the very limited extent those can be explored by the Court, are jurisdictional. To the contrary, any legitimate claims about finality of the award are properly raised as affirmative defenses, but not in a motion to dismiss; other claims about exhaustion and preemption are simply unfounded. The Court should, therefore, deny the Postal Service's motion.

I.  BACKGROUND

In order to avoid summary judgement, the Postal Service has set out facts and appended evidence for "purposes of context," but which it asserts are immaterial. In the same vein, the APWU recites the following:

   A.  **APWU v. USPS, Case No. 04-1404**

In APWU v. USPS, Case No. 04-1404, currently pending before this Court, the APWU is seeking to have the Court compel arbitration in accordance with a settlement agreement expressly providing for such arbitration. The Postal Service has not answered the APWU's complaint, but has moved to dismiss the complaint or have it stayed pending a decision by the NLRB on an unrelated issue. A copy of the APWU's opposition to the Postal Service's motion is attached hereto as Exhibit B.

The basic issue in Case No. 04-1404, as in other suits to compel arbitration, is whether the parties have an agreement to arbitrate a dispute and whether one party has refused to engage in the agreed-upon arbitration. According to an agreement of the parties, (Ex. B, Declaration of Cliff Guffey ("Guffey Dec.") at Ex. 1), upon the issuance of an arbitration award in the series of

grievances explicitly listed in the agreement, the party whose turn it is selects the next case for arbitration. The most recent award issued in accordance with that agreement is the award underlying the instant suit to enforce, and concerns Address Management Specialist positions and work. ("AMS Award," Compl. at ¶ 12; Ex. A.) Upon its issuance, the Postal Service was supposed to select the next grievance for arbitration. The Postal Service admits that it has failed and refused to do so. Accordingly, the APWU filed suit seeking the Court's compulsion of the Postal Service to select and schedule the next grievance for arbitration.

The Postal Service filed a motion to dismiss or stay the APWU's suit that is almost identical to the Postal Service's instant motion. The APWU opposed that motion and simultaneously moved for summary judgment on its claim to compel arbitration. The last of the pending pleadings in Case No. 04-1404 was filed in February 2005.

B.   **Unit Clarification Petitions Before the NLRB**

The settlement agreement described above and appended to the APWU's opposition and summary judgment motion in Case No. 04-1404, (Ex. B, Guffey Dec. at Ex. 1), resolved a unit clarification petition the APWU filed with the NLRB in the late 1990s. The parties, through their settlement agreement, resolved to arbitrate APWU grievances concerning unit placement of certain non-bargaining unit positions as well as the assignment of work performed by those positions rather than litigate the unit placement issue before the NLRB. The APWU won both of the arbitrations adjudicated thus far in accordance with the settlement agreement, and the Postal Service has stalled subsequent arbitrations necessitating the APWU's suit in Case No. 04-1404. The Postal Service has also refused to implement the AMS Award, now the subject of the instant suit to enforce.

After losing the second arbitration, the Postal Service filed its own unit clarification petition with the NLRB.  Its petition is ostensibly a challenge to the AMS Award.  An NLRB Region initially dismissed the Postal Service's petition finding that the Postal Service had agreed to an arbitral resolution of the very issue it was raising through its unit clarification petition.  Under NLRB precedent, the Region concluded that the NLRB was bound to honor the parties' agreement to arbitrate representation issues even if they were issues the NLRB could also decide itself.  (Ex. A, Guffey Dec. at Ex. 2 (*citing* Verizon Information Systems, 335 NLRB 558 (2001))[1].)  No proceedings were held or decision issued on the substance of the Postal Service's petition that the positions the APWU won through the agreed-upon arbitration process should now be excluded from the APWU's unit.

