UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN POSTAL WORKERS UNION, AFL-CIO,<br><br>   Plaintiff,<br><br> v.<br><br>UNITED STATES POSTAL SERVICE,<br><br>   Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) Civil No. 04-1404 (HHK)<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND SUGGESTION OF MOOTNESS, AND
## PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT

Plaintiff American Postal Workers Union, AFL-CIO ("APWU") opposes Defendant United States Postal Service's motion to have the APWU's suit to compel arbitration in accordance with the express terms of a settlement agreement dismissed without prejudice or stayed pending a decision by the National Labor Relations Board on separate issue, or dismissed as moot. The APWU also moves for the Court to enter judgment ordering the Postal Service to proceed to arbitration. There is no dispute that the parties contracted to have several of the APWU's grievances heard in arbitration and that the simple requirements of the parties' agreement for the next case to be selected, scheduled, and heard have been met. Similarly, there is no dispute that the Postal Service refuses to select, schedule and participate in the next arbitration. The Postal Service's claims about economy of process and NLRB deference are immaterial, and neither the Postal Service's challenges to the previous arbitration award arising under the parties' agreement or the unavailability of the specific arbitrator are impediments to the parties' agreement to arbitrate its disputes. Accordingly, the Postal Service's motions should be denied and judgment in favor of the APWU should be entered.

Date: January 19, 2005                    Respectfully submitted,

                                          O'DONNELL, SCHWARTZ & ANDERSON, P.C.

                                          By: _____
                                              Melinda K. Holmes (DC Bar # 458043)
                                              1300 L Street N.W., Suite 1200
                                              Washington, DC 20005-4178
                                              (202) 898-1707/ FAX (202) 682-9276
                                              mholmes@odsalaw.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AMERICAN POSTAL WORKERS UNION, AFL-CIO, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil No. 04-1404 (HHK) |
| UNITED STATES POSTAL SERVICE, | ) ) ) | |
| Defendant. | ) ) ) | |

## PLAINTIFF'S STATEMENT OF MATERIAL FACTS
## AS TO WHICH THERE IS NO GENUINE ISSUE

In accordance with Local Rule 7(h), the plaintiff makes this statement of material facts as to which there is no genuine issue:

1.    On December 13, 1999, the APWU and the Postal Service executed an agreement negotiated by the parties and entitled "USPS Settlement Agreement, NLRB Case No. 5-UC-353." (Declaration of Cliff "C.J." Guffey ("Guffey Dec."), Exhibit 1; Declaration of Kevin Rachel ("Rachel Dec."), Attachment 1.)

2.    The December 1999 USPS Settlement Agreement "represents an understanding between the parties to fully and completely resolve any and all issues, and all currently pending grievances regarding the above-captioned Unit Clarification petition." (Guffey Dec., Exhibit 1 at 1st paragraph; Rachel Dec., Attachment 1 at 1st paragraph.)

3.    The December 1999 USPS Settlement Agreement specified, among other things, grievances filed by the APWU that, unless resolved before arbitration, the parties agreed to arbitrate. (Guffey Dec., Exhibit 1 at bullets 6-10; Rachel Dec., Attachment 1 at bullets 6-10.)

4.    The grievances the parties agreed in the settlement agreement to arbitrate involve the

APWU's claims that certain positions belong in the APWU bargaining unit or that the duties performed by certain positions should be assigned to the APWU bargaining unit. The settlement agreement expressly reiterates these issues. (Guffey Dec. at ¶ 3.)

5.     The December 1999 USPS Settlement Agreement also states that "Arbitration hearings held pursuant to this settlement agreement shall be heard before Arbitrator Carlton Snow. The first case to be heard will be Case No. H4C-4H-C 25455, Wichita, KS. The APWU will select the second case, and the Postal Service will select the third case, and so forth, with each party alternating selections. Upon issuance of the Award in the first case, the next case shall be promptly scheduled and heard." (Guffey Dec., Exhibit 1 at bullet 12; Rachel Dec., Attachment 1 at bullet 12.)

6.     On June 22, 2000, the parties presented to Arbitrator Snow Case No. H4C-4H-C 25455 in accordance with the December 1999 USPS Settlement Agreement. (Guffey Dec. at ¶ 4; Rachel Dec. at ¶ 5, Attachment 2.)

7.     Arbitrator Snow issued an Award in Case No. H4C-4H-C 25455 dated June 22, 2001. (Guffey Dec. at ¶ 4; Rachel Dec. at ¶ 5, Attachment 2.)

8.     In accordance with the December 1999 USPS Settlement Agreement, the APWU selected Case No. Q94C-4Q-C 98117564 as the next case for arbitration. (Guffey Dec. at ¶ 5; Rachel Dec. at ¶ 6.)

9.     On February 22, 2002, and July 23, 2002, the parties presented to Arbitrator Snow Case No. Q94C-4Q-C 98117564 in accordance with the December 1999 USPS Settlement Agreement. (Guffey Dec. at ¶ 5; Rachel Dec. at ¶ 6, Attachment 3.)

10.     Arbitrator Snow issued an Award in Case No. Q94C-4Q-C 98117564 dated April 29, 2003. (Rachel Dec. at ¶ 6, Attachment 3.)

11.     The Postal Service has not moved to vacate either of the awards issued in accordance with

2

the December 1999 Settlement Agreement. (Guffey Dec. at ¶ 4.)

12.    In accordance with the terms of the December 1999 Settlement Agreement, the Postal

Service is to select from the grievances identified in the Agreement the next case for arbitration.

(Guffey Dec. at ¶ 7.)

13.    Since the issuance of Arbitrator Snow's Award in Case No. Q94C-4Q-C 98117564, the

APWU has asked the Postal Service to identify the case it has selected for the next arbitration under

the December 1999 Settlement Agreement and to jointly contact the arbitrator to set a hearing date

for the case selected by the USPS. (Guffey Dec. at ¶ 7.)

14.    To date, the Postal Service has failed and refused to select or attempt to schedule the next

case to be heard by Arbitrator Snow in accordance with the December 1999 Settlement Agreement.

(Guffey Dec. at ¶ 7.)

Date: January 19, 2005                    Respectfully submitted,

                                          O'DONNELL, SCHWARTZ & ANDERSON, P.C.

