# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **AMERICAN POSTAL WORKERS UNION,** <br><br>          **Plaintiff,** <br><br>         **v.** <br><br> **UNITED STATES POSTAL SERVICE,** <br><br>          **Defendant.** | **Civil Action 04-01404 (HHK)** <br> **Civil Action 05-01771 (HHK)** |

## MEMORANDUM OPINION AND ORDER

The American Postal Workers Union ("APWU") brings these actions alleging breach of both a collective bargaining agreement and a settlement agreement entered into between APWU and the United States Postal Service ("USPS"). APWU seeks an order enforcing and directing USPS's compliance with an April 2003 arbitration award and an order compelling future arbitrations pursuant to the settlement agreement. Before the court are USPS's motion to consolidate the two civil actions, USPS's motions to dismiss, or, in the alternative, to stay both actions, and APWU's motion for summary judgment in Civil Action No. 04-1404. Upon consideration of the motions, the oppositions thereto, and the record of the cases, the court concludes that the motion to consolidate must be granted, USPS's motions to dismiss or, in the alternative, to stay and APWU's motion for summary judgment must be denied.

# I.  FACTUAL BACKGROUND

APWU and USPS are parties to a collective bargaining agreement that sets forth the

terms and conditions of employment for the employees in bargaining units represented by APWU

at various USPS facilities throughout the United States.  On October 27, 1997, APWU filed a

unit clarification petition arguing that approximaltey 250 Executive and Administrative Service

("EAS") employees should be included in APWU bargaining units based on its claim that the

positions held by these employees were not managerial, supervisory, or professional.  On

December 13, 1999, pursuant to a settlement agreement, APWU agreed to withdraw the unit

clarification dispute.  In return, the parties agreed to arbitrate a series of six grievances, each

involving a different EAS position, before a single arbitrator.  The settlement agreement

indicated that the grievances would be heard before Arbitrator Carlton Snow and would be

adjudicated seriatim; the first EAS position to be resolved was jointly agreed to by the parties,

the second was to be selected by APWU, the third by USPS, and so forth until placement of all

six positions was determined.  The settlement agreement further provided that "[t]he parties shall

apply the national level arbitration awards which are issued as a result of this settlement

agreement as broadly as possible in an effort to resolve other pending EAS grievances raising the

same or similar issues or arguments."  Def.'s Mot. to Dismiss or, in the Alternative, for a Stay,

Civ. No. 04-1404, ("Def.'s Mot. (Civ. No. 04-1404)"), Ex. 1-1, at 2.

The first grievance was presented to Arbitrator Snow on June 22, 2000, who issued his

decision in favor of APWU exactly one year later.  In accordance with the terms of the settlement

agreement, APWU selected the next case for arbitration.  That arbitration, which is the basis of

the present dispute, involved the proper placement of the Address Management Systems

("AMS") Specialist position.[1]  APWU disagreed with USPS's decision to place this position

outside the APWU bargaining unit.  The arbitration presented two issues: (1) whether the AMS

Specialist position should be classified as a bargaining unit position, and (2) if so, whether the

position should be assigned to APWU's bargaining unit or the bargaining unit of a different

union, the National Association of Letter Carriers ("NALC").  NALC intervened in the

arbitration, taking the position that the AMS Specialist position should properly be assigned to its

union.

On February 22, 2002, and July 23, 2002, the parties presented their cases to Arbitrator

Snow.  At the close of the second day of the hearing, the parties apparently agreed that NALC

would be permitted to review the transcript before determining whether it intended to submit

rebuttal testimony.  NALC wrote to the arbitrator to indicate that it did have an interest in

presenting additional evidence regarding in which union the AMS Specialist position should be

placed.  However, NALC suggested that "such presentation may be deferred until after an initial

determination" by the arbitrator of whether the position was to be classified as a bargaining unit

position at all.  Def.'s Mot. (Civ. No. 04-1404), Ex. 5-C, at 1.  NALC wrote that, "[i]f the

Arbitrator agrees with our suggestion . . . , then the record may be closed and the parties may

proceed with the submission of post-hearing briefs."  *Id.* at 2.  APWU wrote to the arbitrator

shortly thereafter to indicate its agreement with NALC's proposal.  USPS, however, disagreed,

arguing that the issue of which union would represent the position did not need to be deferred,

---

[1]  AMS is a computer database that manages address information for postal customers.

that NALC's failure to submit evidence did not preclude the arbitrator from "issuing a full and final decision in this matter," and that "the record should be closed and the parties should establish a due date for posthearing briefs." Def.'s Mot. (Civ. No. 04-1404), Ex. 5-F, at 1.

