UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AMERICAN POSTAL WORKERS UNION, AFL-CIO, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil No. 04-1404 (HHK) |
| UNITED STATES POSTAL SERVICE, | ) ) | |
| Defendant. | ) ) | |

**PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT**

Plaintiff American Postal Workers Union, AFL-CIO ("APWU") asks the Court to enter judgment in favor of the APWU and order the Postal Service to proceed to arbitration on a labor grievance and comply with a labor arbitration award.  Because the Postal Service has not answered the APWU's complaints on these claims, there are almost no material factual disputes and no legal defenses that prevent the Court from compelling arbitration and enforcing an arbitration award in accordance with an agreement of the parties.  The only unaddressed issue at this stage of litigation concerns the death of the arbitrator named in the parties' arbitration agreement, a concern that is not an impediment as the parties' practice and national policy in favor of labor arbitration mitigates any complications arising under the contract principle of impossibility.  Accordingly, judgment in favor of the APWU's claim to compel arbitration and to enforce an arbitration award should be entered.

Date:   June 28, 2006                Respectfully submitted,

                                     O'DONNELL, SCHWARTZ & ANDERSON, P.C.

                                             "/s/"
                                     By:_____
                                         Anton G. Hajjar
                                           ahajjar@odsalaw.com
                                         Melinda K. Holmes
                                           mholmes@odsalaw.com
                                         1300 L Street N.W., Suite 1200
                                         Washington, DC 20005-4178
                                         (202) 898-1707/ FAX (202) 682-9276

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
AMERICAN POSTAL WORKERS UNION,          )
AFL-CIO,                                )
                                        )
            Plaintiff,                  )
                                        )
      v.                                )    Civil No. 04-1404 (HHK)
                                        )
UNITED STATES POSTAL SERVICE,           )
                                        )
            Defendant.                  )
_____)

## PLAINTIFF'S STATEMENT OF MATERIAL FACTS
## AS TO WHICH THERE IS NO GENUINE ISSUE

In accordance with Local Rule 7(h), the plaintiff makes this statement of material facts as to which there is no genuine issue:

1.     At all material times, the American Postal Workers Union, AFL-CIO ("APWU") and the United States Postal Service have been parties to a collective bargaining agreement that sets forth the terms and conditions of employment of employees in bargaining units represented by the APWU at various Postal Service facilities throughout the United States ("National Agreement"). (Compl. 04-1404 at ¶6; Compl. 05-1771 at ¶6; Guffey Dec. at ¶3.)

2.     On December 13, 1999, the APWU and the Postal Service executed an agreement negotiated by the parties and entitled "USPS Settlement Agreement, NLRB Case No. 5-UC-353." (Compl. 04-1404 at ¶7; Compl. 05-1771 at ¶7; Declaration of Clifford J. Guffey ("Guffey Dec.") at ¶6, Exhibit 1.)

3.     The USPS Settlement Agreement was intended to settle long-running work jursidiction and unit placement disputes involving EAS employees in an expeditious manner by substituting broadly-worded grievances about the EAS positions and work assignments for thousands of

pending grievances as well as a unit clarification petition filed by the APWU. (Guffey Dec. at ¶7.)

4.    The USPS Settlement Agreement "represents an understanding between the parties to fully and completely resolve any and all issues, and all currently pending grievances regarding the above-captioned Unit Clarification petition." (Compl. 04-1404 at ¶8; Compl. 05-1771 at ¶8; Guffey Dec. ¶7, Exhibit 1.)

5.    The USPS Settlement Agreement specified, among other things, grievances filed by the APWU that, unless resolved before arbitration, the parties agreed to arbitrate. (Compl. 04-1404 at ¶9; Compl. 05-1771 at ¶9; Guffey Dec.at ¶8, Exhibit 1.)

6.    The grievances the parties agreed in the settlement agreement to arbitrate involve the APWU's claims that certain positions belong in the APWU bargaining unit or that the duties performed by certain positions should be assigned to the APWU bargaining unit. The settlement agreement expressly reiterates these issues. (Guffey Dec. at ¶8, Exhibit 1.)

7.    Included among these grievances is a grievance concerning the "Address Management System Specialist" position and work, which was assigned case number Q94C-4Q-C 98117564 by the Postal Service. (Compl. 05-1771 at ¶10; Guffey Dec. at ¶9.)

