UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN POSTAL WORKERS UNION, AFL-CIO, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. 04-1404 ) |
| UNITED STATES POSTAL SERVICE, | ) ) |
| Defendant. | ) ) ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

The American Postal Workers Union ("APWU") has brought suit over the United States Postal Service's failure to abide by an agreement to arbitrate certain labor disputes and to comply with a final and binding labor arbitrator's award. The Postal Service has not answered the APWU's complaints despite the Court's denial of the Postal Service's motions to dismiss almost three months ago. Accordingly, little is in dispute concerning the APWU's efforts to enforce an agreement with the Postal Service to arbitrate expeditiously certain long-standing disputes between the parties, and thereafter abide by the result of those arbitrations.

The sole issue to be litigated is one the APWU does not anticipate will raise material disputes of fact. The death of the arbitrator named in the parties' arbitration agreement does not void the agreement itself or the parties' obligations thereunder. The parties' experience and practical ability to deal with precisely this issue, particularly when considered in light of national policy in favor of labor arbitration, militates against nullification of the arbitration agreement on the basis of general contract principles of impossibility. And because the death of an arbitrator has no factual or legal bearing on the validity of his award, there is similarly no prohibition on

the Court enforcing at least part of the labor arbitration award with which the Postal Service has failed to comply. The Court should therefore grant summary judgment for the APWU.

## I. STATEMENT OF THE CASE

The APWU originally filed two separate complaints, one in case no. 04-1404 seeking to compel the Postal Service to arbitration in accordance with an agreement to arbitrate and a second in case no. 05-1771 seeking the Court's enforcement of a particular arbitration award arising out of the aforementioned agreement. The Postal Service did not answer the APWU's complaints and instead filed motions to dismiss or in the alternative to stay each complaint. In case no. 04-1404, the Postal Service also filed a suggestion of mootness occasioned by the death, after case no. 04-1404 had been initiated, of the arbitrator identified in the parties' arbitration agreement. The APWU opposed all of the Postal Service's filings and filed its own summary judgment motion in case 04-1404. The Postal Service also moved for consolidation of the two cases which the APWU opposed.

By Memorandum Opinion and Order docketed on March 23, 2006, the Court addressed the parties' various filings. The Court denied the Postal Service's motions to dismiss, denied without prejudice the Postal Service's request for a stay, and dismissed the Postal Service's suggestion of mootness. The Court also denied the APWU's summary judgment motion in the suit to compel arbitration, noting that "there remains a genuine dispute as to what effect the death of Arbitrator Snow has on the ability of this court to compel arbitration under the settlement agreement." (3/23/06 Mem. Op. and Order [# 18] at 14.) Because, however, the parties had not fully developed the factual and legal issues raised by the death of the arbitrator, the Court permitted the APWU leave to renew its summary judgment motion to address the issue. (3/23/06 Mem. Op. and Order [# 18] at 15 n.7.) Finally, the Court granted the motion to consolidate the

two cases.

Since the issuance of the Court's Order denying the Postal Service's motions to dismiss in March 2006, the Postal Service has not answered the APWU's complaints as required by Rule 12 of the Federal Rules of Civil Procedure or made any other filing in the consolidated case.

## II.  STATEMENT OF FACTS

### A.  Undisputed Facts

Because the Postal Service has not answered the APWU's complaints, all of the facts alleged therein are deemed admitted.  For purposes of background, these facts include the following:

The APWU and the Postal Service are parties to a national collective bargaining agreement ("National Agreement") that sets forth the terms and conditions of employment of employees in bargaining units represented by the APWU at various Postal Service facilities throughout the United States.  (Compl. 04-1404 at ¶6; Compl. 05-1771 at ¶6.)  The National Agreement has been in effect throughout the duration of these lawsuits.  (Guffey Dec. at ¶3.)

