UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN POSTAL WORKERS UNION, AFL-CIO, <br><br>　　　　Plaintiff, <br><br>　　v. <br><br>UNITED STATES POSTAL SERVICE, <br><br>　　　　Defendant. | Civil No. 04-1404 (HHK) |

### DECLARATION OF CLIFFORD J. GUFFEY

I, Clifford J. Guffey, in lieu of an affidavit as provided in 28 U.S.C. §1746, declare that the following is true:

1.　I am the Executive Vice President of the American Postal Workers Union, AFL-CIO ("APWU") and have held that office since 2001. Prior to that I was the Director of the APWU Clerk Division from 1998 to 2001. Prior to that I was Assistant Director of the Clerk Division from 1986 to 1998. These are elected positions within the APWU.

2.　I am personally familiar with events leading up to and after the APWU and the Postal Service entered into a settlement agreement to resolve certain work jurisdiction and unit placement issues involving various Executive and Administrative Schedule ("EAS") positions, the work assigned to those positions, and other issues.

3.　I am also personally familiar with the procedures and processes concerning the grievance and arbitration system under the parties' national collective bargaining agreement ("National Agreement") which has been in effect throughout the duration of these lawsuits.

4. In the late 1990s, the APWU filed a unit clarification ("UC") petition with the National Labor Relations Board ("NLRB") concerning certain EAS positions. The NLRB assigned the petition case no. 05-UC-353.

5. At the time it filed the UC petition, the APWU had thousands of grievances pending over the Postal Service assigning bargaining unit work to the non-bargaining unit EAS positions.

6. On December 13, 1999, the APWU and the Postal Service executed a settlement agreement negotiated by the parties to resolve the APWU's UC petition. The agreement is entitled "USPS Settlement Agreement, NLRB Case No. 5-UC-353." A copy of that agreement is attached to this declaration as Exhibit 1.

7. I was the APWU's representative in the negotiations leading to the USPS Settlement Agreement which was intended to settle long-running work jurisdiction and unit placement disputes involving the EAS employees in an expeditions manner by substituting broadly-worded grievances about the EAS positions and work assignments for the thousands of pending grievances as well as the UC petition itself. By its terms, the USPS Settlement Agreement "represents an understanding between the parties to fully and completely resolve any and all issues, and all currently pending grievances regarding the above-captioned Unit Clarification petition."

8. The USPS Settlement Agreement specified, among other things, grievances filed by the APWU that, unless resolved before arbitration, the parties agreed to arbitrate. These grievances involve the APWU's claims that certain positions belong in the APWU bargaining unit or that the duties performed by certain positions should be assigned to the APWU bargaining unit. The settlement agreement expressly reiterates these issues.

9. Included among these grievances is a grievance concerning the "Address Management System Specialist" position and work, which was assigned case number Q94C-4Q-C 98117564 by the Postal Service.

10. The USPS Settlement Agreement also states that "Arbitration hearings held pursuant to this settlement agreement shall be heard before Arbitrator Carlton Snow. The first case to be heard will be Case No. H4C-4H-C 25455, Wichita, KS. The APWU will select the second case, and the Postal Service will select the third case, and so forth, with each party alternating selections. Upon issuance of the Award in the first case, the next case shall be promptly scheduled and heard."

11. Arbitrator Snow issued an award in the AMS case dated April 29, 2003. A copy of that award is attached to this declaration as Exhibit 2.

12. Arbitrator Snow's award in the AMS case sets out the following holding:

### AWARD

Having carefully considered all evidence submitted by the parties concerning this matter, the arbitrator concludes that the 'Address Management System Specialist' position is part of the APWU bargaining unit and that it is a violation of Article 1.2 of the National Agreement to exclude the position and the disputed work from the bargaining unit. The arbitrator shall retain jurisdiction in this matter for ninety days from the date of the report in order to resolve any problems resulting from the remedy in the award. It is so ordered and awarded.

13. The decision of Arbitrator Snow in the AMS case is final and binding.

14. The Postal Service has failed and refused to comply with Arbitrator Snow's award in the AMS case and to implement the award's holding.

15. The Postal Service has directed its local-level managers not to arbitrate or resolve any grievances concerning the AMS Specialist position or work, or citing, relying upon, or otherwise referring to Arbitrator Snow's AMS award.