The Postal Service appealed the dismissal to the Board itself, and the Board granted review.  The Board's review is, however, focused primarily on the effect to be given the parties' settlement agreement; there is no record as of yet for deciding the merits of the Postal Service's petition if the Board decides to entertain the petition.  Importantly, too, is that the petition and the Board's review is limited to a challenge and review of only the unit placement issue.  The other issue resolved by the AMS Award concerning work assignments remains undisturbed and unchallenged.

### C. The National Association of Letter Carriers

Another postal union, the National Association of Letter Carriers ("NALC"), intervened in the APWU's second grievance as permitted by both Unions' collective bargaining agreements

---

[1] Many decisions of the NLRB can be found easily at www.nlrb.gov under "Decisions" and "Board Decisions."

with the Postal Service. The NALC supported the APWU's position on the merits of the APWU's grievance, and has never challenged the Arbitrator's ruling on the merits. The NALC did, however, seek that the Arbitrator limit his ruling on a remedy so that the NALC could later arbitrate whether the AMS positions should be assigned to the NALC's bargaining unit rather than that of the APWU. To that end, after the arbitration hearings were closed, the NALC wrote to the Arbitrator to request that the Arbitrator not decide the unit placement of the AMS positions if he found they should be placed in a union bargaining unit. Such a determination, the NALC asked, should be deferred to a new and separate proceeding. (NALC Letter dated Sept. 9, 2002, Ex. C.) The APWU wrote the Arbitrator expressing its position that it would agree to the NALC's request if granted by the Arbitrator. (APWU Letter dated Sept. 10, 2002, Ex. D.) The Postal Service, however, did <u>not</u> give its consent to the NALC's request. Instead, the Postal Service wrote the Arbitrator saying that the Arbitrator should consider the record closed and issue "a full and final decision in this matter." (USPS Letter of Sept. 26, 2005, Ex. E.) The Arbitrator replied with a letter stating that the record was closed and setting a due date for post-hearing briefs. The APWU and the Postal Service filed briefs, but the NALC did not.

As set forth in the Complaint, the Arbitrator issued his award on April 29, 2003. (Compl. at ¶ 12; Ex. A.) The award sustained the APWU's grievance, and as a remedy placed the AMS position in the APWU bargaining unit and directed that AMS work be assigned to APWU bargaining unit positions. (Ex. A at 37.) In the award, the Arbitrator retained jurisdiction for ninety days to "resolve any problems resulting from the **remedy** in the award." (Ex. 1 at 37 (emphasis added).)

During the pendency of the Arbitrator's extended remedial jurisdiction, the NALC wrote the Arbitrator asking that, related to its earlier request, the Arbitrator clarify his award so that it would be clear that the award did not have a precedential effect that would prejudice the NALC's position in its own grievance about the unit assignment of these newly-affirmed bargaining unit positions. (NALC Letter dated June 18, 2003, Ex. F.) Having soundly lost the arbitration, the Postal Service chimed in with a new version of events, claiming that the parties had an understanding about the remedy and that, in any case, the Arbitrator's award was so fundamentally flawed that "[t]he entire award must be withdrawn, and all parties be allowed to present additional evidence on the **merits** of the grievance." (USPS Letter dated June 26, 2003, Ex. G (emphasis added).) The Arbitrator did not revise his ruling on the merits or the remedy. And the Postal Service did not move the court to vacate the arbitration award.

Throughout the post-hearing correspondence with the Arbitrator, the APWU expressed three consistent points: One, that it would consent to the NALC's remedial approach. (Ex. D.) Two, that once the Arbitrator wrote his letter closing the record and subsequently issued the award, all after the NALC made its request, the APWU took those decisions to be ruling on – and a denial of – the request. (APWU Letter dated June 25, 2003, Ex. H.) Third, however, the APWU asked the Arbitrator that, if he was going to respond to the NALC's correspondence, he do it promptly because the Postal Service was using the NALC's correspondence as an excuse for refusing to implement the award and to schedule the next arbitration. (APWU Letter dated Mar. 17, 2004, Ex. I.)