                                          By: _____
                                          Melinda K. Holmes (DC Bar # 458043)
                                          1300 L Street N.W., Suite 1200
                                          Washington, DC 20005-4178
                                          (202) 898-1707/ FAX (202) 682-9276
                                          mholmes@odsalaw.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| AMERICAN POSTAL WORKERS UNION, AFL-CIO, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil No. 04-1404 (HHK) |
| UNITED STATES POSTAL SERVICE, | ) ) ) |
| Defendant. | ) ) ) |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S
## MOTION TO DISMISS AND SUGGESTION OF MOOTNESS,
## AND
## PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT

Plaintiff American Postal Workers Union, AFL-CIO ("APWU") opposes Defendant United States Postal Service's motion to have the APWU's suit to compel arbitration in accordance with the express terms of a settlement agreement dismissed without prejudice or stayed pending a decision by the National Labor Relations Board on separate issue, or dismissed as moot. The APWU also moves for the Court to enter judgment ordering the Postal Service to proceed to arbitration. There is no dispute that the parties contracted in a settlement agreement to arbitrate several of the APWU's grievances in a special arbitration process designed by the parties to handle the specific disputes identified in the agreement. Part of this process directs that upon issuance of an award in one of the grievances, the parties would take turns selecting the next of the specified grievances to be scheduled and heard. There is also no dispute that since completion of the last grievance arbitration under the settlement agreement, the Postal Service has refused to select, schedule, and participate in the next arbitration. The standard for compelling arbitration requires an agreement to arbitrate and a refusal by one of the parties to honor its agreement. Both factors are undisputedly met here. The

Court should, therefore, enter judgment ordering the Postal Service to proceed to arbitration in accordance with the terms of its agreement to arbitrate.

The Postal Service's arguments for why it should not be held to its agreement to arbitrate are without any merit. The Postal Service does not deny its obligation to arbitrate, but defends its intransigence with thin arguments having nothing to do with the terms of its arbitration agreement with the APWU. Claims about economy of process and NLRB deference are immaterial as the Postal Service's efforts to subvert the last award to issue in accordance with the process in the parties' agreement, an award in the APWU's favor, have nothing to do with the Postal Service's contractual agreement to arbitrate. Neither the fact that the Postal Service is trying to challenge the last arbitration award issued in accordance with the agreement or the unavailability of the specific arbitrator identified in the agreement are impediments to the parties arbitrating their disputes as contemplated by their contract. Accordingly, the Postal Service's motions should be denied and judgment in favor of the APWU and requiring that the Postal Service proceed to arbitration forthwith should be entered.

## I.    STATEMENT OF FACTS

The few relevant and material facts in this case are not in dispute and are largely self-evident from the parties' documentary submissions. The APWU and the Postal Service entered into a settlement agreement on December 13, 1999, to "fully and completely resolve any and all issues, and all currently pending grievances regarding" a unit clarification petition filed by the APWU before the National Labor Relations Board ("NLRB"). (USPS Settlement Agreement, Declaration of Cliff "C.J." Guffey ("Guffey Dec."), Ex. 1 at 1; Declaration of Kevin Rachel ("Rachel Dec."), Attachment 1 at 1.) In consideration for the APWU withdrawing its unit clarification petition, the Postal Service expressly agreed to arbitrate specific grievances referenced in the settlement. (USPS Settlement

2

Agreement, Guffey Dec., Ex. 1; Rachel Dec., Attachment 1.)  Specifically, the Postal Service agreed

that "the parties will arbitrate as an individual case the **Address Management System Specialist**

grievance dated 8/27/98[,]...the **Mail Flow Controller** grievance dated 8/27/98[,]...the **Business**

**Center** grievance dated 8/27/98[,]...the **Business Mail Entry Analyst** grievance dated

8/27/98[,]...[and] the **Operations Quality Improvement Analyst** grievance dated 8/27/98."

((USPS Settlement Agreement, Guffey Dec., Ex. 1 at bullets 6 to 10; Rachel Dec., Attachment 1 at

bullets 6 to 10)(emphasis in original).  To begin this series of arbitrations, the parties agreed that

"[t]he first case to be heard will be Case No. H4C-4H-C 25455, Wichita, KS," a case concerning

postal employees and work in the Postal Service human resources department.   ((USPS Settlement

Agreement, Guffey Dec., Ex. 1 at bullet 12; Rachel Dec., Attachment 1 at bullet 12.)

     Not only did the parties identify the specific grievances to be arbitrated, but they agreed to a

process for handling the arbitrations as series to be heard *seriatim*.  The parties' agreement describes

that:

> Arbitration hearings held pursuant to this settlement agreement shall be heard before
> Arbitrator Carlton Snow...The APWU will select the second case, and the Postal
> Service will select the third case, and so forth, with each party alternating selections.
> Upon issuance of the Award in the first case, the next case shall be promptly
> scheduled and heard.

(USPS Settlement Agreement, Guffey Dec., Ex. 1 at bullet 12; Rachel Dec., Attachment 1 at bullet

12.)

     The grievances the parties agreed to arbitrate involve the APWU's claims that certain

positions belong in the APWU bargaining unit or that the duties performed by certain positions

should be assigned to the APWU bargaining unit.  The settlement agreement expressly reiterates

these issues and states that "[i]n initiating the several August 27, 1998 grievances, the APWU

intended to broadly encompass disputes over whether the positions belong in the bargaining unit or

3

whether the positions contain duties which should be assigned to the bargaining unit. The parties

shall apply the national level arbitration awards which are issued as a result of this settlement

agreement as broadly as possible in an effort to resolve other pending EAS grievances raising the

same or similar issues or arguments." (USPS Settlement Agreement, Guffey Dec., Ex. 1 at bullet 13;

Rachel Dec., Attachment 1 at bullet 13.)

The first arbitration over the Wichita grievance was held on June 22, 2000, before Arbitrator

Snow. Arbitrator Snow issued an Award in that case dated June 22, 2001, in which he sustained the

APWU's grievance and found that the work at issue should be assigned to the APWU bargaining

unit. (Guffey Dec. at ¶ 4; Rachel Dec., Attachment 2.) The Postal Service did not move to vacate

this arbitration award. (Guffey Dec. at ¶ 4.) In accordance with the settlement agreement, the

APWU selected the Address Management System Specialist grievance as the next case for

arbitration. (Guffey Dec. at On February 22, 2002, and July 23, 2002, the parties presented their

cases on the APWU's grievance to Arbitrator Snow, and Arbitrator Snow issued an Award in the

case dated April 29, 2003. Arbitrator Snow again ruled in favor of the APWU in finding that the

positions at issue in the grievance should not have been excluded from the bargaining unit by the

Postal Service. (Guffey Dec. at ¶ 4; Rachel Dec., Attachment 3.) As with the first award, the Postal

Service did not move to vacate the second award. (Guffey Dec. at ¶ 4.) The Postal Service has and

continues to refuse to schedule the next grievance for arbitration. In accordance with the terms of

the parties' settlement agreement, the Postal Service is supposed to select the next grievance to be

heard. The Postal Service refuses to select a grievance and schedule it for arbitration. (Guffey Dec.

at ¶ 7.)