Without specifically addressing the proposal raised in NALC's letter, the arbitrator closed the record on October 31, 2002. Thereafter, APWU and USPS submitted post-hearing briefs. On April 29, 2003, Arbitrator Snow issued an award, determining that the AMS Specialist position "is a part of the APWU bargaining unit." Def.'s Mot. (Civ. No. 04-1404), Ex. 1-3, at 37. The arbitrator also retained jurisdiction "for ninety days . . . in order to resolve any problems resulting from the remedy in the award." *Id.*

On June 18, 2003, NALC wrote to Arbitrator Snow to bring to his "attention a possible problem" with the remedy. Def.'s Mot. (Civ. No. 04-1404), Ex. 5-A, at 1. NALC argued that the decision to assign the AMS Specialist position to APWU was "inconsistent with the post-hearing agreement of the parties . . . that the issue of [union placement] be deferred to the remedy phase of this case." *Id.* Noting that several sentences in Arbitrator Snow's opinion "appear to address" the issue of union placement, NALC requested that the arbitrator "issue an appropriate clarification of the Award." *Id.* at 3. Both USPS and APWU responded to NALC's request for clarification in separate letters to the arbitrator. Despite its previous argument that the union placement issue did not need to be deferred, USPS now indicated that it agreed with NALC that "the award comes to a conclusion contrary to the express written understandings of the parties as to what was being litigated." Def.'s Mot. (Civ. No. 04-1404), Ex. 3, at 1. USPS further wrote that the issues raised by NALC "call into question the fundamental rationale and underpinnings

of the award" such that the entire award must be withdrawn.  *Id.*  APWU stated that it did not believe that the award needed to be clarified at all and that the arbitrator had issued a "binding award" that was "conclusive, fair, and final."  Def.'s Mot. (Civ. No. 04-1404), Ex. 2, at 2.

After almost a year passed without a reply from Arbitrator Snow, APWU wrote again on March 17, 2004, to remind the arbitrator of the outstanding request from NALC for clarification and to inform him that USPS was refusing to apply the award from the second arbitration or to schedule a third arbitration.  Arbitrator Snow died on November 19, 2004, without responding to any of the parties' letters.

Four days after writing to the arbitrator to suggest that the award must be withdrawn, USPS filed a unit clarification petition before the Regional Director of the National Labor Relations Board ("NLRB" or "Board"), seeking to exclude the AMS Specialist position from the bargaining unit notwithstanding the arbitrator's decision.  USPS argued that the arbitrator misapplied the prior decisions of the NLRB by unlawfully requiring hundreds of non-bargaining unit employees to be included in a bargaining unit without providing them an opportunity to exercise their rights under the National Labor Relations Act, 29 U.S.C. § 151 *et seq.*  The Regional Director rejected USPS's arguments, holding that, because USPS's petition "concern[ed] a matter that the parties agreed in their 1999 settlement agreement to resolve by arbitration," dismissal without a hearing was appropriate.  Pl.'s Opp'n to Def.'s Mot. to Dismiss or, in the Alternative, for a Stay, Civ. No. 04-1404 ("Pl.'s Opp'n (Civ. No. 04-1404)"), Ex. 2, at 3.  USPS appealed the dismissal to the Board itself.   On December 24, 2003, the Board granted review, stating that the case "raises substantial issues warranting review."  Def.'s Mot. (Civ. No. 04-1404), Ex. 8.  The parties have fully briefed the issue and await a decision from the Board.

These complicated facts have given rise to two actions presently before this court, both of which were brought by APWU against USPS.  The first, Civil Action No. 04-1404, seeks an order directing USPS to select, schedule, and arbitrate the next grievance as per the terms of the settlement agreement.  The second, Civil Action No. 05-1771, is an action for breach of the collective bargaining agreement and seeks an order directing USPS to comply with the terms of Arbitrator Snow's April 2003 arbitration award.

## II.  ANALYSIS

### A.  Motion to Consolidate

USPS moves to consolidate Civil Action Nos. 04-1404 and 05-1771.  Federal Rule of Civil Procedure 42(a) provides for the consolidation of cases that involve "a common question of law or fact."  FED. R. CIV. P. 42(a); *see also* 9 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2382 (2d ed. 1995).  "The decision whether to consolidate cases under Rule 42(a) is within the broad discretion of the trial court."  *Stewart v. O'Neill*, 225 F. Supp. 2d 16, 20 (D.D.C. 2002).  When determining whether to exercise such discretion, "courts weigh considerations of convenience and economy against considerations of confusion and prejudice."  *Chang v. United States*, 217 F.R.D. 262, 265 (D.D.C. 2003).