8.    The USPS Settlement Agreement also states that "Arbitration hearings held pursuant to this settlement agreement shall be heard before Arbitrator Carlton Snow. The first case to be heard will be Case No. H4C-4H-C 25455, Wichita, KS. The APWU will select the second case, and the Postal Service will select the third case, and so forth, with each party alternating selections. Upon issuance of the Award in the first case, the next case shall be promptly scheduled and heard." (Compl. 04-1404 at ¶10; Guffey Dec. at ¶10, Exhibit 1.)

2

9.     The USPS Settlement Agreement also states that "[i]n initiating the several August 27, 1998 grievances, the APWU intended to broadly encompass disputes over whether the positions belong in the bargaining unit or whether the positions contain duties which should be assigned to the bargaining unit.  The parties shall apply the national level arbitration awards which are issued as a result of this settlement agreement as broadly as possible in an effort to resolve other pending EAS grievances raising the same or similar issues or arguments."  (Compl. 05-1771 at ¶9; Guffey Dec. at ¶8, Exhibit 1.)

10.     On June 22, 2000, the parties presented to Arbitrator Snow the Wichita, Kansas case specified in the USPS Settlement Agreement as the first case to be heard.  (Compl. 04-1404 at ¶11.)

11.     Arbitrator Snow issued an award in the Wichita, Kansas case dated June 22, 2001. (Compl. 04-1404 at ¶12.)

12.     After Arbitrator Snow issued a decision issued in the first case heard in accordance with the USPS Settlement Agreement, the APWU selected the AMS case as the next case for arbitration.  (Compl. 04-1404 at ¶13.)

13.     The parties presented the AMS case to Arbitrator Snow over two days in 2002.  (Compl. 04-1404 at ¶14.)

14.     Arbitrator Snow issued an award in the AMS case dated April 29, 2003.  (Compl. 04-1404 at ¶15; Compl. 05-1771 at ¶12; Guffey Dec. at ¶11, Exhibit 2.)

15.     Arbitrator Snow's award in the AMS case sets out the following holding:

## AWARD

Having carefully considered all evidence submitted by the parties concerning this

matter, the arbitrator concludes that the 'Address Management System Specialist'
position is part of the APWU bargaining unit and that it is a violation of Article
1.2 of the National Agreement to exclude the position and the disputed work from
the bargaining unit. The arbitrator shall retain jurisdiction in this matter for ninety
days from the date of the report in order to resolve any problems resulting from
the remedy in the award. It is so ordered and awarded.

(Compl. 05-1771 at ¶13; Guffey Dec. at ¶12, Exhibit 2.)

16.     The award of Arbitrator Snow in the AMS case is final and binding. (Compl. 05-1771 at

¶14.)

17.     The Postal Service has failed and refused to comply with Arbitrator Snow's award in the

AMS case and to implement the award's holding. (Compl. 05-1771 at ¶17; Guffey Dec. at ¶14.)

18.     The Postal Service has directed its local-level managers not to arbitrate or resolve any

grievances concerning the AMS Specialist position or work, or citing, relying upon, or otherwise

referring to Arbitrator Snow's AMS award. (Compl. 05-1771 at ¶15; Guffey Dec. at ¶15.)

19.     The Postal Service refuses to arbitrate or resolve any grievances concerning the AMS

Specialist position, including a grievance arising in Asheville, North Carolina in USPS

Grievance No. C00C4CC03175549. (Compl. 05-1771 at ¶16; Guffey Dec. at ¶16.)

20.     In accordance with the terms of the USPS Settlement Agreement, the Postal Service is to

select from the grievances identified in the Agreement the next case for arbitration. (Compl. ¶04-

1404 at ¶16.)

21.     Since the issuance of the award in the AMS case, the APWU has asked the Postal Service

to identify the case it has selected for the next arbitration under the USPS Settlement Agreement

and to arrange for a hearing date in the case selected by the Postal Service. (Compl. 04-1404 at

¶17; Guffey Dec. at ¶17.)

4

22.    To date, the Postal Service has failed and refused to select or attempt to schedule the next

case to be heard in accordance with the USPS Settlement Agreement. (Compl. 04-1404 at ¶18;

Guffey Dec. at ¶18.)

23.    In November 2004, Arbitrator Snow suddenly and unexpectedly died. (Guffey Dec. at

        ¶19.)

24.    Arbitrator Snow's death is not the first time an arbitrator designated by the APWU and

the Postal Service to decide a grievance arbitration has passed away during the pendency of his or

her appointment as the parties' arbitrator. (Guffey Dec. at ¶20.)

25.    On the national level of the parties' grievance procedure, one of the most notable

situations of this type concerned the death of Arbitrator Howard Gamser during the pendency of

a large national-level arbitration. The parties had mutually selected Arbitrator Gamser to hear a

series of issues concerning Article 1.6 of the National Agreement. (Guffey Dec. at ¶21.)