On December 13, 1999, the APWU and the Postal Service executed an agreement negotiated by the parties and entitled "USPS Settlement Agreement, NLRB Case No. 5-UC-353."  (Compl. 04-1404 at ¶7; Compl. 05-1771 at ¶7; Guffey Dec. at ¶6, Exhibit 1.)  The USPS Settlement Agreement "represents an understanding between the parties to fully and completely resolve any and all issues, and all currently pending grievances regarding the above-captioned Unit Clarification petition" and specifies, among other things, grievances filed by the APWU that, unless resolved before arbitration, the parties agreed to arbitrate.  (Compl. 04-1404 at ¶¶8, 9; Compl.05-1771 at ¶¶8, 9; Guffey Dec. at ¶¶7, 8, Exhibit 1.)  The USPS Settlement Agreement includes the following terms:

- "Arbitration hearings held pursuant to this settlement agreement shall be heard before Arbitrator Carlton Snow. The first case to be heard will be Case No. H4C-4H-C 25455, Wichita, KS. The APWU will select the second case, and the Postal Service will select the third case, and so forth, with each party alternating selections. Upon issuance of the Award in the first case, the next case shall be promptly scheduled and heard." (Compl. 04-1404 at ¶10; Guffey Dec. at ¶10, Exhibit 1.)

- "[i]n initiating the several August 27, 1998 grievances, the APWU intended to broadly encompass disputes over whether the positions belong in the bargaining unit or whether the positions contain duties which should be assigned to the bargaining unit. The parties shall apply the national level arbitration awards which are issued as a result of this settlement agreement as broadly as possible in an effort to resolve other pending EAS grievances raising the same or similar issues or arguments." (Compl. 05-1771 at ¶9; *see* Guffey Dec. at ¶8, Exhibit 1.)

In June 2000, the APWU and the Postal Service proceeded to arbitration before Arbitrator Snow on the case specified in the USPS Settlement Agreement as the first to be heard. (Compl. 04-1404 at ¶11.) Arbitrator Snow issued an award in the case in June 2001 in which he found in favor of the APWU. (Compl. 04-1404 at ¶12.) In accordance with the Settlement Agreement, the APWU selected its grievance concerning the "Address Management System Specialist" ("AMS Specialist") position and work as the next to be heard, and the parties arbitrated the AMS Specialist grievance before Arbitrator Snow over two days in 2002. (Compl. 04-1404 at ¶¶13, 14; Guffey Dec. at ¶9.)

Arbitrator Snow issued an award in the AMS Specialist case on April 29, 2003 which made the following holding:

### AWARD

Having carefully considered all evidence submitted by the parties concerning this matter, the arbitrator concludes that the "Address Management System Specialist" position is a part of the APWU bargaining unit and that it is a violation of Article 1.2 of the National Agreement to exclude the position and the disputed work from the bargaining unit. The arbitrator shall retain jurisdiction in this matter for ninety days from the date of the report in order to resolve any problems resulting from the remedy in the award. It is so ordered and awarded.

(Compl. 04-1404 at ¶15; Compl. 05-1771 at ¶¶12, 13; Guffey Dec. at ¶¶11, 12, Exhibit 2.)

Although Arbitrator Snow's award is final and binding, the Postal Service has failed and refused to comply with the award and to implement the award's holding.in any respect. (Compl. 05-1771 at ¶¶14, 17; Guffey Dec. at ¶14.) The Postal Service has directed its local-level managers not to arbitrate or resolve any grievances concerning the AMS Specialist position or work, or citing, relying upon, or otherwise referring to Arbitrator Snow's award. (Compl. 05-1771 at ¶15; Guffey Dec. at ¶15.) In its dealings with the APWU, the Postal Service refuses to arbitrate or resolve any grievances concerning the AMS Specialist position and work or similar issues, including a grievance arising in Asheville, North Carolina in USPS Grievance No. C00C4CC03175549 that concerns the same or similar issues or arguments resolved by Arbitrator Snow's award. (Compl. 05-1771 at ¶16; Guffey Dec. at ¶16.)