16. The Postal Service refuses to arbitrate or resolve any grievances concerning the AMS Specialist position, including a grievance arising in Asheville, North Carolina in USPS Grievance No. C00C4CC03175549.

17. Since an award issued in the last case heard under the USPS Settlement Agreement, the AMS case, the APWU has asked the Postal Service to identify the case it has selected for the next arbitration under the Agreement and to arrange for a hearing date in the case selected by the Postal Service.

18. To date, the Postal Service has failed and refused to select or attempt to schedule the next case to be heard in accordance with the Settlement Agreement.

19. In November 2004, Arbitrator Snow suddenly and unexpectedly died.

20. Arbitrator Snow's death is not the first time an arbitrator designated by the APWU and the Postal Service to decide a grievance has passed away during the pendency of his or her appointment as the parties' arbitrator.

21. On the national level of the parties' grievance procedure, one of the most notable situations of this type concerned the death of Arbitrator Howard Gamser during the pendency of a large national-level arbitration. The parties had mutually selected Arbitrator Gamser to hear a series of issues concerning Article 1.6 of the National Agreement.

22. A substantial number of local grievances had been filed by the APWU alleging various violations of Article 1.6's prohibition on supervisors performing bargaining unit work. The parties grouped the issues in the numerous grievances into representative issues and submitted them to Arbitrator Gamser for resolution.

4

23. Arbitration hearings began in May of 1981, but only ten days of hearing covering fewer than half the issues were completed when Arbitrator Gamser died in April of 1983.

24. After Arbitrator Gamser's death, the parties resumed one more day of arbitration before another arbitrator.

25. Following that hearing, after extra-arbitral efforts at settling the case failed, the parties agreed to re-submit the case to Arbitrator Snow.

26. Rather than redo the first eleven days of hearing, the parties submitted thousands of pages of transcripts and exhibits to Arbitrator Snow and proceeded with the case.

27. After an additional five days of hearing between 1988 and 1989, Arbitrator Snow issued a final award on July 3, 1990.

28. The APWU and the Postal Service jointly employ a large number of arbitrators to serve on regional and national arbitrator panels to hear grievance arbitrations at those respective levels.

29. Arbitrator Snow had been appointed to the national level panel until shortly before the parties entered into the USPS Settlement Agreement.

30. At present, the parties have two arbitrators on the national panel, Shyam Das and Linda Byers. Dozens of other arbitrators are employed by the parties throughout the country to hear regional-level disputes.

31. The service of all of the parties' arbitrators, including Das and Byers, is jointly contracted-for with a standard engagement letter. The arbitrators are then available to handle cases as they are assigned by the parties, usually on a rotating basis.

32. The APWU has always taken the position that when an arbitrator is unable to complete his or her service, any matters pending before him or her be returned to the appropriate panel for

reassignment to another arbitrator. This can occur in cases remanded to arbitration where the original arbitrator is no longer on the panel, as well as instances where an arbitrator has died.

33. The docket under the National Agreement for national level cases is very lengthy and the APWU wished to have the Settlement Agreement grievances resolved quicker and out-of-order from the other pending grievances on the national docket.

34. The APWU suggested Snow to be the arbitrator for the USPS Settlement Agreement cases.

35. The APWU suggested Snow because he had been a national-level arbitrator for the parties, was familiar with the Postal Service and its industry, and was available to hear the cases quickly and in the order specified by the USPS Settlement Agreement.

36. Other than these considerations, there was nothing specific about Arbitrator Snow which uniquely qualified him to be the arbitrator under the USPS Settlement Agreement.

37. Snow's actual appointment was confirmed by using the parties' standard engagement letter which references the "Code of Professional Responsibility for Arbitrators of Labor-Management Disputes." A copy of that engagement letter and the Code of Professional Responsibility are attached to this declaration as Exhibits 3 and 4.

38. The Code of Professional Responsibility instructs that the essential qualifications for a labor arbitrator are honesty, integrity, impartiality and general competence in labor relations matters. Arbitrators are obligated by the Code to identify if a case requires specialized knowledge beyond the arbitrator's competence.

39. In the two cases he decided in accordance with the Settlement Agreement, Arbitrator Snow never indicated that they required specialized knowledge beyond his competence to decide.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June ____, 2006

```
                                        _____
                                        Clifford J. Guffey
```

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June _27_, 2006

                                                                         _____
                                                                         Clifford J. Guffey