Arbitrator Snow passed away suddenly and unexpectedly in November 2004.

II.   ARGUMENT

    A.   <u>The Court Has Jurisdiction in this Suit to Enforce a Labor Arbitration Award and the Postal Service Cannot Justify Consolidating and Staying the APWU's Lawsuit to Enforce the AMS Award.</u>

A complaint may be dismissed on jurisdictional grounds only if "'"it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."'" <u>Loughlin v. U.S.</u>, 393 F.3d 155, 162-163 (2004) (*quoting* <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)).  The Court may consider materials outside of the pleadings in deciding a motion to dismiss for lack of jurisdiction, but must nonetheless "'"accept all of the factual allegations in [the] complaint as true."'"  <u>Jerome Stevens Pharmaceuticals, Inc. v. Food & Drug Admin.</u>, 402 F.3d 1249, 1253-54 (2005) (citations omitted).  On the record made by the APWU in its complaint, there is no basis for the Court to dismiss the APWU's claims for lack of jurisdiction or to stay this case pending a decision by the NLRB.

The Court has a duty to enforce a labor arbitration award like the AMS Award in all but the most extraordinary of circumstances.  <u>OPEIU v. Washington Metro. Area Transit Auth.</u>, 724 F.2d 133, 137 (D.C. Cir. 1983).  Since deciding the *Steelworkers Trilogy* in 1960, the United States Supreme Court has often held that the judiciary's role in reviewing and enforcing arbitration awards arising from collectively bargained agreements between labor unions and employers is one of almost complete deference to the arbitration process.  <u>United Steelworkers v. American Manufacturing Co.</u>, 363 U.S. 564 (1960);  <u>United Steelworkers v. Warrior & Gulf Navigation Co.</u>, 363 U.S. 574 (1960);  <u>United Steelworkers v. Enterprise Wheel & Car Corp.</u>, 363 U.S. 593 (1960); *accord* <u>Hines v. Anchor Motor Freight, Inc.</u>, 424 U.S. 554 (1976).  Courts are foreclosed from reviewing the merits of an arbitrated dispute and must defer to the

7

determinations of the arbitrator. American Mfg. Co., 363 U.S. at 568 ("The courts...have no business weighing the merits of the grievance..."); Hines, 424 U.S. at 562. This Court's jurisdiction to enforce the arbitration award comes from Section 1208 (b) of the Postal Reorganization Act of 1970, 39 U.S.C. § 1208 (b), the postal analogue of Section 301 (a) of the Labor-Management Relations Act of 1947, 29 U.S.C. § 185 (a), under which non-postal labor arbitration awards are enforced.[2]

The court's jurisdiction in this suit to enforce the labor arbitration award is almost automatic given that:

- **there is no dispute that the parties contracted to arbitrate the specific grievance and issues decided in the instant award;**
- **the parties got the benefit of their bargain through the issuance of the AMS Award; and**
- **there were no legal challenges to the award.**

The Postal Service's arguments for why the Court does not have jurisdiction to enforce the AMS Award are just more attempts to avoid the result for which it bargained. The Postal Service does not have to like or agree with the AMS Award for it to be enforceable, and none of the reasons posited by the Postal Service for dismissing or staying this action have merit.

    A.    <u>The Postal Service's Unit Clarification Petition Before the NLRB Does Not Divest this Court of Jurisdiction to Enforce the AMS Award.</u>

This case should not be dismissed because of the pendency of the proceeding before the

---

[2] Courts regularly rely on precedent under Section 301 (a) in deciding cases under Section 1208 (b). *See, e.g.*, National Ass'n of Letter Carriers v. U.S. Postal Service, 590 F.2d 1171, 1174 (D.C. Cir. 1978).