The Postal Service's motions recite other facts that are not material to the APWU's claim to

compel arbitration. During the arbitration of the second case, another postal union, the National

Association of Letter Carriers, AFL-CIO ("NALC"), intervened in the arbitration in support of the APWU's position on liability, although it took the position that the arbitrator's remedy in the case should assign the positions at issue to the NALC bargaining unit.  (USPS Motion to Dismiss, Exhibits 3-6.)  After the arbitration award was issued finding that the positions at issue should be bargaining unit positions and assigning them to the APWU unit, the Postal Service filed its own unit clarification petition with the NLRB contending that the positions at issue in the second grievance should be expressly clarified out of the APWU bargaining unit and that the NLRB should not defer to the arbitrator's award to the extent that it made a contrary finding.  (Guffey Dec. at ¶ 6.)  The Regional Director for Region 5 of the NLRB dismissed the Postal Service's petition without addressing its merits, finding that the Postal Service had agreed to arbitrate the issue in its petition and that the results of that agreement should control.  (Regional Director's Decision and Order Dismissing Petition, Guffey Dec. at Ex. 2.)  The Postal Service petitioned for review of the Region's dismissal with the NLRB itself and the Board has accepted the case for review.

In the midst of this deadlock created by the Postal Service's failure to abide by its agreement with the APWU, Arbitrator Snow passed away.  (Guffey Dec. at ¶ 8.)  This is not the first time in the parties' lengthy arbitration history that an arbitrator has died in the midst of hearing a case.  As they have done in the past, the parties can mutually-select another arbitrator to hear the remaining grievances in the settlement.  (Guffey Dec. at ¶ 9.)

## II.    ARGUMENT

The Postal Service contracted with the APWU to arbitrate several specific grievances. Having lost in the first two grievances completed under the parties's agreement to arbitrate, the Postal Service now refuses to proceed or participate in the process for which it contracted.  The Postal Service's reasons for its refusal are thinly-veiled attempts to avoid the risk of any more

5

arbitral loses, at least until the Postal Service can attempt to change the law to its advantage in the next arbitrations. Its is a clear breach of the parties' contract for the Postal Service to refuse, as it has, to arbitrate. As is often recited in cases to compel labor arbitration, the Court should hold the Postal Service to its bargain and order the Postal Service to resume its participation in the arbitral process.

A.    The Court Should Order the Postal Service to Arbitrate, Consistent with the Postal Service's Agreement with the APWU to Do So.

This case is appropriate for the Court to dispose of on summary judgment. The summary judgment standard is the basic vehicle to establish the continued existence of a claim and to narrow a case down to disputed material issues that need to be resolved by a fact-finder. Celotex Corp. v. Catrett, 477 U.S. 317, 323-324 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses...) Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party has demonstrated that it is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56 (c). In assessing the which facts are material in a motion for summary judgment, the United States Supreme Court has noted that:

> As to materiality, the substantive law will determine which facts re material. Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. factual disputes that are irrelevant or unnecessary will not be counted.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986.). Particularly because there is, as here, no dispute over and about the facts material to the APWU's suit to compel arbitration.

In a suit to compel labor arbitration, there is a significant presumption of arbitrability. In order to effectuate "Congress' strong policy in favor of settling labor disputes through arbitration" in suits to compel arbitration, only the most significant of ambiguities in an arbitration agreement will

6

rebut the presumption in favor of arbitration. <u>U.S. Postal Service v. National Rural Letter Carriers'</u>

<u>Association</u>, 959 F.2d 283, 342 (D.C. Cir. 1992)(compelling two postal unions to submit to tripartite

arbitration with the Postal Service). Thus, in a suit to compel labor arbitration, "[t]he function of the

court is limited to deciding whether (1) there is an agreement between the parties to arbitrate; and

(2) whether one of the parties has refused to arbitrate a dispute covered by the agreement to

arbitrate." <u>Safeway Stores, Inc. v. IBT, Local 639</u>, 1972 WL 897 at *2 (D.D.C. 1972)(citation

omitted). As the Court of Appeals for the D.C. Circuit has recognized, "if a contract includes an

arbitration clause, a presumption of arbitrability arises, meaning '[a]n order to arbitrate the particular

grievance should not be denied unless it may be said with positive assurance that the arbitration

clause is not susceptible of an interpretation that covers the assert dispute. **Doubts should be**

**resolved in favor of coverage.**'" <u>Washington Mailers Union No. 29 v. Washington Post Co.</u>, 233

F.3d 587, 589 (D.C. Cir. 2000)(*quoting* <u>AT&T Techs., Inc. v. Communications Workers</u>, 475 U.S.

643, 650 (1986)(emphasis added).)

The instant case leaves no room for argument that the Postal Service did not agree to

arbitrate the APWU's grievances and is now refusing to do so. As is specifically and expressly

stated in the settlement agreement between the parties, the exact grievances to be arbitrated were

identified and their issues repeated. The Postal Service expressly agreed to arbitrate those

grievances in a special procedure in which it would share overall equal responsibility for the order

the grievances were presented. The Postal Service agreed, and its written agreement expressly

states, that the cases would be "promptly scheduled and heard" after the issuance of an award in the

previous case. The contractual requirement that the Postal Service arbitrate the APWU's grievances

is completely unassailable.

7

There is also no dispute here that, despite the obligation it made to arbitrate, the Postal Service refuses to select and have heard the next grievance in accordance with the settlement agreement. The only requirement for the Postal Service to do so has been met. The agreement between the parties requires that the next grievance be promptly scheduled and heard upon issuance of the award in the previous case. "Issuance of the Award" is achieved whether or not one of the parties challenges an award inside or outside of the arbitral process. There is no dispute that an award has issued in the previous case. Regardless of the Postal Service's criticisms of and challenges to its substance, under the express terms of the settlement agreement the issuance of this award requires the Postal Service to select the next grievance and either settle or arbitrate. Nonetheless, the Postal Service refuses to do so. Particularly in light of the presumption towards arbitration, this refusal is simply unjustified. The Court should order arbitration.

> B.    The Postal Service's Arguments For Why It Should Be Excused From Its Agreement to Arbitrate Are Without Merit.