Here, APWU's claims in both actions involve Arbitrator Snow's April 2003 award.  The parties agree that there are common questions of law or fact in these cases,[2] and the court

---

[2]  APWU concedes that "these matters are related and share some common facts," but argues that consolidation is nonetheless inappropriate because "there are few common questions of *material* fact and the two cases are seeking different results."  Pl.'s Opp'n (Civ. No. 05-1771), at 17 (emphasis added).  Not only is this proposition incorrect as a matter of fact, but it lacks legal relevance as well.  First, the two cases not only present "some common facts," they present precisely the same set of facts.  Of equal importance, Rule 42(a) does not differentiate between material facts and non-material facts.  Thus, APWU's attempt to move the legal goal posts is

believes that their consolidation will likely result in greater convenience for the parties and for

the court as the matter proceeds.  There is very little risk of prejudice or confusion if these cases

are consolidated given that both cases involve the same parties and the same counsel.

Accordingly, Civil Action Nos. 04-1404 and 05-1771 will be consolidated.

## B.  USPS's Motions to Dismiss or, in the Alternative, for a Stay

USPS moves to dismiss both civil actions for lack of jurisdiction, arguing that APWU

failed to exhaust its administrative remedies and that the actions are moot in light of Arbitrator

Snow's death.  USPS also argues that, because the NLRB is currently reviewing the

representation issue underlying this dispute, the court should dismiss the cases without prejudice

or, alternatively, stay the cases until the NLRB's decision is returned.  The court denies USPS's

motions to dismiss or, in the alternative, for a stay.

### 1.  Failure to Exhaust

USPS argues that there has not yet been a "complete arbitration" because certain remedial

aspects of the arbitration are outstanding.  Specifically, USPS notes that Arbitrator Snow never

responded to NALC's letters requesting a clarification of the award, thereby raising the question

of whether Arbitrator Snow's April 29, 2003 award is final.  According to USPS, this question

"must be subjected to arbitration."  Def.'s Mot. to Dismiss or, in the Alternative, for

Consolidation and Stay, Civ. No. 05-1771 ("Def.'s Mot. (Civ. No. 05-1771)"), at 14.   This

possible remedy having not been exhausted, USPS contends that it is inappropriate for this court

to exercise jurisdiction over the pending actions.  *Id.*; Def.'s Mot. (Civ. No. 04-1404), at 8–11.

_____

unavailing.

Contrary to USPS's argument, application of the so-called "complete arbitration" rule to preclude judicial review by this court is inappropriate in this case.  The complete arbitration rule instructs that, ordinarily, an arbitration award must be final and binding before a district court may vacate or enforce it.  *See, e.g.*, *McKinney Restoration Co. v. Ill. Dist. Council No. 1*, 392 F.3d 867, 871 (7th Cir. 2004); *Local 36, Sheet Metal Workers Int'l Ass'n v. Pevely Sheet Metal Co.*, 951 F.2d 947, 949–50 (8th Cir. 1992); *Union Switch & Signal Div. Am. Standard, Inc. v. United Elec. Radio & Machine Workers of Am.*, 900 F.2d 608, 610–12 (3d Cir. 1990).  The question necessarily arises then, what constitutes a "final" arbitration award.  The courts seem to agree that, when "a substantive task remain[s] for the arbitrator to perform," an award is not final.  *McKinney Restoration*, 392 F.3d at 871; *see also Millmen's Local 550, United Bhd. of Carpenters & Joiners of Am. v. Well's Exterior Trim*, 828 F.2d 1373, 1376–77 (9th Cir. 1987); *Pub. Serv. Elec. & Gas Co. v. System Council U-2*, 703 F.2d 68, 70 (3d Cir. 1983).  However, an award will be final when it is "intended by the arbitrator to be his complete determination of every issue submitted to him."  *McKinney Restoration*, 392 F.3d at 871 (internal quotation omitted); *Fradella v. Petricca*, 183 F.3d 17, 19 (1st Cir. 1999); *Shore v. Groom Law Group*, 877 A.2d 86, 95–96 (D.C. 2005) ("An arbitration award is deemed final as long as it shows an intention to resolve the issues submitted, even if the arbitration panel retains jurisdiction to deal with any lingering matters.").