26.    A substantial number of local grievances had been filed by the APWU alleging various

violations of Article 1.6's prohibition on supervisors performing bargaining unit work. The

parties grouped the issues in the numerous grievances into representative issues and submitted

them to Arbitrator Gamser for resolution. (Guffey Dec. at ¶22.)

27.    Arbitration hearings began in May of 1981, but only ten days of hearing covering fewer

than half the issues were completed when Arbitrator Gamser died in April of 1983. (Guffey Dec.

at ¶23.)

28.    After Arbitrator Gamser's death, the parties resumed a day of arbitration before another

arbitrator. (Guffey Dec. at ¶24.)

29.    Following that hearing, after extra-arbitral efforts at settling the case failed, the parties

                                                    5

agreed to re-submit the case to Arbitrator Snow.  (Guffey Dec. at ¶25.)

30.    Rather than redo the first eleven days of hearing, the parties submitted thousands of pages

of transcripts and exhibits to Arbitrator Snow and proceeded with the case.  (Guffey Dec. at ¶26.)

31.    After an additional five days of hearing between 1988 and 1989, Arbitrator Snow issued a

final award on July 3, 1990.  (Guffey Dec. at ¶27.)

32.    The APWU and the Postal Service jointly employ a large number of arbitrators to serve

on regional or national arbitrator panels to hear grievance arbitrations at those respective levels.

(Guffey Dec. at ¶28.)

33.    Until shortly before the parties entered into the USPS Settlement Agreement, Arbitrator

Snow had been appointed to the parties' national level panel.  (Guffey Dec. at ¶29.)

34.    At present, the parties have two arbitrators on the national panel, Shyam Das and Linda

Byers.  Dozens of other arbitrators are employed by the parties throughout the country to hear

regional-level disputes.  (Guffey Dec. at ¶30.)

35.    The service of all of the arbitrators, including Das and Byers, is contracted for by the

parties with a standard engagement letter.  The arbitrators are then available to handle cases as

they are assigned by the parties, usually on a rotating basis.  (Guffey Dec. at ¶31.)

36.    The APWU has always taken the position that when an arbitrator is unable to complete

his or her service, any matters pending before him or her be returned to the appropriate panel for

reassignment to another arbitrator.  This can occur in cases remanded to arbitration where the

original arbitrator is no longer on the panel, as well as instances where arbitrators have died.

(Guffey Dec. at ¶32.)

37.    The docket under the National Agreement for national level cases is very lengthy and the

6

APWU wished to have the Settlement Agreement grievances resolved quicker and out-of-order from the other pending grievances on the national docket. (Guffey Dec. at ¶33.)

38.    The APWU suggested Snow to be the arbitrator for the USPS Settlement Agreement cases. (Guffey Dec. at ¶34.)

39.    The APWU suggested Arbitrator Snow because he had been a national-level arbitrator for the parties, was familiar with the Postal Service and its industry, and was available to hear the cases quickly and in order as specified by the USPS Settlement Agreement. (Guffey Dec. at ¶35.)

40.    Other than these considerations, there was nothing specific about Arbitrator Snow which uniquely qualified him to be the arbitrator under the USPS Settlement Agreement. (Guffey Dec. at ¶36.)

41.    Snow's actual appointment was confirmed by using the parties' standard engagement letter which references the "Code of Professional Responsibility for Arbitrators of Labor-Management Disputes." (Guffey Dec. at ¶37, Exhibit 3 & 4.)

42.    The Code of Professional Responsibility instructs that the essential qualifications for a labor arbitrator are honesty, integrity, impartiality and general competence in labor relations matters. Arbitrators are obligated by the Code to identify if a case requires specialized knowledge beyond the arbitrator's competence. (Guffey Dec. at ¶38, Exhibit 4.)

43.    In the two cases he decided in accordance with the Settlement Agreement, Arbitrator Snow never indicated that they required specialized knowledge beyond his competence to decide. (Guffey Dec. at ¶39.)

Date: June 28, 2006          Respectfully submitted,

O'DONNELL, SCHWARTZ & ANDERSON, P.C.

"/s/"

By:_____

    Anton G. Hajjar
      ahajjar@odsalaw.com
    Melinda K. Holmes
      mholmes@odsalaw.com
    1300 L Street N.W., Suite 1200
    Washington, DC 20005-4178
    (202) 898-1707/ FAX (202) 682-9276