In addition to its outright failure and refusal to abide by Arbitrator Snow's award, the Postal Service also refuses to go forward with the remaining grievance arbitrations specified in the USPS Settlement Agreement. In accordance with the terms of the USPS Settlement Agreement, the Postal Service is obligated to select the next grievances to be heard in arbitration. (Compl. 04-1404 at ¶16.) Since the issuance of Arbitrator Snow's award, the APWU has asked

the Postal Service to identify the case it has selected for the next arbitration under the USPS Settlement Agreement. (Compl. 04-1404 at ¶17; Guffey Dec. at ¶17.) To date, however, the Postal Service has failed and refused to select or attempt to schedule the next case to be heard. (Compl. 04-1404 at ¶18; Guffey Dec. at ¶18.)

      **B.**      **The Death of Arbitrator Snow**

In November 2004, Arbitrator Snow died. (Guffey Dec. at ¶19.) This is not, however, the first time an arbitrator designated by the APWU and the Postal Service to decide a grievance arbitration has passed away during the pendency of his or her appointment. (Guffey Dec. at ¶20.) On the national level of the parties' grievance procedure, one of the most notable situations concerned the death of Arbitrator Howard Gamser during the pendency of a large national-level arbitration. (Guffey Dec. at ¶21.) The parties mutually selected Arbitrator Gamser to hear a series of issues concerning Article 1.6 of the parties' national collective bargaining agreement. (Guffey Dec. at ¶21.) A substantial number of local grievances had been filed by the APWU alleging various violations of Article 1.6's prohibition on supervisors performing bargaining unit work. (Guffey Dec. at ¶22.) The parties grouped the issues in the numerous grievances into representative issues and submitted them Arbitrator Gamser for resolution. (Guffey Dec. at ¶22.) Arbitration hearings began in May of 1981, but only ten days of hearing covering fewer than half the issues were completed when Arbitrator Gamser died in April of 1983. (Guffey Dec. at ¶23.) First the parties resumed a day of arbitration before another arbitrator. (Guffey Dec. at ¶24.) Then, after extra-arbitral efforts at settling the case failed, the parties re-submitted the case to, ironically, Arbitrator Snow. (Guffey Dec. at ¶25.) Rather than redo the first eleven days of hearing, the parties submitted thousands of pages of transcripts and exhibits to Arbitrator Snow and proceeded with the case. (Guffey Dec. at ¶26.) After an additional five days of hearing

between 1988 and 1989, Arbitrator Snow issued a final award on July 3, 1990. (Guffey Dec. at ¶27.)

The APWU and the Postal Service jointly employ a large number of arbitrators to serve on regional or national arbitrator panels to hear grievance arbitrations at those respective levels. (Guffey Dec. at ¶28.) Arbitrator Snow had been appointed to the national level panel until shortly before the parties entered into the USPS Settlement Agreement. (Guffey Dec. at ¶29.) At present, the parties have two arbitrators on the national panel, Shyam Das and Linda Byers, and dozens of other arbitrators are employed by the parties throughout the country to hear regional-level disputes. (Guffey Dec. at ¶30.) The service of all of the arbitrators, including Das and Byers, is contracted for by the parties with a standard engagement letter. (Guffey Dec. at ¶31.) The arbitrators are then available to handle cases as they are assigned by the parties, usually on a rotating basis. (Guffey Dec. at ¶31.) The APWU has always taken the position that when an arbitrator is unable to complete his or her service, any matters pending before him or her be returned to the appropriate panel for reassignment to another arbitrator. (Guffey Dec. at ¶32.) This can occur in cases remanded to arbitration where the original arbitrator is no longer on the panel, as well as instances where arbitrators have died. (Guffey Dec. at ¶32.)