NLRB, and there is little value gained by staying this case until the NLRB rules on the Postal Service's appeal of the dismissal of its unit clarification petition. The Postal Service obscures the real issue in the appeal pending before the NLRB in order, it seems, to bolster the illusion that the Court would be ruling on the same issue to be decided by the NLRB. That issue is, however, basically jurisdictional, a determination of whether the NLRB should review the merits of the Postal Service's unit clarification petition in the face of an agreement by the Postal Service to arbitrate just such a petition. It is not at all evident or certain that the NLRB's decision will address the merits of the award. Moreover, the NLRB will never review the Arbitrator's ruling concerning work assignments because that is an issue over which the NLRB does not exercise jurisdiction. In the meantime, however, the Postal Service behaves and benefits as if it won the arbitration – it can and does continue to violate the parties' collective bargaining agreement in the exact way in which the Arbitrator found impermissible. There is, therefore, little economy to be gained by waiting for the outcome of the proceedings before the NLRB at the expense of continued breaches of contract that the APWU attempted to address in the way it had agreed the parties would – through arbitration.

   As we explained in Case No. 04-1404, and with which the Postal Service now seems to agree, the Court and the NLRB have concurrent jurisdiction over union representation matters. There is, therefore, no preemption issue at work here that would justify dismissal. <u>United Automobile, Aerospace and Agricultural Implement Workers of America v. Telex Computer Products, Inc.</u>, 816 F.2d 519, 525 (10th Cir. 1987)("Matters touching on union representation...are within the concurrent, not exclusive jurisdiction of the NLRB. If an agreement allows arbitration of contractual disputes that may affect representational issues, the concurrent jurisdiction of the

9

NLRB will not deprive the parties of their bargain.")  The Postal Service therefore seems to be making a primary jurisdiction argument, but even that is unconvincing.  As we also noted in Case No. 04-1404, primary jurisdiction "'comes into play when a court and agency have concurrent jurisdiction over the same matter and there is no statutory provision to coordinate the work of the court with that of the agency.'"  Bits "n" Bytes Computer Supplies, Inc. v. C & P Telephone Co., 631 A.2d 485, 494 (Md. App. 1993)(citations omitted). Primary jurisdiction is not a preemption or exhaustion doctrine; primary jurisdiction merely orders which forum will decide a claim, question, or fact first.  Id. at 494-495; see also United States v. Philadelphia Nat'l Bank, 374 U.S. 321, 353 (1963) (under doctrine of primary jurisdiction, "[c]ourt jurisdiction is not thereby ousted, but only postponed.").

  The issue presented by the NLRB Region's dismissal of the Postal Service's unit clarification petition concerns what effect an agreement between the parties to arbitrate, rather than litigate before the NLRB, has on the NLRB's jurisdiction over union representation disputes.  The parties have not yet litigated the merits of the Postal Service's petition to exclude particular positions from the APWU bargaining unit before the NLRB.  A decision from the NLRB is likely to determine whether the Postal Service has any recourse through the unit clarification process to contest an arbitration award it does not like, but for which it bargained, on a union representation issue.  That decision may dissipate any more challenges to the AMS Award, or it may permit them, but a decision by the NLRB that the award itself if wrong is far from certain.

  Moreover, the NLRB does not exercise jurisdiction over, and therefore will never decide, the work assignment issue also decided by the arbitration award.  As the Postal Service agreed to

in its settlement agreement with the APWU and again at the arbitration, the two issues before the Arbitrator were (1) whether the AMS positions belong in the APWU bargaining unit and (2) whether the AMS positions contain duties which should be assigned to the APWU bargaining unit. In the underlying award, the Arbitrator held that not only should the AMS positions be part of the APWU bargaining unit, the conclusion the Postal Service is trying to contest before the NLRB, but that the work performed by those positions should be assigned to the APWU bargaining unit as well. Thus, no matter the ruling on the position placement issue, the Arbitrator found that the APWU is entitled to see the work performed by those positions assigned to its bargaining unit members.