The Postal Service's unit clarification petition before the NLRB has no effect whatsoever on the Postal Service's obligation to arbitrate under the parties' settlement agreement. The Postal Service seems to suggest that its unit clarification petition raises a preemption issue when, as a matter of law and fact, it does not. Preemption arguments are inapplicable both because the NLRB is not deciding the same issue presented to the Court and because arbitration is not automatically nullified just because it may touch on or decide union representation issues. First, it should be self-evident that whatever the NLRB decides about whether and how to clarify the APWU bargaining unit is an entirely different and unrelated issue from the instant case seeking an order to arbitrate. We note that the Postal Service has mis-characterized the substance of its petition before the NLRB – the NLRB is not reviewing the earlier arbitration award, but is deciding whether it agrees with its

8

Regional Director that the petition should be dismissed because the parties agreed to, and did, arbitrate the representation issue raised by the petition rather than have the NLRB decide the issue. There have been no proceedings on the substance of the petition's claim about excluding positions from the APWU bargaining unit that conflict with the findings of the arbitrator. And thus waiting for the NLRB to decide whether to remand a unit clarification petition to its Region to be litigated on the merits of its union representation issue will not inform the Court as to whether the Postal Service agreed, but is now refusing, to arbitrate.

Second, just because an arbitration award may result that the Postal Service thinks would overlap with representation issues that are also appropriate for the NLRB to decide is no reason for the Court not to order that the arbitration occur. As the Court of Appeals for the Tenth Circuit succinctly stated:

> Matters touching on union representation...are within the concurrent, not exclusive jurisdiction of the NLRB. If an agreement allows arbitration of contractual disputes that may affect representational issues, the concurrent jurisdiction of the NLRB will not deprive the parties of their bargain.

United Automobile, Aerospace and Agricultural Implement Workers of America v. Telex Computer Products, Inc., 816 F.2d 519, 525 (10th Cir. 1987). Here, the parties expressly contracted to arbitrate a representation issue. The issue of unit placement is not only clearly spelled out in each of the grievances, but is also restated in the agreement to arbitrate itself. There is no doubt that the representation issues were fairly part of the bargain to arbitrate, and the Postal Service can point to no authority holding that such proceedings are precluded by or voided by the NLRB's concurrent jurisdiction over the same issue. In fact, the NLRB Region agreed. In dismissing the Postal Service's unit clarification petition, the NLRB Regional Director concluded that the Postal Service's agreement to arbitrate the unit issues raised by the petition took precedent. As the Regional Director

9

noted:

> Applying the Board's holding in <u>Verizon</u>, I find that the APWU and Postal
> Service reached an enforceable agreement establishing a procedure to resolve the
> issue of whether EAS positions, including the Address Management Systems
> Specialists at issue herein, should be included in the bargaining unit. As in <u>Verizon</u>,
> any other result would permit the Postal Service to enjoy the benefits of the
> settlement agreement, while avoiding its commitment, by petitioning the Board after
> every unfavorable decision from the arbitrator concerning the various EAS positions.

(Guffey Dec., Ex. 2 at 4.)  Although the Postal Service has challenged the Region's determination, it

nonetheless stands that the Postal Service is not excused from its agreement to arbitrate

representation issues just because the NLRB also has jurisdiction to address those issues in the

administrative forum.[1]  <u>Carey v. Westinghouse Electric Corp.</u>, 375 U.S. 261, 268 (1964)("a suit [to

compel arbitration] either in the federal courts, as provided by §301(a) of the Labor Management

Relations Act of 1947...is proper, even though an alternative remedy before the Board is available,

which, if invoked by the employer, will protect him.").

The Postal Service's argument that the NLRB's concurrent jurisdiction dictates an order in

which proceedings must occur is simply incorrect.  Concurrent jurisdiction is, of course, different

from primary jurisdiction, and there is no authority for the proposition that the NLRB has primary

jurisdiction over the instant matter.  The principle of primary jurisdiction "'comes into play when a

court and agency have concurrent jurisdiction over the *same matter* and there is no statutory

provision to coordinate the work of the court with that of the agency.'" <u>Bits "n" Bytes Computer</u>

<u>Supplies, Inc. v. C & P Telephone Co.</u>, 631 A.2d 485, 494 (Md. App. 1993) (citations omitted)

---

[1]     Moreover, the NLRB does not have jurisdiction to decide the APWU's contractual
claims or the issue raised in all of the grievances about whether certain work, not positions, should
be assigned to the bargaining unit. *See* <u>Carey v. Westinghouse Electric Corp.</u>, 375 U.S. 261, 263
(1964) (noting that "whether certain work should be performed by workers in one bargaining unit or
those in another" is not an issue covered by the National Labor Relations Act, 29 U.S.C. § 151 *et
seq.*).  Preemption by the NLRB, if such a concept could even be found to apply,  would not cover
the whole of the grievances.

(emphasis added). Primary jurisdiction is not a preemption or exhaustion doctrine; primary jurisdiction merely orders which forum will decide a claim, question, or fact first. *Id.* at 494-495; *see also* United States v. Philadelphia Nat'l Bank, 374 U.S. 321, 353 (1963) (under doctrine of primary jurisdiction, "[c]ourt jurisdiction is not thereby ousted, but only postponed."). Application of the doctrine turns on a "judicial appraisal of need or lack of need for resort to administrative judgment." Kenneth Davis, Administrative Law Text 381 (3d Ed. 1972). There is no authority that the NLRB has primary jurisdiction over a claim to compel arbitration simply because the underlying grievance involves a representation issue over which the NLRB has *concurrent* jurisdiction with the arbitrator. Put another way, because a suit to compel arbitration is not the same matter as a unit clarification petition to determine the appropriate unit placement of certain classifications of employees, the NLRB's concurrent jurisdiction over representation cases has no bearing on the instant case to compel arbitration.

Ultimately, then, the Postal Service's argument about the impact of the NLRB proceedings on the instant case really boils down to one of arbitral economy. The Postal Service defends its refusal to proceed to arbitration by complaining that the result of its challenge to the last arbitration award might or should inform the arbitrator's decision in the next case. The Postal Service's concern is overstated, if not insincere. It is certainly free to make arguments to the arbitrator about why he should not follow the ruling in the earlier cases which were decided in the APWU's favor. Clearly the Postal Service believes it has this option notwithstanding the commitment in the settlement agreement to apply the arbitrations awards broadly and the Postal Service's admission that each successive award has precedential value; otherwise the Postal Service would settle the remaining cases because the APWU has won awards in its favor on all of the issues the grievances raise. In any case, there is no certainty that the Postal Service will prevail in its indirect challenge to

11

the last award that would impact the arbitration on the grievances the APWU seeks to have heard in accordance with the parties' agreement. To stay the arbitration process until the law changes in the Postal Service favor exceeds all bounds of fairness and is expressly rejected by the terms of the parties' agreement to arbitrate their disputes promptly. The Postal Service bargained for an arbitrator's ruling, and its new concerns about having a chance to try its luck in a different forum and future arbitration proceedings being influenced by earlier awards the Postal Service does not like does not excuse it from its duty to abide by its agreement and proceed to arbitration.