Resolution of USPS's exhaustion argument therefore depends on whether the evidence demonstrates that Arbitrator Snow believed that his "assignment [was] completed."  *McKinney Restoration*, 392 F.3d at 872.  The evidence in this case makes clear that he did so believe.  The

award issued by Arbitrator Snow on April 23, 2003 resolved all of the issues submitted to him, including questions of remedy.  Nowhere in the lengthy opinion explaining the award does Arbitrator Snow suggest that outstanding issues remained to be resolved.[3]

After the award was issued, NALC made a request of the arbitrator to clarify certain aspects of the remedial portion of the award.  In that request, NALC stated that the parties had agreed prior to the issuance of the award that, if Arbitrator Snow were to find that the AMS Specialist position should be placed in a bargaining unit, he should delay resolving in which union that position should be placed.  However, Arbitrator Snow never accepted NALC's proposal.  In light of the fact that the USPS argued against NALC's request and specifically advocated for "a full and final decision in this matter," Def.'s Mot. (Civ. No. 04-1404), Ex. 5-F, the court believes that Arbitrator Snow's silence with regards to NALC's request and the subsequent issuance of a full and final decision demonstrates that he intended to reject that request.  The mere fact that NALC and USPS later wrote to Arbitrator Snow to repeat this request does not negate the finality of the award.[4]  Therefore, because the award was final when

---

[3]  It is true that Arbitrator Snow retained jurisdiction for ninety days "to resolve any problem resulting from the remedy in the award."  Def.'s Mot. (Civ. No. 04-1404), Ex. 1-3, at 37. However, "boilerplate language generally retaining jurisdiction does not make an award nonfinal."  *Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers v. Burtman Iron Works, Inc.*, 928 F. Supp. 83, 86 (D. Mass. 1996).

[4]  The court's reasoning is consistent with the rationale for the decisions holding that asking an arbitrator to reconsider his or her decision does not extend the statute of limitations for moving to vacate an arbitration award.  *Fradella*, 183 F.3d at 20 n.4; *Dreis & Krump Mfg. Co. v. Int'l Ass'n of Machinists & Aerospace Workers*, 802 F.2d 247, 250–51 (7th Cir. 1986).  If requesting that an arbitrator reconsider his award does not negate the finality of an award for statute of limitations purposes, the court is hard pressed to conclude that the letters to the arbitrator in this case negated the finality of his award such that the exercise of jurisdiction in this case is improper.

issued by the arbitrator and the request for clarification did nothing to undermine that finality, the court must deny USPS's motions to dismiss for failure to exhaust.

   *2.  Mootness*

   USPS also argues that APWU's claims are moot in light of Arbitrator Snow's death. With respect to Civil Action No. 04-1404—the suit to compel arbitration in accordance with the settlement agreement—USPS contends that the settlement agreement "does not provide for this contingency, nor does it provide for alternate arbitrators or a panel of arbitrators to take Mr. Snow's place."  Def.'s Suggestion of Mootness (Civ. No. 04-1404), at 1.  Therefore, according to USPS, "any attempt to enforce the agreement now appears moot."  *Id.*[5]  APWU responds by arguing that the death of Arbitrator Snow does not render either civil action moot because the parties "can still go forward before a different mutually-selected arbitrator, a solution that these parties have used several times in the past when arbitrators died during the pendency of cases before them."  Pl.'s Opp'n (Civ. No. 04-1404) at 14.

   The mootness doctrine "rests on the fundamental principle of our jurisprudence that Article III of the Constitution limits the judicial power of the United States to the resolution of cases and controversies."  *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*, 454 U.S. 464, 471 (1982) (internal quotations omitted).  More specifically, mootness is "the doctrine of standing in a time frame.  The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)."

---

[5]  USPS argues that the arbitrator's death also moots Civil Action No. 05-1771—the suit to enforce the arbitration award.  Specifically, USPS states that, because of the arbitrator's death, APWU is prevented from exhausting its arbitral remedies.  However, because the court has already determined that the award was final when issued and that APWU did not fail to exhaust its arbitral remedies, this argument is rejected.

10

*U.S. Parole Comm. v. Geraghty*, 445 U.S. 388, 397 (1980) (quoting Henry Monaghan, *Constitutional Adjudication: The Who and When*, 82 YALE L. J. 1363, 1384 (1973)).  Mootness comes into question when "circumstances . . . destroy the justiciability of a suit previously suitable for determination."  13A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3533 (2d ed. 1984).