The APWU suggested Snow to be the arbitrator for the USPS Settlement Agreement cases. (Guffey Dec. at ¶34.) The APWU suggested Snow because he had been a national-level arbitrator for the parties, was familiar with the Postal Service and its industry, and was available to hear the cases quickly and in order as specified by the USPS Settlement Agreement. (Guffey Dec. at ¶35.) Other than these considerations, there was nothing specific about Arbitrator Snow which uniquely qualified him to be the arbitrator under the USPS Settlement Agreement. (Guffey Dec. at ¶36.) Snow's actual appointment was confirmed by using the parties' standard

engagement letter which references the "Code of Professional Responsibility for Arbitrators of Labor-Management Disputes." (Guffey Dec. at ¶37.) The Code of Professional Responsibility instructs that the essential qualifications for a labor arbitrator are honesty, integrity, impartiality and general competence in labor relations matters. (Guffey Dec. at ¶38, Exhibit 4.) Arbitrators are obligated by the Code to identify if a case requires specialized knowledge beyond the arbitrator's competence. (Guffey Dec. at ¶38, Exhibit 4.) In the two cases he decided in accordance with the USPS Settlement Agreement, Arbitrator Snow never indicated that they required specialized knowledge beyond his competence to decide. (Guffey Dec. at ¶39.)

### III.  ARGUMENT

#### A.  <u>The General Standard of Summary Judgment is Met Here.</u>

This case is ripe for summary judgment because the Postal Service has not disputed any of the facts pleaded by the APWU nor has the Postal Service raised any affirmative defenses to the APWU's legal claims. An answer to a complaint must be served within ten days after notice of the court's action on a motion to dismiss. F.R.C.P. 12(a)(4)(A). To date, almost 90 days after notice of the Court's denial of the Postal Service's motions to dismiss, the Postal Service has not filed an answer. Thus, the facts and claims set forth in the APWU's complaints are deemed admitted. F.R.C.P. 8(d); 12(g); and 12(h). The sole remaining fact to be addressed in this case concerns the practice of the parties in addressing the death of one of their arbitrators, and even that, the APWU anticipates, will not be in dispute. Therefore, where there is no genuine issue as to any material fact and the APWU has further demonstrated that it is entitled to a judgment as a matter of law, summary judgment in favor of the APWU is appropriate. Fed. R. Civ. P. 56(c).

#### B.  <u>The Court Should Grant the APWU Summary Judgment Enforcing the AMS Award.</u>

The APWU is entitled to summary judgment enforcing the AMS Award. The Postal Service does not contradict any of the facts pleaded by the APWU, and the law is undisputedly in favor of effectuating labor arbitration agreements by enforcing labor arbitration awards in all but the most extraordinary circumstances. Since deciding the *Steelworkers Trilogy* in 1960, the Supreme Court has repeatedly held that the judiciary's role in reviewing arbitrations arising from collectively bargained agreements between labor unions and employers is one of almost complete deference to the arbitration process. United Steelworkers v. American Manufacturing Co., 363 U.S. 564 (1960); United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574 (1960); United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593 (1960); *accord* Hines v. Anchor Motor Freight, Inc., 424 U.S. 554 (1976). The Court of Appeals for the District of Columbia Circuit has affirmed this principle in cautioning that delay created by judicial review of labor arbitration awards should be vigorously avoided and that "[t]he case must present egregious deviations from the norm before we will abandon the firmly-established principle of deference." OPEIU v. Washington Metro. Area Transit Auth., 724 F.2d 133, 137 (D.C. Cir. 1983). So long as an award "draws its essence from" the parties' contract, it should be enforced. Enterprise Wheel, 363 U.S. at 597; National Post Office Mailhandlers v. U.S. Postal Service, 751 F.2d 834, 840 (6th Cir. 1985).

These basic predicates for enforcing the AMS award have all been met. The Court has already held that the AMS award is a final and binding labor arbitration award. (3/23/06 Mem. Op. and Order [#18] at 9-10.) The award is specifically and firmly rooted in the terms of the National Agreement and undisputedly draws its essence from that contract. There is nothing improper in the arbitrator's interpretation of the National Agreement on which the holding of the award is based, nor was anything awry in the process by which the award came about. In any

case, the Postal Service cannot raise any of these substantive defenses to the award being enforced because it did not timely move to vacate the award.  IBEW, Local 26 v. CWS Electric, 669 F. Supp. 495 (D.D.C. 1986)(failure to move to vacate award precludes advancing any defense to enforcement of award);  International Union of Operating Engineers v. Murphy Co., 82 F.3d 185, 188, n.1 (7th Cir. 1996) (citing authority from nine federal circuits supporting this proposition).