The Postal Service's NLRB unit clarification petition does not touch upon the work assignment issue decided in the APWU's favor. A work assignment issue like this one is an issue over which the NLRB has often said "is not appropriate for determination by a unit clarification petition." Cranston Print Works Co., 269 NLRB 223, n.2 (1984). When raised in a unit clarification proceeding, the petition will be dismissed. Id.; *see also, e.g.,* Coatings Application and Waterproofing Co. of Indiana, Inc., 307 NLRB 806 (1992). There is no other vehicle to present a work assignment issue to the NLRB. Thus, because "[i]t is not the Board's responsibility in representation proceedings to decide whether employees in the bargaining unit are entitled to do any particular work," to stay enforcement of the work assignment issue serves no purpose because the NLRB is not reviewing the part of the award. Norway Gravure, 258 NLRB 438, n.1 (1981).

Thus, even if the Court were inclined to stay this case because the award decides a position placement issue (albeit one which the Postal Service agreed to arbitrate), to stay

enforcement of the entire arbitration award which also decides the work assignment issue contributes to the injustice already wrought by the Postal Service's fight against this award. The Postal Service plainly is unwilling to abide by the Arbitrator's award, even if it has no basis for challenging its outcome. The Postal Service cannot raise any substantive defense to the award because once the time limit for vacating an arbitration award has run, the Postal Service is precluded from advancing any such defense. IBEW, Local 26 v. CWS Electric, 669 F. Supp. 495 (D.D.C. 1986); International Union of Operating Engineers v. Murphy Co., 82 F.3d 185, 188, n.1 (7th Cir. 1996) (citing authority from nine federal circuits supporting this proposition). Thus, it is factually and legally undisputed that the award is immediately enforceable on its work assignment aspect. The Court should not permit the Postal Service to further evade its responsibilities on at least the work assignment.

  B. The Award is Ripe for Enforcement.

  The Postal Service argues alternatively, but with similarly little merit, that the Court should dismiss the APWU's suit to enforce because the AMS Award is not ripe for enforcement. The Postal Service's arguments are inconsistent and unsupported. The AMS Award is a final and binding arbitration award that the Court is capable of enforcing. There is no other arbitral proceeding that the APWU is bound to exhaust in order to verify the win it already achieved. The award itself represents a complete arbitration and a final decision, and even if it did not, all authority definitively describes such a contention as a non-jurisdictional defense. Despite the NALC requesting of the Arbitrator a particular method for determining a remedy; and whether or not the Court considers the Arbitrator's subsequent award to be a resolution of that request; and, ultimately, whether any of this matters in light of jurisprudence protecting even those arbitrators'

decisions that are wrong, American Postal Workers Union v. U.S. Postal Service, 789 F.2d 1, 8 n.23 (D.C. Cir. 1986)(quoting Washington-Baltimore Newspaper Guild, Local 35 v. Washington Post Co., 442 F.2d 1234, 1239 (D.C. Cir.1971)("'an award will not be vacated even though the arbitrator may have made, in the eyes of judges, errors of fact and law...'"")), the Postal Service's arguments for dismissal of the APWU's suit do not legitimately raise a jurisdictional bar to prevent this suit from being heard on its merits.

The concept that the Postal Service raises of the "complete arbitration" rule has no bearing here.  That concept cautions courts to address only final arbitration awards, not ones in which proceedings are on-going.  An award is final where the arbitrator believes the award is final, "even if the award was incomplete in that the arbitrators did not complete their assignment but believed they had..."  McKinney Restoration Co., Inc. v. Illinois District Council 1, Intl Union of Bricklayers, 392 F.3d 867, 871 (7th Cir. 2004).  And, as one court has noted,

> [t]he complete arbitration rule, however, does not mean that the mere possibility that an arbitrator may need to take further action renders an award nonfinal. Indeed, if that were the case, the frequent recourse of arbitrators to equitable remedies would, as a practical matter, leave some arbitration decisions unreviewable.