The Postal Service's claim that the award from the previous case is not final is both incorrect and immaterial. The parties agreed to proceed with the next case upon the <u>issuance</u> of the award in the preceding case. An award was issued. It says in its caption "Analysis and Award." (Rachel Dec., Att. 3 at 1.) It says at the end "**AWARD.**" (Rachel Dec., Att. 3 at 37.) When the arbitrator did the same thing and issued an award in the first case, the Postal Service proceeded with the next arbitration. The Postal Service seems to be arguing that the settlement agreement requires the issuance of a final, unchallenged, unquestioned award. But that is not what the settlement agreement says. Like it or not, challenge or not, the simple condition for initiating the next arbitration has been met.

The Postal Service incorrectly claims that the NALC's correspondence to the Arbitrator about his remedy in the award somehow negates the fact that an award was issued. The NALC's letters (and the parties' response) have no bearing on the finality of the award. The NALC was questioning only the remedy the arbitrator ordered about which bargaining unit the job classifications at issue should be assigned to, but not the substantive finding of liability that the job classifications at issue are bargaining unit positions. The arbitrator expressly retained jurisdiction for 90 days to address remedial problems such as that raised by the NALC. Having received

12

NALC's letter during that window but not modifying his ruling on the remedy was a denial of the

NALC's request (as well as the Postal Service's position that a new arbitration needed to be held).

No one sued to vacate the award, so upon the expiration of the arbitrator's jurisdiction, the entire

award, including the remedy, became incontrovertibly final.  That was a year ago, and yet the Postal

Service continues to cling to some unfounded notion that an award has not been issued that triggers

the scheduling of the next hearing under the settlement agreement.  The Court should not encourage

such intransigence by denying the APWU the benefit of bargain it made with the Postal Service to

arbitrate the APWU's grievances.

The Postal Service's argument about exhaustion of the arbitral process is a red herring.

There is no procedural question about finality of the previous award to be arbitrated.  As noted, the

issue raised by the NALC concerns the propriety of the arbitrator's remedy, not a question about the

finality of the liability award itself.  It is unclear, then, what procedural issue the Postal Service

thinks should be arbitrated.  Certainly, the issue about whether the Postal Service is obligated to

arbitrate under its settlement agreement is not a question of procedural arbitrability that must be

decided by an arbitrator.  As the United States Supreme Court and the Court of Appeals for the

District of Columbia have held,

> The determination of whether a dispute is arbitrable under a collective bargaining
> agreement is a question of law for the court, unless the parties unmistakably agree to
> submit the issue of arbitrability to arbitration.

AT&T Techs., Inc. v. Communications Worker, 475 U.S. 643, 649 (1986); Washington Mailers

Union No. 29, 233 F.3d at 589.  The Postal Service's argument that the question about "whether the

conditions precedent to scheduling the third grievance have been met" is exactly the question that

the court, not an arbitrator, must answer.  As set forth above, whether or not there is a procedural

dispute about the finality of the remedy in the award is immaterial to the agreement the parties made

to move the next case to arbitration upon issuance of an award. Thus, neither the argument that the Court is not the proper forum to answer the question of whether there is an agreement to arbitrate or the argument that the Postal Service's agreement does not require arbitration have merit. The Court should order the Postal Service to arbitration.

C.    Arbitrator Snow's Death Does Not Render This Case Moot.

Finally, this case is not rendered moot by the fact that the arbitrator identified in the parties' agreement, Carlton Snow, has passed away. The arbitrations can still go forward before a different mutually-selected arbitrator, a solution that these parties have used several times in the past when arbitrators died during the pendency of cases before them. The parties have panels of arbitrators and have never been unable to agree on a new arbitrator to replace another who, for whatever reason, including death, is unavailable to hear or finish a case. The Postal Service cannot escape its agreement to arbitrate these cases by strictly reading in some morbid lottery whereby the parties' entire agreement to arbitrate is voided by the arbitrator's death, particularly where, as here, the parties are experienced and capable of finding a new arbitrator. If the Postal Service takes the position, as it seems to by its pleading, that it will not meet in good faith with the APWU to select a new arbitrator, it apparently will be necessary for the Court to order the Postal Service to do so lest the arbitration process in this case be stymied any further by the Postal Service's dilatory tactics.

III.    **CONCLUSION**

For the foregoing reasons, the Court should deny the Postal Service's motion to dismiss or stay these proceedings; deny the Postal Service's suggestion of mootness; grant the APWU's motion; and order that the Postal Service meet in good faith with the APWU to select a new arbitrator and select, schedule, and have heard the remaining grievances under the settlement agreement forthwith.

14

Date: January 19, 2005                    Respectfully submitted,

                                          O'DONNELL, SCHWARTZ & ANDERSON, P.C.

                                          By: _____

                                              Melinda K. Holmes (DC Bar # 458043)
                                              1300 L Street N.W., Suite 1200
                                              Washington, DC 20005-4178
                                              (202) 898-1707/ FAX (202) 682-9276
                                              mholmes@odsalaw.com

15

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| AMERICAN POSTAL WORKERS UNION,<br>AFL-CIO,<br><br>      Plaintiff,<br><br>      v.<br><br>UNITED STATES POSTAL SERVICE,<br><br>      Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  Civil No. 04-1404 (HHK)<br>)<br>)<br>)<br>)<br>) |

## **ORDER**

Upon consideration of Defendant's Motion to Dismiss or In The Alternative For A Stay,

Defendant's Suggestion of Mootness, Plaintiff's Opposition to Defendant's Motion to Dismiss and

Suggestion of Mootness, Plaintiff's Motion for Summary Judgement, and the entire record herein, it

is this _____ day of _____, 2005, hereby

    **ORDERED** that Plaintiff's motion is **GRANTED**.  It is further

    **ORDERED** that the Postal Service proceed forthwith in good faith to select an arbitrator to

hear and decide the arbitrations arising in accordance with the December 13, 1999, USPS Settlement

Agreement.  It is further

    **ORDERED** that the Postal Service forthwith comply with its obligations under the

December 13, 1999, USPS Settlement Agreement, including selecting, scheduling, and participating

in the next and subsequent grievance arbitrations in accordance with the agreement.