The death of Arbitrator Snow does not destroy the justiciability of the present actions. An actual controversy continues to exist; APWU believes that arbitration can go forward before a different arbitrator, USPS does not.  USPS argues that the case must be dismissed as moot because this court "can grant no meaningful relief."  Def.'s Mot. (Civ. No. 05-1771), at 15.  This is incorrect, for this court certainly has the constitutional authority to agree with APWU's argument, assuming the facts support such an argument, and find that arbitration before a new arbitrator is appropriate under the settlement agreement.  Therefore, the court cannot conclude that the present case is moot.  Rather, the death of Arbitrator Snow may give rise to an impossibility defense for USPS, a possibility discussed in more detail below.

   3. *Pending Review by the NLRB*

In general, the NLRB and the courts share concurrent jurisdiction over labor matters governed both by the National Labor Relations Act and the parties' collective bargaining agreement.  *Carey v. Westinghouse Elec. Corp.*, 375 U.S. 261 (1964).[6]  Here, the NLRB is

---

[6] Section 1208(b) of the Postal Reorganization Act, 39 U.S.C. § 1208(b), gives federal district courts jurisdiction over suits for violations of labor agreements, including suits to compel arbitration.  Section 1208(b) is virtually identical to Section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a), an act that amended the National Labor Relations Act.  For this reason, courts have applied cases interpreting Section 301(a) when determining the scope of Section 1208(b).  *See, e.g.*, *United States Postal Servs. v. Nat'l Assoc. Letter Carriers*, 959 F.2d 283, 286 (D.C. Cir. 1992).

currently considering a unit clarification petition filed by USPS, resolution of which could affect

this litigation.  In light of this, USPS requests that the court dismiss APWU's complaints without

prejudice or, in the alternative, stay this suit pending resolution by the NLRB of USPS's petition.

The court declines USPS's request to dismiss the case.  As other courts have stated, "a

stay is preferable to outright dismissal" in cases where deference to an agency is appropriate.

*Messinger v. Building Contractors Ass'n*, 703 F. Supp. 320, 324 (S.D.N.Y. 1989); *see*

*also Reiter v. Cooper*, 507 U.S. 258, 268–70 (1993).

Other circuits have gone even further, holding that it is reversible error for a court to

dismiss an action in cases involving concurrent jurisdiction.  The Ninth Circuit, in *Northern*

*California Dist. Council of HOD Carriers v. Opinski*, 673 F.2d 1074, 1076 (9th Cir. 1982),

reversed a district court decision dismissing without prejudice a union's action to compel

arbitration, writing that "[w]here a court suspends proceedings in order to give preliminary

deference to an independent adjudicating body but further judicial proceedings are contemplated,

then jurisdiction should be retained by a stay of proceedings, not relinquished by dismissal."  The

Fifth Circuit adopted a similar position in an analogous case, *Von Hoffburg v. Alexander*, 615

F.2d 633, 641–42 (5th Cir. 1980), reversing the district court's dismissal of the plaintiff's

monetary damages claims because of possible prejudice to the plaintiff.  In order to avoid the

potential bar of a statute of limitations, the court ordered that the damages claim be reinstated

and stayed pending resolution of the agency action.  *Id.*  Because the action pending before the

NLRB will not resolve all of the issues in this case and because dismissal has the potential to

prejudice APWU, dismissal would be inappropriate.

Alternatively, USPS seeks a stay of proceedings pending the NRLB's decision of the pending unit clarification petition.  It is clear that "courts possess the inherent authority to stay proceedings in the interests of judicial economy and efficiency."  *Landis v. North American Co.*, 299 U.S. 248, 254–55 (1936); *Painters' Pension Trust Fund v. Manganaro Corp.*, 693 F. Supp. 1222, 1224 (D.D.C. 1988).  When considering whether to stay its proceedings, the D.C. Circuit instructs that a court must ascertain "the true value that would follow prior completion of the related agency proceedings."  *Rohr Industries v. Washington Metro. Area Transit Auth.*, 720 F.2d 1319, 1325 (D.C. Cir. 1983).

Here, the best course of action at this point is to deny USPS's motion for a stay without prejudice.  Because the court today denies APWU's motion for summary judgment, as discussed below, the ultimate issues in these cases remain undecided.  Therefore, the parties' legal obligations remain in dispute and will continue to remain in dispute until and unless one of the parties opts to file a further dispositive motion or this matter is otherwise set for trial.  Should the parties choose the former course—to file further dispositive motions—it will necessarily take time for such briefing to be completed.  During such time, the NLRB may well issue its decision, thereby mooting any concerns the USPS has with this court issuing an opinion prior to the NLRB.  Or, alternatively, the parties may opt to proceed to trial to determine the remaining factual issues, in which case USPS's motion for a stay becomes more pressing.  However, until the parties express a preference as to how to proceed with the resolution of these action, resolution of the motion for a stay is unnecessary.  Therefore, the court denies USPS's motion for a stay without prejudice.