The argument the Postal Service made in its motion to dismiss concerning the pendency of a unit clarification petition over the AMS Specialist position has already been delayed, if not outright rejected, by the Court.  The Postal Service's NLRB unit clarification petition is not an absolute bar to enforcement of the AMS award.  Although the Court has suggested that the NLRB proceedings in the Postal Service's unit clarification petition may have bearing on the disposition of the APWU's claims to enforce the AMS award, the Court also correctly noted in its Order that "the action pending before the NLRB will not resolve all of the issues in this case..." (3/23/06 Mem. Op. and Order [#18] at 12.)  At least half of the issue presented to and decided by Arbitrator Snow and awaiting resolution in grievances and situations throughout the country[1] by the precedential application of the AMS award concerns a work assignment issue over which the NLRB has absolutely no jurisdiction.  E.g., Cranston Print Works Co., 269 NLRB 223, n.2 (1984).  It is an issue that deserves to be enforced notwithstanding the challenge the Postal Service is trying to lodge against a separate discrete part of the AMS award.

The work assignment issue, namely whether the National Agreement requires the Postal Service to assign some or all of the work of the AMS Specialist to bargaining unit employees, is

---

[1] The APWU's unchallenged complaint specifically seeks relief regarding other local-level grievances and situations that concern the AMS Award that the Postal Service refuses to address.  (See Complaint, case no. 05-1771 [#1].)

one which "is not appropriate for determination by a unit clarification petition." Cranston Print Works Co., 269 NLRB 223, n.2 (1984). In fact, when raised in a unit clarification proceeding, work assignment issues can cause a petition to be dismissed. Id.; *see also, e.g.,* Coatings Application and Waterproofing Co. of Indiana, Inc., 307 NLRB 806 (1992). As a general matter, "[i]t is not the Board's responsibility in representation proceedings to decide whether employees in the bargaining unit are entitled to do any particular work," so delaying enforcement of the work assignment issue for a ruling from the NLRB serves no purpose. Norway Gravure, 258 NLRB 438, n.1 (1981). Without question, the work assignment issue is independently a significant holding that could potentially resolve hundreds of other grievances. It is ripe for enforcement by the Court and is severable from any issue the NLRB may consider. Accordingly, the specter of a ruling from the NLRB on the unit placement issue should not impact the Court's enforcement of the work assignment part of the AMS award.

      B.      The Postal Service's Obligations Under the Settlement Agreement have not been Rendered Impossible or Impracticable Because of Arbitrator Snow's Death.

The death of Arbitrator Snow does not render the Postal Service's performance under the USPS Settlement Agreement impossible or impracticable. Although the parties specifically agreed to use Arbitrator Snow to adjudicate the grievances referenced in the USPS Settlement Agreement, it was never contemplated that his particular performance as arbitrator was so critical to performance of the agreement that his unanticipated death now voids the entire agreement. To the contrary, the principles of contract law on impossibility or impractability do not apply here, and to the extent the Court finds they do, they do not excuse the parties from their performance under the USPS Settlement Agreement.

Impossibility, as a general contract principle, concerns the often unanticipated occurrence