International Assn. of Bridge, Structural and Ornamental Iron Workers, Local 501 v. Burtman Iron Works, Inc., 928 F. Supp. 83, 86 (D.Mass 1996).  Moreover, "an arbitrator's use of boilerplate language generally retaining jurisdiction does not make an award nonfinal," and moving for reconsideration of an arbitration award also does not make the original award any less final.  Id. at 86-87.  In making these observations, the District Court for the District of Massachusetts, like many other courts, noted that, "[u]nderlying these conclusions is the recognition that the value of expeditious dispute resolution outweighs the prospect of successive

13

litigation arising from action taken by an arbitrator subsequent to an award." Id. at 87 (citations omitted).

The authority also uniformly holds that the complete arbitration rule is prudential, not jurisdictional. *E.g.*, Union Switch and Signal Div., Am. Standard, Inc. v. United Electrical, Radio and Machine Workers of America, Local 610, 900 F.2d 608, 612 (3rd Cir. 1990)("the case law of this Circuit and others reflects a recognition that the complete arbitration rule...is not a limitation on a district court's jurisdiction.") Even if it were not, however, nothing about the AMS Award calls into question its finality. The fact that the NALC is dissatisfied with how the remedy is phrased and the Postal Service is inflamed that it lost the arbitration do not impact the finality of the award. Nor does the Arbitrator's retention, now expired, of jurisdiction to settle remedial disputes undermine the finality of the award. Correspondence to the Arbitrator about his remedy does not undermine the finality of the award, particularly because the award itself settled the issues raised in the correspondence (except for the Postal Service's claim that the entire grievance must be rearbitrated, a claim that, frankly, was not worthy of response by the Arbitrator or the APWU), all of which were initially raised *before* the award issued. The award is final, and even if it were not, no number of complaints from the Postal Service about the award divest the Court of jurisdiction to address the APWU's suit to enforce.

The Postal Service's arguments that the APWU has to re-arbitrate its grievance before there is an award ripe for enforcement simply does not square with any of the authority on which the Postal Service relies. As in Case No. 04-1404 where the Postal Service made this same argument, it is not clear what the Postal Service thinks the APWU needs to arbitrate. The APWU won the grievance. There was a lengthy hearing process which no one has contested was

14

procedurally flawed.  Unlike all of the authority relied upon by the Postal Service, there were no challenges to procedure or procedural arbitrability on which the parties had to seek a resolution from the arbitrator before moving forward to an award on the merits of their dispute.  <u>United Paperworkers Intern. Union v. Misco, Inc.</u>, 484 U.S. 29, 39 (1987)("Nor was it open to the Court of Appeals to refuse to enforce the award because the arbitrator, in deciding whether there was just cause to discharge, refused to consider evidence unknown to the Company at the time Cooper was fired. The parties bargained for arbitration to settle disputes and were free to set the procedural rules for arbitrators to follow if they chose.")  Thus, as evident from the issuance of the award itself, there were no issues left to be arbitrated that bore on the outcome of the award.

      The NALC's correspondence about the remedy in the award does not indicate an issue about which the parties are still obligated to keeping litigating.  After the hearing, the NALC made a request of the Arbitrator about how he should address the remedy, but no one, except for the Postal Service upon losing the grievance, has even suggested a challenge to the decision on the merits.  The NALC's request, which it repeated after the Arbitrator issued his award, sought only for a disclaimer so that the award will not have a precedential effect in possible future NALC grievances on the unit placement of the AMS positions.  The APWU agreed with a process to satisfy the NALC's desires, and expressed its hopes that the Arbitrator would reiterate the holding of his award so that the Postal Service would stop using the NALC's request to evade the Postal Service's loss.  But even with or without the disclaimer the NALC sought, no one contends that they do not understand what the liability and remedial portions of the award mean or require.  The Postal Service simply does not like the result and thinks it should have another shot at re-litigating the entire grievance.