_____
United States District Court Judge

Copies to:

Melinda K. Holmes
O'Donnell, Schwartz & Anderson, P.C.
1300 L Street, N.W., Suite 1200
Washington, DC  20005
      mholmes@odsalaw.com

Alan Burch
U.S. Attorney's Office
555 - 4th Street, N.W.
Washington, DC  20530
      alan.burch@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN POSTAL WORKERS UNION, AFL-CIO, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES POSTAL SERVICE, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )    Civil No. 04-1404 (HHK) <br> ) <br> ) <br> ) <br> ) <br> ) |

## DECLARATION OF CLIFF "C.J." GUFFEY

I, Cliff "C.J." Guffey, in lieu of an affidavit as permitted by 28 U.S.C. § 1746, declare as follows:

1.      I am the Executive Vice President of the American Postal Workers Union, AFL-CIO ("APWU"). Including my current office, I have been a national officer of the APWU for almost twenty years.

2.      I was personally involved in the proceedings which gave rise to the "USPS Settlement Agreement" executed by the APWU and the Postal Service on December 13, 1999. A copy of that settlement agreement is attached hereto as Exhibit 1.

3.      The grievances the parties agreed in the settlement agreement to arbitrate involve the APWU's claims that certain positions belong in the APWU bargaining unit or that the duties performed by certain positions should be assigned to the APWU bargaining unit. The settlement agreement expressly reiterates these issues.

4.      We have had two arbitrations and two awards issued under the settlement agreement. The arbitrator found in favor of the APWU in both cases. The Postal Service has not moved to

EXHIBIT

1

Blumberg No. 5118

vacate either award.

5.      After the first award was issued under the settlement agreement, the APWU selected the next grievance to be heard and the Postal Service participated in the hearing on that grievance.

6.      After the award was issued in the second case, the Postal Service filed a unit clarification petition with the National Labor Relations Board ("NLRB"). This petition was dismissed by the Regional Director for Region 5 of the NLRB. A copy of the Regional Director's Decision and Order Dismissing Petition is attached hereto as Exhibit 2.

7.      I have contacted the Postal Service about scheduling the third and next arbitration under the settlement agreement, but to date the Postal Service has failed and refused to select, schedule or have heard the next grievance.

8.      In the midst of the deadlock created by the Postal Service's failure and refusal to arbitrate under the settlement agreement, the arbitrator we had picked to handle these cases, Carlton Snow, passed away.

9.      This is not the first time in our lengthy arbitration history with the Postal Service that an arbitrator has died while in the employ of the parties or even in the middle of hearing and deciding a case. As we have done in the past, the APWU and the Postal Service can mutually-select another arbitrator to hear the remaining grievances in the settlement.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January _12_, 2005.

_____
Cliff "C.J." Guffey

2

# USPS SETTLEMENT AGREEMENT
## NLRB Case No. 5-UC-353

This settlement agreement represents an understanding between the parties to fully and completely resolve any and all issues, and all currently pending grievances regarding the above-captioned Unit Clarification petition.

- APWU will withdraw NLRB Case No. 5-UC-353.

- Disputes regarding the proper assignment of **EAS Secretaries** in Mail Processing and Customer Service facilities will be resolved on the basis of the parties' December 13, 1999 settlement agreement. (Copy attached).

- Effective with the signing of this agreement, the Postal Service will change the **Bulk Mail Dock Clerk** (Occ. Code 2315-99xx; SP 2615) position from a best qualified to a senior qualified position.

- APWU will withdraw the 8/27/98 **Postmaster** national level grievance, and any other grievances in existence as of the signing of this settlement agreement which claim that **Postmaster** positions are clerk craft positions. This settlement agreement does not resolve any pending grievances over issues related to **Postmaster Relief** or **Post Office Administrator** positions.

- APWU will withdraw the 8/27/98 national level grievance, and any other grievances in existence as of the signing of this settlement agreement which claim that **Human Resource Associate, Human Resource Specialist** or **Personnel Assistant** positions are clerk craft positions.

- Unless resolved before arbitration, the parties will arbitrate as an individual case the **Address Management System Specialist** grievance dated 8/27/98. Any other grievances in existence as of the signing of this settlement agreement which claim that **Address Management System Specialist** positions are clerk craft positions will be withdrawn.

- Unless resolved before arbitration, the parties will arbitrate as an individual case the **Mail Flow Controller** grievance dated 8/27/98. Any other grievances in existence as of the signing of this settlement agreement which claim that **Mail Flow Controller** positions are clerk craft positions will be withdrawn.

- Unless resolved before arbitration, the parties will arbitrate as an individual case the **Business Center** grievance dated 8/27/98. Any other grievances in

existence as of the signing of this settlement agreement which claim that **Business Center** positions are clerk craft positions will be withdrawn.

- Unless resolved before arbitration, the parties will arbitrate as an individual grievance the **Business Mail Entry Analyst** grievance dated 8/27/98. Any other grievances in existence as of the signing of this settlement agreement which claim that **Business Mail Analyst** positions are clerk craft positions will be withdrawn.

- Unless resolved before arbitration, the parties will arbitrate as an individual grievance the **Operations Quality Improvement Analyst** grievance dated 8/27/98. Any other grievances in existence as of the signing of this settlement agreement which claim that **Operations Quality Improvement Analyst** positions are clerk craft positions will be withdrawn.

- APWU withdraws its claim to the **Arbitration Scheduling Coordinator** position based on the Postal Service's representation that these individuals work in Area offices. Any grievances in existence as of the signing of this settlement agreement which claim that **Arbitration Scheduling Coordinator** positions are clerk craft positions will be withdrawn.

- Arbitration hearings held pursuant to this settlement agreement shall be heard before Arbitrator Carlton Snow. The first case to be heard will be Case No. H4C-4H-C 25455, Wichita, KS. The APWU will select the second case, and the Postal Service will select the third case, and so forth, with each party alternating selections. Upon issuance of the Award in the first case, the next case shall be promptly scheduled and heard.

- In initiating the several August 27, 1998 grievances, the APWU intended to broadly encompass disputes over whether the positions belong in the bargaining unit or whether the positions contain duties which should be assigned to the bargaining unit. The parties shall apply the national level arbitration awards which are issued as a result of this settlement agreement as broadly as possible in an effort to resolve other pending EAS grievances raising the same or similar issues or arguments.


Anthony J. Vegliante
Vice President
Labor Relations

Dated: 12/13/99


Moe Biller
President
American Postal Workers
  Union, AFL-CIO

Dated: 12/13/99

Mr. Moe Biller
President
American Postal Workers
- Union, AFL-CIO
1300 L Street, N.W.
Washington, DC  20005-4128

Re:  EAS Secretary, Field

This settlement agreement represents an understanding between the parties to fully and completely resolve any and all issues and all currently pending grievances regarding the proper assignment of EAS secretaries in Mail Processing and Customer Service facilities.