**D.  APWU's Motion for Summary Judgment**

In Civil Action No. 04-1404, APWU moves the court for summary judgment and seeks an order requiring USPS to proceed to arbitration pursuant to the settlement agreement.  APWU argues that there is no dispute that the parties contracted to have several of APWU's grievances heard in arbitration, that all conditions precedent to arbitrating the third such grievance have been met, and that USPS is refusing to select, schedule, or participate in any such arbitration.  While the court agrees with APWU's argument that many of the material issues in Civil Action No. 04-1404 are undisputed, there remains a genuine dispute as to what effect the death of Arbitrator Snow has on the ability of this court to compel arbitration under the settlement agreement.

The settlement agreement in this case explicitly states that "[a]rbitration hearings held pursuant to this settlement agreement shall be heard before Arbitrator Carlton Snow."  Def.'s Mot. (Civ. No. 04-1040), Ex. 1-1, at 2.  Arbitrator Snow died on November 19, 2004, prior to the selection of the third grievance for arbitration.  USPS argues that the settlement agreement "does not provide for this contingency, nor does it provide for alternate arbitrators or a panel of arbitrators to take Mr. Snow's place."  Def.'s Suggestion of Mootness (Civ. No. 04-1404), at 1.  APWU does not contest that the settlement agreement fails to explicitly account for the possibility of Arbitrator Snow's death.  Instead, APWU argues that the parties "can still go forward before a different mutually-selected arbitrator, a solution that these parties have used several times in the past when arbitrators died during the pendency of cases before them."  Pl.'s Opp'n (Civ. No. 04-1404), at 14.

It is well understood that a "promise may become physically impossible to perform because of the death . . . of a person whose continued life and health are necessary for the

14

performance to be rendered."  14 CORBIN ON CONTRACTS § 75.1 (2001).  Such impossibility

typically discharges the contractual duty of the promisor.  *Id.*; *see also* RESTATEMENT (SECOND)

OF CONTRACTS § 262 (1981) ("[T]he death of that person [necessary for the performance of a

duty] or his loss of capacity discharges the obligor's duty to render the performance.").  One

"threshold issue" in impossibility cases is "whether the performance promised is in fact to be

rendered only by" the party indicated in the contract.  14 CORBIN ON CONTRACTS § 75.1.  This

question must be resolved by "interpreting the contract in light of the surrounding circumstances,

customs, and relevant precedent."  *Id.*; *see also* MURRAY ON CONTRACTS § 113 ("If the parties

have not expressly indicated whether the continued existence of a particular person is essential

under the contract, a court must consider all of the surrounding circumstances to make that

determination.").

　　　Here, the death of Arbitrator Snow may well discharge any obligation by the parties to

submit their grievances to arbitration. Or, alternatively, the circumstances surrounding the

settlement agreement may establish that proceeding before a new arbitrator is appropriate.

Because the parties have not yet presented any evidence on this issue, the court is not currently in

a position to make this determination.  As such, a genuine dispute as to a material fact in this

case exists and summary judgment must be denied.[7]

---

[7]  Because the parties have not yet attempted to present evidence on the issue of whether the
death of Arbitrator Snow makes performance of the settlement agreement impossible, this denial
is without prejudice to renewal.

### III.  CONCLUSION

For the foregoing reasons, it is this 23rd day of March, 2006, hereby

**ORDERED** that defendant's motion to dismiss or, in the alternative, to stay [#8] in Civil Action 04-1404 is **DENIED**; and it is further

**ORDERED** that plaintiff's motion for summary judgment in Civil Action 04-1404 [#15] is **DENIED**; and it is further

**ORDERED** that defendant's motion to dismiss or, in the alternative, to consolidate and stay [#9] in Civil Action 05-1774 is granted in part and denied in part as set forth in this Memorandum Opinion; and it is further

**ORDERED** that Civil Action No. 04-1404 and Civil Action No. 05-1771 are **CONSOLIDATED**; and it is further

**ORDERED** that all further submissions related to the consolidated cases be filed in *American Postal Workers Union v. United States Postal Service*, Civil Action No. 04-1404.

Henry H. Kennedy Jr.
United States District Judge