of an event, the non-occurrence of which was a basic assumption on which a contract was made. RESTATEMENT (SECOND) OF CONTRACTS §261 (1981). The death of a person can constitute such a basic assumption if the performance of that particular person is necessary for the performance of a duty under the contract. RESTATEMENT (SECOND) OF CONTRACTS §262 (1981). The cases involving the performance of a certain person often involve those where the person is one of the parties to the agreement and/or where the contract is a "personal service" agreement, the purpose of which is to specifically provide for services to be performed by a particular person such as, for example, commissioning a painting by a certain artist. *E.g.*, CNA Int'l Reinsurance Co. v. Phoenix, 678 So.2d 378, 378-380 (Fla. App. 1986)(actor loanout agreement for actor River Phoenix to star in a movie discharged by his death). A basic premise of these cases is, however, that "it is no longer practicable for anyone [else] to perform the duty" provided for in the contract. RESTATEMENT (SECOND) OF CONTRACTS §262 (Comment (a))(1981). As the Court has noted, determining whether the performance of a named person is a basic assumption of the contract requires "'interpreting the contract in light of the surrounding circumstances, customs, and relevant precedent.'" 3/23/06 Mem. Op. and Order at 15 (*quoting* 14 CORBIN ON CONTRACTS §75.1.); *see also* RESTATEMENT (SECOND) OF CONTRACTS §262 (Comment (b))("...resort may be had to the rules laid down in Chapter 9, The Scope of Contractual Obligations, including those on usage and course of dealing.")(1981). As a matter of contract construction, these habitual and customary practices should be interpreted into a contract if neither party to the contract knew or had reason to know that the other party attached a meaning to the contract's terms that differed or was inconsistent with these practices. RESTATEMENT (SECOND) OF CONTRACTS §220(a) (1981).

Nor does impossibility necessarily void an entire agreement, and reformation, particularly in the area of labor contracts, is preferred over nullification of a labor agreement that addresses

itself to resolving industrial unrest. Where only part of a party's performance under a contract is made impracticable, the party must perform the remaining part of his contractual duty, including, if necessary, making a reasonable substitute performance. RESTATEMENT (SECOND) OF CONTRACTS §270(a) (1981). Therefore, if "further performance is practicable, it may be possible to salvage at least some of the unexecuted part of the agreement." Id. at §270 (Comment (a)). Along with this rule is the general principle that the court can supply a reasonable term to the contract in order to salvage the agreement and avoid injustice. RESTATEMENT (SECOND) OF CONTRACTS §272 (Comment (c))(1981); Meiser v. Kyriakopoulos, 1991 WL 179087 at *2 (D.D.C. 1991)("The impossibility of performance of this nugatory condition does not, however, void the agreement. The surviving contract unambiguously contemplates the arbitration of this dispute...That requirement is plainly valid...[and] entitles plaintiff to an order requiring submission of this dispute to such arbitration.") In the area of collective bargaining agreements, particularly those that provide for grievance arbitration which, by definition, "is the substitute for industrial strife," Steelworkers v. Warrior & Gulf navigation Co., 363 U.S. 574, 578 (1960), the common law of contracts must yield to national labor policy and "impressive policy considerations favoring arbitration." John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 550 (1964); see also Savannah Printing Specialities & Paper Products Local Union 604 v. Union Camp Corp., 350 F.Supp. 632, 636 (S.D.Ga. 1972)("A contractual duty is excused in cases where intervening government regulations render performance impossible. This does not mean that the arbitration section of the collective bargaining agreement is a nullity. It retains vitality in all respects save those instances [that conflict with Title VII].)(citations omitted).

  Arbitrator Snow was not so integral to the parties' agreement that his death voids the USPS Settlement Agreement either in whole or in part. Unlike a personal service agreement in

which the services of a particular person are being contracted for, the Settlement Agreement simply identified who would arbitrate the APWU's grievances but did not otherwise commit Arbitrator Snow to such performance. The parties contracted for Arbitrator Snow's services separately after the Settlement Agreement was executed. Thus, this aspect of impossibility is not implicated by the facts of this case. Moreover, Arbitrator Snow did not bring such a uniquely specialized knowledge to these arbitrations that he cannot be replaced. As the Code of Professional Responsibility to which he was specifically bound by his engagement contract with the parties notes, beyond a general description of competence, arbitrators are expected to notify the parties if their cases require yet greater specialized knowledge. Arbitrator Snow gave no such notice, and instead proceeded to address the parties' claims consistent with the same competence of the national-level arbitrators that preceded and succeeded him in the parties' general arbitration process.