The Postal Service's theory of a "do over" is not a legitimate exhaustion or jurisdictional argument in support of dismissing the APWU's lawsuit. Arbitrator Snow made his award. The APWU has no challenge to or confusion about what it requires, and neither does the Postal Service. Even the NALC, which wished a slightly different remedial result, did not move to vacate the award, so the award, including the remedy, became incontrovertibly final. Whether or not the parties thought the Arbitrator might or should change his ruling on the remedy is not an issue the APWU is bound to arbitrate before enforcing the award. The award is, by all indications, the Arbitrator's final say on the issues presented by the parties, including those from the NALC. As the Court of Appeals for the First Circuit aptly explained:

> To require the Union to invoke the 'time-consuming and burdensome grievance process again' in order that the parties might resolve the remnants of a dispute which has already once traveled that route would seriously undermine the chief policies underlying resort to those procedures in the first instance: the speedy, flexible and inexpensive resolution of labor disputes. 'The purpose of arbitration is to resolve disputes, not to create new ones.' The grievance arbitration procedures, 'contracted for by the parties, were never intended to force a grievant into the role of a modern day Sisyphus,' and in the circumstances presented we affirm the decision below not to require the Union to run the entire course again.

International Brotherhood of Electrical Workers, AFL-CIO, Local 2222, 2320-2327 v. New England Telephone and Telegraph Co., 628 F.2d 644, 649 (1st Cir. 1980)(citations omitted); *see also* United Switch & Signal, 900 F.2d at 616 ("We can perceive no reason why the Company should not be held to its bargain. We are particularly unimpressed with the sole reason tendered by the Company – that the issues remaining between the parties should be the subject matter of a new grievance...We believe acceptance of the Company's argument would fly in the face of the strong policies to which we have just referred.").

Finally, the untimely death of Arbitrator Snow is immaterial to whether the Court has jurisdiction to enforce his award. Notwithstanding the Hobson's choice created by the Postal Service's arguments that the APWU must re-arbitrate the AMS award in order to achieve finality, but only before an arbitrator who is dead, the Postal Service is re-arguing a point that is not relevant to the instant lawsuit. Arbitration awards do not lose their validity when the arbitrator making them dies. It is also completely immaterial to this suit to enforce an arbitration award whether or not, as the Postal Service raises, the parties' arbitration agreement makes provision for who will hear subsequent grievances. The unfortunate fact that the arbitrator is dead works no violence to the enforcement of one of his last awards.

C.  <u>Consolidation with Case No. 04-1404 Will Cause Unnecessary Delay.</u>

The APWU opposes the Postal Service's suggestion that the instant case to enforce an arbitration award be consolidated with the APWU's suit to compel arbitration in Case No. 04-1404. Rule 42 of the Federal Rules of Civil Procedure permits the Court to consolidate pending cases with common questions of law or fact. Although these matters are related and share some common facts, there are few common questions of <u>material</u> fact and the two cases are seeking very different results. Admittedly, the APWU's concern with consolidation is that it will draw out what has already been a long ordeal. We believe that, in fact, the Postal Service's motion is intended to further delay the basic and simple relief the APWU's lawsuits request. The issues in this case have no bearing on the outcome of Case No 04-1404 and vice versa, and to further delay a ruling on the motions that have been pending in Case No. 04-1404 for a year for this case to be briefed on a motion to dismiss seems an unnecessary delay.

17

III.    CONCLUSION

For the foregoing reasons, the Court should deny the Postal Service's motion to dismiss or consolidate and stay.

Date: December 15, 2005				Respectfully submitted,

O'DONNELL, SCHWARTZ & ANDERSON, P.C.

By:_____
   Melinda K. Holmes (DC Bar # 458043)
   1300 L Street N.W., Suite 1200
   Washington, DC 20005-4178
   (202) 898-1707/ FAX (202) 682-9276
   mholmes@odsalaw.com