1.    The Postal Service agrees to limit the use of EAS secretaries in the current organizational structure to the following managers and/or their successor positions in any subsequent organizational structure:

    a)    The District Manager, Customer Service
    b)    Manager, Human Resources (District)
    c)    Managers, Processing and Distribution Center/Facility or similar facility (e.g. Bulk Mail Center), or Manager, Remote Encoding Center - Level 23 and above
    d)    Postmasters, EAS 26 and above

2.    The Postal Service agrees to create a new Clerk Craft position entitled "Secretary, PS-6." The Secretary, PS-6, position is developed for use at District offices for management officials who directly report to the District Manager (except Manager Human Resources), or their successor positions in any subsequent organizational structure and Postmasters, EAS-24. Candidates for the newly created position shall be selected on a "best qualified" basis.

3.    The initial staffing of the Secretary, PS-6, positions shall occur in the following fashion:

    a.    Within 60 days after the first full pay period in January, incumbent EAS secretaries who are impacted by the provisions of the MOU will be given the option of immediately becoming a full-time Clerk Craft employee assigned to the newly created Secretary, PS-6, position.

Salary and seniority for those choosing to accept the new assignment shall be treated in accordance with the National Agreement and the Employee & Labor Relations Manual (ELM). Seniority shall be established in accordance with the National Agreement in effect at the time that the employee left the bargaining unit or, if never in the craft as of the date of the reassignment. In no event, however, shall an EAS secretary's position be abolished as a result of this settlement agreement. When an EAS secretary's position, not covered by Sections 1.a through d. above, becomes vacant for any reason, such vacancy, if filled, shall be posted as a bargaining unit position in accordance with the terms of this agreement.

b.    In the event the provisions of a. above fail to produce a sufficient number of best qualified employees, the duty assignment will be posted for application by full-time Clerk Craft employees in the installation.

4.    Future vacant Secretary, PS-6, duty assignments occurring after the initial staffing shall be filled in accordance with the applicable National Agreement provisions.

5.    This settlement agreement does not apply to facilities excluded under the provisions of Article 1, Section 3.

6.    This settlement agreement defines the proper use of bargaining and non-bargaining unit secretaries for specified managerial employees. This agreement shall not be used to establish mandatory staffing complement levels.

7.    The parties have identified the following grievances as specifically being resolved by this settlement agreement:

H0C-NA-C 52; Q90C-4Q-C 93046872; Q90C-4Q-C 95058808; H4C-4C-C 24116; H4C-4A-C 23474; H4C-4C-C 24121; H90C-1H-C 93017080; H90C-1H-C 93017081; D90C-1D-C 93020593; D90C-4D-C 94001226; E90C-1E-C 93045290; I90C-1L-C 94054139

If any additional grievances are discovered, which exist as of the date of this settlement agreement, the parties shall meet in good faith and resolve such grievances in accordance with the principles established in this settlement agreement.

8.  This settlement agreement shall be without precedent as to any other dispute now pending or to arise in the future between and among these parties or involving any one or more of these parties, and shall not be cited or relied upon by any party in any current or future dispute, except any which may arise concerning enforcement of this settlement agreement.

In particular, and without limiting the reach of the foregoing sentence, the APWU and the Postal Service expressly agree that nothing in this MOU may be cited or used in any way to affect the resolution of any national level grievance.


Anthony J. Vegliante
Vice President
 Labor Relations

Dated: 12/13/99


Moe Biller
President
American Postal Workers
    Union, AFL-CIO

Dated: 12/13/99

UNITED STATES OF AMERICA
BEFORE THE NATIONAL LABOR RELATIONS BOARD
REGION 5

AMERICAN POSTAL WORKERS UNION, AFL-CIO

Union

and                                                                        Case 5-UC-386

UNITED STATES POSTAL SERVICE

Employer-Petitioner

## DECISION AND ORDER DISMISSING PETITION

On June 30, 2003, the United States Postal Service (herein Petitioner or Postal Service) filed the instant unit clarification petition, seeking to exclude the position of "Address Management Systems Specialist (EAS-15)," from the existing nationwide bargaining unit of postal clerks represented by the American Postal Workers Union, AFL-CIO (herein APWU).

Pursuant to the provisions of Section 3(b) of the Act, the Board has delegated its authority in this proceeding to the undersigned. Based on my investigation and the following facts, I dismiss the Postal Service's petition for the reasons set forth below.

## I.        FACTUAL BACKGROUND

On October 27, 1997, the APWU filed a petition for unit clarification in Case 5-UC-353, seeking to include approximately 250 Executive and Administrative Service (EAS) employees in the bargaining unit based on the claim that these positions were not managerial, supervisory, or professional. Thereafter, in December of 1999, the parties entered into a non-Board settlement agreement in which they agreed to arbitrate six EAS positions, including the Address Management Systems Specialist position. The APWU also agreed to withdraw the unit clarification petition. A copy of the parties' settlement agreement is attached as **Appendix A**.

Pursuant to the settlement agreement, the parties submitted to arbitration the issue of whether the Address Management Systems Specialists should be included in the bargaining unit. The arbitrator issued his award on April 29, 2003. He concluded that the position "is part of the APWU bargaining unit and that it is a violation of Article 1.2 of the National Agreement to exclude the position and the disputed work from the bargaining unit." A copy of the arbitrator's decision is attached as **Appendix B**.

Blumberg No. 5119

EXHIBIT

2

Subsequently, the Postal Service filed the instant petition seeking to exclude the Address Management Systems Specialists from the bargaining unit, notwithstanding the arbitrator's decision.

## II.        POSITIONS OF THE PARTIES

### A.        The APWU's Position

The APWU argues that the petition must be dismissed on the ground that the parties agreed in the 1999 settlement agreement to resolve through arbitration all issues concerning whether the EAS positions, including the Address Management Systems Specialists, should be in the bargaining unit. The APWU asserts that as a result of the terms of this agreement, the Postal Service is prohibited from filing a unit clarification petition with the Board concerning matters it agreed to settle in arbitration. The APWU further contends that it withdrew the October 1997 unit clarification petition in Case 5-UC-353 in reliance on the settlement agreement. Thus having fulfilled its obligations under the agreement, it has no recourse to the Board, and consequently, neither should the Postal Service. The APWU maintains that its position in this matter is supported by the Board's decision in Verizon Information Systems, 335 NLRB 558 (2001), which, as discussed more fully below, involved the Board's dismissal of a unit clarification petition in light of a private representation agreement between the union and the employer.