It is also not the situation that Arbitrator Snow's services were a basic assumption on which the USPS Settlement Agreement was premised. Even though Snow was preferred, and therefore suggested, by the APWU because he had been a national-level arbitrator for the parties, was familiar with the Postal Service and its industry, and was available to hear the cases quickly and in the order specified by the USPS Settlement Agreement, his qualifications were not so unique that he was not replaceable either now or even at the time he was suggested. The parties' practice, too, favors replacing Arbitrator Snow rather than foregoing arbitration altogether. Even in the more extraordinary situation where an arbitrator died while hearing a case, these parties were able to replace the arbitrator, salvage the work that had been done on the case, and ultimately preserve their agreement to arbitrate their disputes. A similar outcome should occur here, both because, legally, the knowledge of this earlier practice must be imputed to the USPS

Settlement Agreement where there is no evidence the parties anticipated or sought a different result in making their contract, and because in principle labor agreements to arbitrate are entitled to the highest protection. To conclude otherwise and nullify the parties' arbitration agreement not only violates these principles, but also throws all of the disputes underlying the agreement back into an adjudicatory realm that the parties had agreed was less effective than arbitration for resolving their differences.

      The APWU anticipates that the Postal Service will argue that the entire USPS Settlement Agreement is voided by Snow's death, but is confident that there is no merit to the Postal Service's argument. The APWU sadly has little doubt that the Postal Service is eager to nullify the deal it struck with the APWU because it has not prevailed in the arbitrations as it hoped it would. As expressly reiterated in the USPS Settlement Agreement, Snow's awards must be given full precedential value in the future cases heard in accordance with the USPS Settlement Agreement. In this respect, too, any special qualities of Snow persist even if he is replaced, because the precedent he firmly established must be followed by succeeding arbitrators. But because the precedent established by Arbitrator Snow is in favor of the APWU on the fundamental issues to be litigated in the future cases, the Postal Service seems to want to avoid having those future cases decided. The parties made the commitment in their agreement to "apply the national level arbitration awards which are issued as a result of this settlement agreement as broadly as possible in an effort to resolve other pending EAS grievances raising the same or similar issues or arguments." (Guffey Dec. at ¶6, Exhibt 1 (p. 2, last bullet).) In light of the parties' commitment to resolving their disputes broadly, for the Postal Service to contend that the agreement can be voided based on the narrowest interpretation of its terms evinces bad faith, not honest contract interpretation.

The ability and resources to fill Snow's role under the USPS Settlement Agreement are readily available.  The Court can avail itself of at least two options that are reasonable and conform with the parties' practices: (1) order the parties to meet to mutually agree upon a replacement arbitrator or (2) appoint one of the numerous mutually agreed-upon arbitrators to fulfill Arbitrator Snow's appointment in accordance with the USPS Settlement Agreement.  Both of these options are consistent with the parties' practice as well as the scant authority addressing similar situations.  *E.g.*, <u>United Government Security Officers of Am., Local 38 v. Wackenhut Corp.</u>, 2005 WL 2104849 at *4 (D.Or. 2005)(where original arbitrator died before deciding all issues, court remanded new issue to another arbitrator selected in accordance with parties' collective bargaining agreement).  They are also consistent with the spirit of the USPS Settlement Agreement which seeks to have the parties' EAS disputes handled in arbitration quickly and independent of the parties' other national-level grievances.  Accordingly, the Court should give the parties' contract fair deference and order the Postal Service to select another arbitrator so that the parties can proceed to their next arbitration.

## IV. CONCLUSION

For the foregoing reasons, the APWU's motion should be granted.

                                                Respectfully submitted,

Date: June 28, 2006                O'DONNELL, SCHWARTZ & ANDERSON, P.C.

                                                "/s/"
                                By: _____
                                      Anton G. Hajjar (DC Bar No. 359267)
                                            ahajjar@odsalaw.com
                                      Melinda K. Holmes (DC Bar No. 458043)
                                          mholmes@odsalaw.com
                                      1300 L Street, N.W., Suite 1200
                                      Washington, D.C. 20005
                                      (202) 898-1707