### B.        The Postal Service's Position

The Postal Service argues that the Board may not defer a unit clarification petition to an arbitrator's decision where statutory interpretation of the NLRA is paramount. In support of its position, it cites the Board's decision in Marion Power Shovel Co., 230 NLRB 576 (1977), which held that questions of accretion that do not depend on contract interpretation, but involve the application of statutory policy, are a matter for a decision of the Board rather than an arbitrator. Because the arbitrator interpreted Article 1.2 of the collective-bargaining agreement, which the Postal Service contends is a compilation of statutory laws including the NLRA, the Board must exercise its jurisdiction to review the arbitrator's decision.

The Postal Service does not deny the validity or enforceability of the settlement agreement and, in fact, asserts that it has complied with every clause contained in the agreement, including the provisions relating to arbitration. Rather, the Postal Service contends there is no evidence that by entering into the agreement, it waived any legal right available before the Board. Consequently, the Postal Service contends by filing the instant petition, it is merely invoking its right to have the Board review the arbitration award on the ground that the award failed to correctly apply Board law in the accretion area. Specifically, the Postal Service contends that that the arbitrator failed to properly apply accretion factors, including history of bargaining, common supervision, and other similar terms and conditions of employment, job classification, and interchange of

employees between the Address Management Systems Specialist positions and similar bargaining unit positions.

For these reasons, the Postal Service argues that the instant petition should be granted, and the Address Management Systems Specialists positions should be excluded from the overall APWU bargaining unit positions.

## III.    Analysis

I find the unit clarification petition concerns a matter that the parties agreed in their 1999 settlement agreement to resolve by arbitration.  I find no hearing is necessary because application of well-settled Board law to certain undisputed facts warrants dismissal of the petition under well-established principles concerning enforcement of such agreements.

The Board's express authority under Section 9(c)(1) to issue certifications includes the implied authority to police such certifications and to clarify them as a means of effectuating the policies of the Act.  Thus, Section 102.60(b) of the Board's Rules and Regulations, Series 8, provides that a party may file a petition for clarification of a bargaining unit where there is a certified or currently recognized bargaining representative and no question concerning representation exists.

The Board explained the purpose of unit clarification proceedings in <u>Union Electric Co.</u>, 217 NLRB 666, 667 (1975):

> Unit clarification, as the term itself implies, is appropriate for resolving ambiguities concerning the unit placement of individuals who, for example, come within a newly established classification of disputed unit placement or, within an existing classification which has undergone recent, substantial changes in the duties and responsibilities of the employees in it so as to create a real doubt as to whether the individuals in such classification continue to fall within the category - excluded or included - that they occupied in the past.  Clarification is not appropriate, however, for upsetting an  agreement of a union and employer or an established practice of such parties concerning the unit placement of various individuals, even if the agreement was entered into by one of the parties for what it claims to be mistaken reasons or the practice has become established by acquiescence and not express consent.

In <u>Verizon Information Systems</u>, 335 NLRB 558 (2001), the Board addressed the enforceability of voluntary agreements reached between unions and employers concerning representational matters.  In <u>Verizon</u>, the union and the employer had entered into a "Memorandum of Agreement" establishing a specific procedure for voluntary recognition outside of the Board's processes, including the right to have the unit issue decided by an arbitrator.  Despite the agreement, the union subsequently filed a unit clarification petition seeking to represent a unit of the employer's employees.

The employer requested the Regional Director to dismiss the petition or hold it in abeyance on the ground that the parties had agreed on a procedure to resolve the unit scope issue. The Regional Director denied the request, concluding the Board does not defer to arbitration in representation proceedings involving unit scope issues that turn on statutory policy.

On review of the Regional Director's decision, the Board, noting that "[n]ational policy favors the honoring of voluntary agreements reached between employers and labor organizations," found that because the union elected to proceed under the agreement and derived benefits from it, the union was estopped from thereafter avoiding the arbitration provision of the agreement and seeking recognition through the Board's processes. 335 NLRB at 559-560. To hold otherwise, stated the Board, would permit the union to take advantage of the benefits accruing from the agreement while avoiding its commitment by petitioning to the Board. 335 NLRB at 560, citing Lexington House, 328 NLRB 894 (1999).

In the present case, the APWU and the Postal Service entered into a similar agreement in which they agreed to arbitrate the issue of whether the Address Management Systems Specialists should be included in the APWU bargaining unit. Pursuant to this agreement, the parties fully arbitrated the issues and the APWU prevailed. Subsequently, the Postal Service filed the instant petition seeking to overturn the arbitrator's decision.

Applying the Board's holding in Verizon, I find that the APWU and Postal Service reached an enforceable agreement establishing a procedure to resolve the issue of whether EAS positions, including the Address Management Systems Specialists at issue herein, should be included in the bargaining unit. As in Verizon, any other result would permit the Postal Service to enjoy the benefits of the settlement agreement, while avoiding its commitment, by petitioning the Board after every unfavorable decision from the arbitrator concerning the various EAS positions.

In arguing that the instant petition should not be dismissed, the Postal Service relies on Marion Power Shovel, 230 NLRB 576 (1977), in which the Board held that "[t]he determination of questions of representation, accretion, and appropriate unit do[es] not depend upon contract interpretation but involve[s] the application of statutory policy, standards, and criteria. These are matters for decision of the Board rather than an arbitrator." 230 NLRB at 577-78. This case, however, is clearly distinguishable, as the union in that matter sought dismissal of the employer's unit clarification petition on the ground that the Board should defer to the arbitration provision of the collective-bargaining agreement. Unlike the present case, there was no explicit agreement between the parties to resolve the representational issues outside the Board's processes, and no detrimental reliance on the terms of such an agreement.

The Postal Service further argues that by entering into the settlement agreement, it did not waive its right to file a representation petition with the Board. As the Board held

Re: American Postal Workers Union    5                        September 30, 2003
      Case 5-UC-386

in Verizon, however, the issue is not whether the Postal Service waived any legal right. Rather, the issue is "whether the Petitioner - having elected to proceed under the agreement and derived benefits from it - should be permitted to pick and choose which provisions it wishes to invoke and which it prefers to avoid. The question, then, is really one of estoppel." 335 NLRB at 560-561. By applying this principle of estoppel as set forth by the Board in Verizon, I likewise find that the policies of the Act are best effectuated by holding the Postal Service to the explicit terms of its bargain.

### ORDER

The petition is dismissed.

### RIGHT TO REQUEST REVIEW

Under the provisions of Section 102.67 of the Board's Rules and Regulations, a request for review of this Decision may be filed with the National Labor Relations Board, addressed to the Executive Secretary, 1099 14th Street, NW, Washington, DC 20570. This request must be received by the Board in Washington by October 14, 2003.

Dated September 30, 2003
At Baltimore, Maryland

                              WAYNE R. GOLD
                              *Regional Director, Region 5*



393-8000