UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AMERICAN POSTAL WORKERS UNION, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: 04-1404 (HHK) |
| | ) | 05-1771 (HHK) |
| v. | ) | |
| | ) | |
| UNITED STATES POSTAL SERVICE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

On February 23, 2007, subsequent to the filing of the Postal Service's motion for summary judgment and the APWU's opposition, the National Labor Relations Board clarified that the Address Management Systems ("AMS") Specialist position is excluded from the APWU bargaining unit.[1] The Board's decision renders the AMS arbitral award void and unenforceable, and the Union's disclaimer cannot salvage the award. Because the Board has acted, there is no longer any need to stay decision on the merits of the parties' dispute in this Court. Accordingly, the APWU's request to enforce the AMS award must be denied and the Postal Service's motion for summary judgment must be granted.

I.    THE NATIONAL LABOR RELATIONS BOARD'S RESOLUTION OF STATUTORY REPRESENTATIONAL ISSUES VOIDS AN INCONSISTENT ARBITRATION DECISION.

There is "no doubt that illegal promises will not be enforced in cases controlled by the

---

[1] In light of this development, defendant submits herewith a Supplemental Statement of Material Facts with accompanying Declaration.

federal law." <u>Kaiser Steel Corp. v. Mullins</u>, 455 U.S. 72, 77 (1982) (holding, *inter alia*, that a court must adjudicate the defense that a collective bargaining agreement clause is unenforceable because it requires the employer to make pension contributions in violation of the prohibition of "hot cargo" agreements found in section 8(e) of the National Labor Relations Act). Though the NLRB has primary jurisdiction to adjudicate unfair labor practices, it "is well-established, * * * that a federal court has a duty to determine whether a contract violates federal law before enforcing it." <u>Kaiser Steel</u>, 455 U.S. at 83. "[I]t will not be open to any tribunal to compel the employer to perform acts, which, even though he has bound himself by contract to do them, would violate the Board's order or be inconsistent with any part of it." <u>National Licorice Co. v. NLRB</u>, 309 U.S. 350, 365 (1940) (regarding unenforceable individual contracts of employment designed to thwart a union's effort to organize employees and bargain with the employer).

These overarching principles have specific application to the instant case. Parties may enforce an agreement to arbitrate labor disputes even though the dispute encompasses matters within the Board's primary jurisdiction. <u>Carey v. Westinghouse Elec. Corp.</u>, 375 U.S. 261 (1964). But, a unit clarification petition is an alternative remedy available to employers faced with claims for breach of a labor contract, "which, if invoked by the employer, will protect him." <u>Id.</u> at 268. While the possibility of conflicting NLRB and arbitration decisions will not preclude arbitration, "[s]hould the Board disagree with the arbiter, by ruling for example, that the employees involved in the controversy are members of one bargaining unit or another, <u>the Board's ruling would, of course, take precedence</u> * * *." <u>Id.</u> at 272 (emphasis added). The "superior authority of the Board may be invoked at any time." <u>Id.</u> Because the AMS award is inconsistent with the NLRB's decision excluding the AMS Specialist position from the APWU

2

bargaining unit, it cannot be enforced.

A.    An Arbitration Award that Conflicts with a NLRB Representational Decision Cannot Be Enforced.

"[I]f a union's action in seeking arbitration *** occurs under conditions suggesting that it rejects the notion that a subsequent Board decision does not take precedence *** the policy favoring private, consensual dispute resolution [is] overcome." Retail Clerks Local 588 v. NLRB, 565 F.2d 769, 777 (D.C. Cir. 1977). For example, it is unlawful for a union to invoke "judicial process to enforce an arbitration award that conflict[s] with, or was mooted by, the Board's subsequent negative resolution of [an] accretion issue***." Id. at 776 (citations omitted). The Board in one recent case found a union violated three separate provisions of the NLRA by seeking an accretion through arbitration after the Board made a determination of the appropriate unit of employees. Allied Trades Council, 342 N.L.R.B. 1010, 2004 NLRB LEXIS 504, at *14-*16 (Sept. 14, 2004). By attempting to apply the terms of its collective bargaining agreement to employees whom the Board had determined to be outside the bargaining unit, the union violated: section 8(b)(3) of the NLRA by unlawfully attempting to expand the unit, section 8(b)(1)(A) by restraining and coercing employees in the exercise of their section 7 rights, and section 8(b)(2) by attempting to cause the employer to discriminate against the non-unit employees.

The decisions of other circuits are in accord with Retail Clerks and with Allied Trades. In the Ninth Circuit, an employer faced competing claims by two unions to represent employees at a new facility. Cannery Warehousemen, Food Processors, Drivers & Helpers v. Haig Berberian, Inc., 623 F.2d 77, 78 (9th Cir. 1980). The employer petitioned the NLRB to resolve the representation claims. Meanwhile, one of the unions obtained an arbitration decision finding that

3

its labor contract covered the new facility. Id. Six months after the arbitration decision, the Board

ordered an election. Approximately fourteen months after the arbitration award the employees

voted against unionization, rejecting representation by either union. Id. at 79. Accordingly, the

Ninth Circuit dismissed the suit to enforce the arbitration award in conflict with the results of a

Board ordered election.

Similarly, the Seventh Circuit refused to compel arbitration after the NLRB, pursuant to

section 9(c), had clarified the bargaining units of two unions by including employees performing

certain work within the unit represented by one union while excluding the same category of

employees from a second union. Smith Steel Workers v. A.O. Smith Corp., 420 F.2d 1, 5-6 (7th

Cir. 1969). The first union initiated the dispute by filing a grievance that employees represented

by the second union were performing work which the employees represented by the first union

were entitled to perform. Id. at 5. However, the hearing of that grievance was postponed

following the filing of unit clarification petitions with the Board. Id. at 6.

After the Board's order in favor of the first union, the second union filed suit to enforce

the parties agreement to arbitrate its claim that the employer recognize it as the representative of

the employees covered by the Board's clarification order, but the district court did not compel the

company to arbitrate the representation question already decided by the Board. Id. at 6. Relying

on Carey and National Licorice, the appellate court affirmed, explaining "the Board's order

deprived the Union of any right to recognition as the representative of the [employees]" and the

"court could compel neither arbitration nor enforce any arbiter's award in conflict with the

Board's order." Id. at 7. The court also enforced the Board's order that the second union violated

section 8(b)(3) of the NLRA when it demanded recognition of an "inappropriate unit." Id. at 8.

4

The courts distinguish between the private role of the arbitrator and public role of the

NLRB. "[T]he Board occupies a superior position for consideration of the laws involved and the

individual interests that will be affected by a [representation] decision." See Cannery

Warehousemen, 623 F.2d at 81-82.

> The proceeding authorized to be taken by the Board under the National Labor
> Relations Act is not for the adjudication of private rights.*** The Board acts in a
> public capacity to give effect to the declared public policy of the Act to eliminate
> and prevent obstructions to interstate commerce by encouraging collective
> bargaining and by protecting the exercise by workers of full freedom of
> association, self-organization, and designation of representatives of their own
> choosing, for the purpose of negotiating the terms and conditions of their
> employment **** The Board asserts a public right vested in it as a public body
> ***.

National Licorice, 309 U.S. at 362, 364 (internal citations and quotation marks omitted).

Accordingly, the private, consensual labor arbitration process "can at best reach only provisional

results insofar as the Board's ultimate authority over the bargaining unit is concerned." Retail

Clerks, 565 F.2d at 778. See also Pilot Freight Carriers, Inc. v. Teamsters, 659 F.2d 1252, 1258

(4th Cir. 1981) (stating that "the awards of the Multi-State Committee and the National Grievance

Committee in favor of the union on the accretion controversy were not final and binding. The

question of accretion is ultimately committed to the NLRB. Although the parties may arbitrate

this issue, the bargaining agreement's provisions pertaining to accretion cannot supplant the

Board's authority.")

     B.     NLRB Decisions Supercede Inconsistent Arbitration Decisions in Either
          Representational or Work Assignment Disputes.

The NLRB has jurisdiction to adjudicate both representational and work assignment

disputes. See Carey, 375 U.S. at 263-68. Despite the differences on specific points of law, Board

decisions of either type take precedence over contrary arbitral awards under Carey. A representational dispute concerns "which [or whether a] union should represent the employees doing particular work." Id. at 263. A unit clarification under section 9(c) of the NLRA is one type of representational dispute. Id. at 266-67. A unit clarification action asks the Board in effect for a declaratory judgment about the scope of the bargaining unit. Retail Clerks, 565 F.2d at 774-75.

Work assignment, or jurisdictional,[2] disputes concern "whether certain work should be performed by workers in one bargaining unit or those in another ***." Carey, 375 U.S. at 263. Section 10(k) of the labor act gives the Board authority to resolve work assignment disputes. Id. The "paradigm jurisdictional dispute addressed by section 8(b)(4)(D) [the unfair labor practice provision related to section 10(k)] is a contest between two groups of employees that actively contend for disputed work, where the employer is indifferent to the claims of the rival unions." International Longshoremen's and Warehousemen's Union v. NLRB, 884 F.2d 1407, 1409, 1411 (D.C. Cir. 1989) (emphasis in original omitted). As with representational decisions, according to the rule announced in Carey, courts will not enforce arbitration awards in conflict with NLRB decisions on the merits of work assignment disputes. Id. at 1413 (citing Carey). The Board's decision takes precedence over a contrary arbitration decision and the Board's superior jurisdiction may be invoked at any time. Id.

The triggering mechanism for Board action varies with the type of dispute. For example, the NLRB will clarify the exclusion of a historically excluded job classification to prevent its

---

[2]Though Carey refers to both representation and work assignment disputes as "jurisdictional," 375 U.S. at 263, work assignment disputes are often referred to as jurisdictional as opposed to representational, id. at 269 (quoting Plumbing Contractors Ass'n, 93 N.L.R.B. 1081, 1087 (1951)); International Longshoremen, 884 F.2d at 1411.

unlawful inclusion in a bargaining unit via the grievance-arbitration process (as the instant case).

The Board does not defer to the grievance and arbitration process vis-à-vis a pending grievance

or an arbitral award, and will clarify a unit to exclude a classification that may be or has been

unlawfully accreted. Ziegler, Inc. & Int'l Union of Operating Eng'rs, Local 49, 333 N.L.R.B. 949

(2001) (concerning pending grievance); Williams Transp. Co. & Teamsters, 233 N.L.R.B. 837

(1977) (concerning arbitration award). See also Advanced Architectural Metals, Inc., 347 NLRB

No. 111; 2006 NLRB LEXIS 363, *4-*6 (Aug. 31, 2006) (cited by APWU, Pl. Opp. at 8).

The APWU argues that its disclaimer deprives the Board of representational jurisdiction.

(Pl. Op. at 6, 14-16). This argument oversimplifies the NLRB's jurisdiction under section 9 by

implying the Board may not exercise its representational authority over any claims for work.

However, it is perfectly appropriate to consider work duties as part of the representational

analysis. See Carey, 375 U.S. at 263 (explaining that a representational dispute concerns "which

[or whether a] union should represent the employees doing particular work.") (emphasis added).

See also Teamsters Nat'l UPS Neg. Comm. v. NLRB, 17 F.3d 1518, 1520 (D.C. Cir. 1994). At

the same time, representational considerations transcend simple comparisons of work between

represented and unrepresented employees. For example, it is unlawful to include historically

unrepresented employees in an existing unit even though the excluded employees perform the

same work for the same employer as the represented employees. See e.g., United Parcel Service,

303 N.L.R.B. 326, 326-27 (1991). Accordingly, a simple recharacterization of a contractually

based representation claim as a claim for work does not necessarily divest the Board of its

jurisdiction under section 9(c) of the NLRA.

In contrast to section 9(c), section10(k) authorizes the Board to exercise jurisdiction when

7

a union takes certain "coercive" action such as threatening to picket or strike, see Carey, 375 U.S. at 263-64, or filing a grievance in contravention of a prior 10(k) award, see Longshoremen, 884 F.2d at 1413-14. Cf. Local 32B-32J, SEIU v. NLRB, 68 F.3d 490 (D.C. Cir. 1995) (holding that, though the Board had not previously ruled against the union's position, the union violated the prohibition of secondary boycotts in section 8(b)(4)(ii)(B) by demanding arbitration to force subcontractor with which it did not have a labor contract to rehire certain employees). Accordingly, the question is not whether the Board has jurisdiction over a claim for work, but whether the arbitral award is inconsistent with a Board order under either section 9(c) or section 10(k) of the NLRA. Here, because the Board exercised its section 9(c) jurisdiction to protect the AMS Specialist employees section 7 rights, neither the AMS award nor the claim for all of the work of the excluded employees may be reconciled with the Board's unit clarification decision. Accordingly, the APWU's request for enforcement must be denied.

> C.    The Statute of Limitations to Vacate Arbitrations Is Inapplicable When the Arbitration Decision to be Enforced Cannot Be Reconciled with Contrary Board Resolution of Section 9(c) or Section 10(k) Matters.

The APWU argues that the Court must disregard the Board's jurisdiction to clarify the unit because the Postal Service did not file suit to vacate the AMS arbitral award within the applicable limitations period. (Pl. Opp. at 7). In support of this proposition, however, the Union does not cite any cases addressing arbitration awards that conflict with NLRB decisions. Accordingly, the courts in the decisions cited by the APWU had no occasion to apply the rule announced in Carey that NLRB resolutions of statutory issues take precedence over contrary arbitration decisions. Courts that have confronted conflicting arbitral awards and NLRB rulings give precedence to the NLRB in accordance with Carey.

8

The D.C. Circuit applied the Carey rule in circumstances strongly suggesting the complete irrelevance of the limitations period to vacate arbitration awards where the award is inconsistent with the NLRB's resolution of a jurisdictional dispute. International Longshoremen's & Warehousemen's Union v. NLRB, 884 F.2d 1407 (D.C. Cir. 1989). In Longshoremen's, the NLRB decision was sandwiched between two arbitration awards assigning certain work to employees represented by one union. In contrast to the arbitrator, the NLRB assigned the disputed work to employees represented by a second union. The first of the two arbitration decisions was issued nine months before the Board jurisdictional decision under section 10(k) of the NLRA. Relying on Carey, the D.C. Circuit concluded that "the section 10(k) award trumps the collective bargaining agreement" and that the "superior authority of the Board may be invoked at any time." Id. at 1413 (emphasis in original).

Accordingly, the first union committed an unfair labor practice when it filed the second grievance about fifteen months after the NLRB 10(k) order. Id. at 1414. Therefore, the D.C. Circuit enforced the NLRB order requiring the union to withdraw and cease filing claims for work performed by members of the rival union with the object of forcing the employer to assign work contrary to the Board's 10(k) determination. See International Longshoremen's & Warehousemen's Union, Local 13 & Sea-Land Service, Inc., 290 N.L.R.B. 616, 617 (1988) (setting forth Board's order).

The same employer and union involved in the unfair labor practice dispute in Longshoremen's, litigated a section 301 suit to vacate the arbitration awards underlying their NLRB dispute. In addition to filing an unfair labor practice charge against the first union, two years after the first arbitration decision, the employer filed suit to vacate both the first and second

9

arbitration awards. 884 F.2d at 1410. The suit to vacate was filed in the Central District of

California. Sea-Land, Inc. v. Int'l Longshoremen's and Warehousemen's Union, Locals 13, 63,

and 94, 939 F.2d 866 (9th Cir. 1991). Despite the delay between the first award and the suit to

vacate, neither party "contest[ed] that the NLRB's decision superseded the arbitration awards

***." Id. at 871. The Ninth Circuit explained "that a section 10(k) determination made

subsequent to an arbitration award will effectively void the preceding award" and that

supersedure "occurs even without any action by either the loser of the arbitration or the NLRB."

Id. at 873 (internal quotations omitted). The Ninth Circuit, relying on the Supreme Court's

decisions in Carey and Kaiser Steel, had previously rejected the argument that the expiration of

the statute of limitations precludes a party from raising a 10(k) determination in defense to an

action to enforce an arbitration. International Longshoremen's and Warehousemen's Union,

Local 32 v. Pacific Maritime Assoc., 773 F.2d 1012, 1019-21 (1985).

        The Third Circuit has also concluded that NLRB work assignment and representational

decisions supersede inconsistent arbitration decisions. In one case, the Third Circuit overturned a

district court decision confirming an arbitration award based on the employer's failure to seek

vacatur within the thirty-day limitations period of the Pennsylvania Uniform Arbitration Act.

United Union of Roofers, Waterproofers, and Allied Workers, Local Union No. 30 v. Gundle

Lining Constr., 1 F.3d 1429 (1993). The court explained that in a companion case, the Third

Circuit enforced an NLRB order that a union had committed an unfair labor practice by seeking

to confirm an arbitration award in conflict with the Board's assignment of work pursuant to

section 10(k). According to the court, "[i]t follows from that decision enforcing the Board's

order that [the union] is prohibited from the continued maintenance of this section 301 suit."

10

In a separate case, the Third Circuit recounted a similar procedural history in a suit to enforce an arbitration award in conflict with an NLRB unit clarification. Chauffers, Teamsters and Helpers Local 776 v. NLRB, 973 F.2d 230, 231-32 (1992) (recounting procedural history of Teamsters Local Union No. 776 v. Rite Aid Corp., 1989 U.S. Dist. LEXIS 11854 (Sept. 29, 1989), aff'd mem., 902 F.2d 1562 (3d Cir. 1990)). As in the suit to enforce an arbitration award in Roofers, the union sued to enforce the arbitration well beyond the thirty-day limitations period relied upon by the district court in Roofers and there is no indication the employer moved to vacate the arbitration. The court denied enforcement based upon the Board's unit clarification decision alone. Unlike the district court in Roofers, the district court in Chauffers refused to enforce the arbitration award and the Third Circuit upheld that decision. Id.

The Seventh Circuit has also upheld the primacy of NLRB unit determinations over incompatible arbirtation decisions. Two unions claimed to represent employees at a new plant where the employer combined the work of employees represented by both unions. Local 7-210, Oil, Chem. and Atomic Workers Int'l Union v. Union Tank Car Co., 475 F.2d 194, 195-96 (7th Cir. 1973). One of the unions obtained arbitration decisions awarding all the work to the employees it represented and make whole relief for all lost wages and benefits to those employees for lost work. Id. at 196. The arbitrator issued an initial decision on liability and final decision on remedy. Id. at 195-96. The union sought enforcement of the awards approximately five months after the second and final arbitration award and there is no indication the employer filed suit to vacate. Id.; 337 F. Supp. 83, 85 (N.D. Ill. 1971). In response to "a succesion of unfair labor practices charges, representation petitions and unit clarification petitions", the NLRB defined the appropriate unit to include the disputed work, i.e., finishing of railway tank cars after

11

the car shell had been built, and found the employees within the unit were represented by one of

the two competing unions. 475 F.2d at 195, 196. The court concluded that, "in making its ruling

***, the NLRB had the entire situation before it and pre-empted the field ***." Id. at 196.

Accordingly, the court affirmed the decision to deny enforcement of the arbitration award at

issue. Id. at 199.

The conclusions of these courts follow directly from the Supreme Court's decisions in

Kaiser Steel, National Licorice, and Carey. A contrary rule would obviate the Board's

independent and superior authority. Board decisions cannot truly take precedence and supersede

arbitration awards if the limitations period to vacate arbitration awards not only applies to the

contractual dispute but also to the resolution of the statutory questions within the Board's special

competence. If the Board's superior authority could not be invoked at any time, including beyond

the vacatur limitations period, the Board resolution of public, statutory issues would become

merely a defense to the enforcement of an arbitrator's resolution of the private contractual matter.

That rule does not square with the Board's public function to protect rights not adequately

protected in arbitration such as the right of unrepresented employees to remain unrepresented at

stake in this case. Accordingly, it is irrelevant that the Postal Service did not file a suit to vacate

the AMS award.

II.    THE AMS AWARD CANNOT BE ENFORCED BECAUSE IT IS INCONSISTENT
       WITH THE NLRB'S ORDER CLARIFYING THE APWU UNIT TO EXCLUDE THE
       AMS SPECIALIST POSITION.

The Board's exclusion of the AMS Specialist position from the APWU bargaining unit

and the arbitration award including the position within the unit cannot be reconciled. Though the

APWU has sought to avoid the effect of the clarification decision by disclaiming interest in

12

representing the AMS Specialist position, its continued efforts to deprive all of the excluded employees of all of their work cannot be squared with the Board's order. Accordingly, the AMS award is void and unenforceable.

    A.    The NLRB Clarified that the APWU Unit Does Not Include the AMS Specialist Position and the Clarification Decision is Due Deference.

In the instant case, the Board granted the Postal Service petition and clarified the APWU unit to exclude the AMS Specialist position. "Since the Union is not seeking to represent these AMS employees, and has consented to their specific exclusion from the bargaining unit, as sought by the Employer/Petitioner in the instant petition, I find it appropriate to grant the Employer/Petitioner's request to clarify the existing unit specifically to exclude the AMS employees." (USPS Ex. 9, Wilcox Decl. ¶ 4 & Attach. 1 (Decision and Order Clarifying Unit at 1)). Neither party requested review of the clarification decision. Id. The Regional Director's decision became final on March 9. Id. at 2-3 (citing NLRB Rules and Regulations section 102.67(b) (stating that the parties have fourteen days to request review of the Regional Director's order)).[3] Arbitrator Snow's decision stands in stark contrast to the Board's clarification order. He ordered the accretion of the AMS Specialist position into the APWU bargaining unit. Directly contrary to the Arbitrator, the NLRB held the unit does not include the AMS Specialist classification.

The APWU correctly states that courts owe great deference to labor arbitration decisions. (See Pl. Opp. at 5). But the cases cited in section I of this memorandum, *supra*, establish that deference is not owed and cannot be applied to an arbitration award when, as here, the arbitration

---

[3] The NLRB's Rules and Regulations may be found on the Board's website at the following address:   http://www.nlrb.gov/nlrb/legal/manuals/rules/part102.pdf.

decision is incompatible with a representational or jurisdictional decision of the Board. Instead,

the courts owe deference to the Board's resolution of such statutory issues as accretions and unit

determinations. See Cannery Warehousemen, 623 F.2d at 79-80 (courts do not review NLRB

representation decisions stating "a Board representation decision is not considered a reviewable

'final order' within the meaning of section 10(f) of the [NLRA]."); Smith Steel Workers, 420

F.2d at 10 (explaining "[t]he Union's contention that the dispute was jurisdictional rather than

representational could only be presented to the Board as a defense in an unfair labor practice

action and could not be used as the basis for collateral attack upon the Board's clarification order

in the district court."). See also Country Ford Trucks, Inc. v. NLRB, 229 F.3d 1184, 1189 (D.C.

Cir. 2000) (stating that "This court will uphold an NLRB bargaining unit determination unless it

is arbitrary or not supported by substantial evidence in the record.").

　　　　Accordingly, the Court may not enforce the AMS arbitral decision, because it is

incompatible with the Board's unit determination. As discussed below, the Board's unit

clarification decision voids the AMS decision in its entirety.

　　　　B.　　Despite the APWU's Disclaimer, the AMS Arbitral Award Remains Incompatible
　　　　　　　with and Is Therefore Superseded by the NLRB Unit Clarification Order.

　　　　　　1.　　The APWU's Failed to Convince the Board that the Union's Disclaimer
　　　　　　　　　Deprived the Board of Jurisdiction to Clarify the Unit.

　　　　Before this Court, (see Pl. Opp. at 6, 14-16) and the NLRB, the Union has asserted that its

disclaimer deprived the Board of jurisdiction over the Postal Service's unit clarification petition.

The Board has already rejected the APWU's assertion and this Court should as well. The Board's

Notice of Representation Hearing dated December 28, 2006, scheduled the hearing to begin

February 20 and continue on consecutive days until completed. (USPS Ex. 9, Wilcox Decl. ¶ 6 &

14

Attach. 3). By letter dated February 1, the APWU requested the Board dismiss the Postal

Service's petition because, the Union claimed, its disclaimer rendered the clarification petition

moot. (Id. ¶ 7 & Attach. 4). The Board then ordered the Postal Service to show cause why the

petition to clarify the APWU unit should not be dismissed. (Id. ¶ 8 & Attach. 5). But the Board

did not dismiss the Postal Service petition.

On February 13, the Postal Service responded, (id. ¶ 9 & Attach. 6), and by order dated

February 23, the Board clarified the unit by ruling that the AMS Specialist employees are not part

of the bargaining unit represented by the APWU. Accordingly, not only did the Board reject the

APWU's argument that its disclaimer mooted the representational issue, it decided the

representation issue on the merits as the Postal Service petition requested. In like fashion and in

deference to the Board's decision, this Court should reject the Union's obvious, and so far

unsuccessful effort, to avoid the application of Board representational law and the Carey rule.

      2.      The APWU's Demand for All of the Work of Every AMS Specialist
                   Violates the Board's Clarification Order.

Like the APWU in this case, the union in Local 7-210, see supra, section I(c), sought to

enforce only part of an arbitration award. The arbitrator had ordered the employer to (a) apply the

union's labor contract at the new facility, and (b) reimburse and make whole the employees

represented by the union injured by the employer's failure to apply the contract as directed in part

(a) of the award. Local 7-210, 475 F.2d at 196. In the course of the district court litigation, the

union advised the court that it no longer sought to enforce the first part of the arbitration award,

but it continued to attempt enforcement of the part of the arbitrator's decision awarding damages.

Id. However, the Seventh Circuit refused to enforce the award explaining that "the action taken

by the NLRB cannot be restricted to the representation matter, but it must be said to embrace all other matters, such as working conditions, wages and the like which are implicit in the rights accorded the certified representative of the employees ***." Local 7-210, 475 F.2d at 197.

The D.C. Circuit has similarly refused to read Board orders narrowly or to enforce only the remedial portion of an arbitration decision in the face of a contrary Board decision. In Longshoremen's, the union argued that the work assignment order did not cover the entire dispute because the order did not mention all aspects of the work at issue. The Court summarily rejected that argument, sustaining the Board's conclusion that the work claimed by the union was incidental to the work addressed in the order. 884 F.2d at 1411. Longshoremen's involved a dispute between two unions over work at a new, nearby location. Id. at 1408-09. Rather than claim the work directly, the disgruntled union's grievance claimed "time-in-lieu payments" for the work it claimed. Id. at 1409 n.2 and accompanying text. Though a claim for work is literally distinct from a claim for time-in-lieu payments, the Court found the claim "squarely contrary" to the Board's determination of the work assignment dispute. Id. at 1414.

Here, the APWU's disclaimer is merely a transparent tactical maneuver designed to avoid the Board's jurisdiction and deprive the AMS Specialists the right to choose whether to be represented by a union. The APWU disclaimed interest in representing the AMS Specialist position by letter dated January 29. However, in the same letter and before this Court, the APWU seeks the entirety of the work performed by every employee in the classification. The Union's disclaimer is patently another aspect of, and substitute for, its claim to represent the AMS Specialist position. Indeed, the Union has not and cannot identify the specific work tasks its members would obtain at the expense of the AMS Specialists if the categorical award were

16

enforced. The award covers the entire position and consequently all of the work.

Moreover, the NLRB does not automatically refuse to exercise its representational jurisdiction merely because a union issues a disclaimer. When a disclaimer such as the APWU's is merely a tactical maneuver, International Bhd. of Elec. Workers & Texlite, Inc., 119 N.L.R.B. 1792, 1799 (1958), designed to avoid an authoritative decision from the Board, Laborers Int'l Union & Kenny Constr. Co., 338 N.L.R.B. 977, 978 (2003), it does not dispose of the representational issue. Texlite, 119 N.L.R.B. at 1798-99. In this case, rather than dismissing the Postal Service's clarification petition, the Board viewed the APWU's January 29 disclaimer as a reason to exercise its representational jurisdiction and clarify the unit.

The timing of the disclaimer demonstrates that it is part of the APWU's strategy in this Court to enforce the arbitration award and avoid the Carey rule. The day before requesting dismissal of the Postal Service's clarification petition, the Union assured the Court that its disclaimer deprives the Board of jurisdiction to consider whether all of the AMS Specialists may be deprived of all of the work the Postal Service hired them to perform. (See Pl. Op. at 14). The APWU also explained to the Court that there are "possible practical consequences" if its maneuver were successful, id. at 16, and it is undoubtedly correct. Under the Union's view the AMS Specialists would have no work to perform. Because the deprivation of work would be the price of maintaining the freedom to choose whether or not the APWU will represent them, it is unlawful. Section 7 of the NLRA protects that freedom and it cannot be circumvented by merely relabeling the Union's unlawful conduct. The APWU's claim remains representational.

In Kaiser Foundation Hospitals, the employer and union argued that their grievance settlement merely recaptured bargaining unit work and was therefore not an accretion. Because

17

that agreement expanded the description of the unit, the Board rejected that argument and found that the agreement effected an accretion. 343 N.L.R.B. 57, 2004 NLRB LEXIS 590, at *5-*6 (Sept. 30, 2004). The employees' free choice is violated unless a detailed factual inquiry ensures that only bargaining unit work is transferred. Such an inquiry would include, *e.g.*, interviewing individual incumbents of the positions at issue. Id. Because no such individualized assessment has taken place in this case, (see USPS Ex. 9, Wilcox Decl. ¶ 17), and the AMS award makes no pretense of doing so, neither the AMS Specialist position nor any of the position's work may be taken from the specialists and placed in the unit. Rather, the Union makes an undifferentiated claim for all the work performed by the AMS Specialists. Therefore, the APWU's enforcement action cannot be squared with the Board's clarification of the unit.

Other recent Board precedent confirms that the APWU's approach is unlawful. In United Parcel Service, the NLRB concluded the employer and union had unlawfully accreted historically excluded employees performing the same work as the represented employees by extending the collective bargaining agreement to cover them. 303 N.L.R.B. 326, 326-27 (1991), enforced, 17 F.3d 1518 (D.C. Cir. 1994). The Board ordered the employer to cease and desist from encouraging union membership or coercing employees in the exercise of their section 7 rights. Id. at 328. If the APWU's view of the law were correct, in order to avoid the Board's order, UPS had only to hire new employees inside the existing unit and transfer all of the work of the historically excluded employees to the new, represented employees. The APWU cannot seriously contend that Congress intended or the Board would countenance so callous and patent a ploy to deprive employees of their section 7 rights. But that is exactly what the APWU is attempting to foist on the AMS Specialists in this case.

18

In <u>Teamsters</u>, the union argued that it had lawfully recaptured work and permitted the non-unit employees to "follow the work." <u>Teamsters UPS Nat'l Negotiating Comm. & Lady, et al.</u>, 346 N.L.R.B. No. 49, 2006 NLRB LEXIS 63, at *24, *29-*30, *35-*36 (Feb. 17, 2006). The union in that case argued the act is not violated when, "rather than terminating the non-unit employees who were performing the work, they were given the opportunity to transfer into the unit." <u>Id.</u> at *30-*31. In this case, the APWU wants to cut the lifeline between the AMS work and the AMS employees with the corresponding consequence of depriving the AMS Specialists of gainful employment. Obviously, the Union hoped this would circumvent Board jurisdiction, but leaving the AMS Specialist as a title with no work is a greater deprivation of the employees' section 7 rights than at least allowing them to follow their own work. Section 7 does not permit the Union to require non-unit employees to make the Hobson's choice between inclusion in the unit or seizure of all their work. Like the NLRB, this Court should protect the representational rights of the AMS employees by rejecting the Union's ploy to recharacterize its claim as beyond the Board's jurisdiction or outside the scope of the Board's February 23 clarification Order.

C.     Even if the Board Had Not Acted, the AMS Decision Cannot be Enforced
        Because Enforcement Would Deny the AMS Specialists' Section 7 Rights.

"[A] federal court has a duty to determine whether a contract violates federal law before enforcing it." <u>Kaiser Steel</u>, 455 U.S. 72, 83 (1982). As discussed on pages 6 through fourteen of the Postal Service memorandum in support of its summary judgment motion, the AMS award requires the Postal Service to accrete the AMS Specialist into the APWU bargaining unit in violation of the employees' right to choose whether to be represented. This section highlights and expands upon certain legal principles discussed in the prior Postal Service memorandum.

1.    The AMS Specialist Position Has Been Historically Excluded From Any
       Bargaining Unit.

Regardless of whether traditional community of interests factors may favor accretion and

the non-unit employees perform the same functions as the unit employees, "[i]f a group of

employees comes into existence during the term of a contract for an existing unit, then the parties

must address the unit status of those employees prior to executing a successor agreement."

United Parcel Service, Inc. & Griffin, 303 N.L.R.B. 326, 327 (1991). A period of fourteen

months is sufficient to establish historical exclusion where the functions are assigned during the

term of one collective bargaining agreement, but the union is not recognized by the employer as

the representative of the classification until the following contract term. Frontier Tel. of

Rochester, Inc., 344 N.L.R.B. No. 153, 2005 NLRB LEXIS 359, at *22-*24, *4-*5 (July 29,

2005). "It is the fact of exclusion that is determinative, and not whether the union acquiesced in

that exclusion or whether the excluded group has some common job-related characteristics

distinct from unit employees." Teamsters, 2006 NLRB LEXIS 63, at *4.

The Postal Service established the AMS Specialist classification at issue no later than

October 19, 1992. (See USPS Ex. 9, Wilcox Decl. ¶ 11 & Attach. 7 (AMS Specialist Position

Description (Oct. 19, 1992)).[4] At that time, the Postal Service placed the AMS Specialist in the

---

[4] In fact, the position dates back to no later than 1982. Prior to 1992, the title of the position
was Address Information Systems Analyst. (See APWU Am. Guffey Decl., Ex. 2 at 30)
(AMS Award)). Though the APWU denies that the Postal Service established the position
before 1992, (see Resp. to USPS Stat. Mat. F. ¶ D), the Arbitrator relied on the Union having
filed grievances alleging the Postal Service assigned bargaining unit work to this non-
bargaining unit position from 1986 to 1990, before the Postal Service changed the title. (See
APWU Am. Guffey Decl., Ex. 2 at 6, 32) (AMS Award). See also id. ¶ 5). The Arbitrator
also incorrectly stated that the Union filed an unfair labor practice in 1992, (id. at 32, when,
in fact, the APWU filed a unit clarification petition in 1997. (Cf. id. at 6. See also Wilcox
Decl. ¶¶ 12, 16 & Attach. 8 (AMS Arb. Tr. at 60-61, 74-76), Attach. 12 (1997 APWU UC

Executive and Administrative Service ("EAS") series of job classifications. Id. at title block,

AMS Specialist. In the Postal Service, "[a]ll non-bargaining unit positions, with the exception of

high-ranking executives[,] are placed in the EAS series." Id. ¶ 13 & Attach. 9 (U.S. Postal

Service and APWU, Decision and Order Dismissing Petition, Case No. 5-UC-374, at 1 n.2 (Nov.

26, 2001)).

      The establishment of the AMS Specialist position occurred (at the latest) during the term

of the parties' 1990 labor contract. (Wilcox Decl. ¶ 14 & Attach. 10 (USPS-APWU and NALC

Agreement, EL-901)). Article 43 of the contract states that, unless otherwise provided, the 1990

agreement was effective on June 12, 1991 and expired on November 20, 1994. The effective date

of successor collective bargaining agreement was October 1, 1995. (Wilcox Decl. ¶ 15 & Attach.

11). It was not until 1997, nearly three years after the expiration of the 1990 contract and two

years after the effective date of the successor agreement, that the APWU filed a unit clarification

petition that encompassed, among many other positions, the AMS Specialist classification at

issue. (Wilcox Decl. ¶ 16 & Attach. 12 (APWU Petition for Clarification of Bargaining Unit, 5-

UC-353 is dated Oct. 27, 1997 )). However, the AMS Specialist classification continued to

remain within the EAS series and therefore outside of a unit when the APWU filed its 1997 unit

clarification petition. (See id. (page 5 of the list of position attached to 1997 APWU clarification

petition.)).

      The AMS award concludes that the Postal Service violated the parties' collective

bargaining agreement by excluding the specialists from the APWU unit, (APWU Am. Guffey

Decl., Ex. 2 at ii) (AMS Award)), and states that "[i]t is the position of the APWU that the

---

    petition)).

Employer violated the parties' agreement by treating the employees in the 'AMS Specialist'

position as nonmembers of the APWU bargaining unit." Id. at 19. Despite the arbitration

decision, the AMS Specialist classification remains a non-bargaining unit position as evidenced

by the APWU's efforts to enforce the arbitration award in this Court that would accrete the

classification into the unit represented by the APWU. (See id. ¶ 14). Because the AMS Specialist

has been historically excluded from any bargaining unit, neither the position nor all the work may

be accreted into an existing bargaining unit. The employees must be allowed the opportunity to

exercise the statutory right to choose whether or not to be represented by a union.

> 2.    The AMS Award Cannot Be Reconciled with Board Accretion Law.

Accretion requires the demonstration of an overwhelming community of interest, even if

employees have not been historically excluded. Because the NLRB follows a restrictive policy in

applying the accretion doctrine, it permits "accretion only when the employees sought to be

added to an existing bargaining unit have little or no separate identity and share an overwhelming

community of interest with the preexisting unit to which they are accreted." Frontier, 2005 NLRB

LEXIS 359, at *7-*8 (internal quotations omitted) (emphasis added). This standard contrasts

with "the traditional community of interest test that the Board applies in deciding appropriate

units in initial representation cases. In that context, the Board will certify *an* appropriate unit,

even if it is not the most appropriate." Id. at *8 n.6 (emphasis in original).

Even assuming the historical exclusion analysis does not apply, a view with which the

Postal Service would strenuously disagree, the Arbitrator applied the traditional community of

interest test rather than requiring the APWU to demonstrate an overwhelming community of

interest between the employees in the existing unit and the AMS Specialists. The award

incorrectly states "[t]he search is not for the most appropriate unit but only a unit in which employees share a reasonable community of interests ***." (APWU Am. Guffey Decl., Ex. 2 at 25-26) (AMS Award)).

The APWU's arguments before Arbitrator Snow have been conclusively rejected by Board precedent. The arbitral award conflicts with the National Labor Relations Act because it ignored the historical exclusion of the specialists, did not give the employees the right to determine for themselves whether to be represented by a union, and otherwise applied legal analyses rejected by the Board. For the reasons discussed herein and those set forth in the Postal Service summary judgment memorandum, (see Def. S.J. Mem. at 6-12), it would be unlawful to deprive all of these excluded employees of all of their work as an alternative to their unlawful accretion into the APWU bargaining unit. Accordingly, the AMS award may not be enforced and the Union's request for enforcement must be denied.

III.    THE PARTIES AGREE ON HOW TO PROCESS THE REMAINING DISPUTES AND THE COURT MAY REVISE ITS FINDING THAT THE AMS AWARD IS FINAL.

      A.    The Remaining Labor Contract Disputes Set Forth in the 1999 Settlement Agreement Will be Processed According to Article 15 of the 2006 National Agreement.

The Postal Service and the Union agree that Article 15 of the parties current collective bargaining agreement should apply to the unresolved disputes set forth in the 1999 Settlement Agreement. (Pl. Op. at 17, 20). Moreover, the Postal Service does not object to the APWU's request to replace the second to last paragraph of the 1999 Settlement Agreement[5] with Article

---

[5]For the sake of clarity, that paragraph is found on the second page of the 1999 Settlement Agreement and begins, "Arbitration hearing held pursuant to this settlement agreement shall be hearing before Arbitrator Carlton Snow. The first case to be heard ***."

15 of the 2006 National Agreement. Accordingly, there is no need for the Court to determine whether to supply a term that is reasonable under the circumstances to the settlement agreement due to the application of the impracticability doctrine. See Restatement (Second) of Contracts § 272(2), Comment (c) (1981).

> B.    Though Unnecessary Because of the Board's Clarification Order, the Court Is Empowered to and Should Revise Its Finding that the AMS Award Is Final.

In denying the Postal Service's motions to dismiss, the Court found that the AMS award is final. (Mem. Op. & Order [#18] at 7-10 (Mar. 23, 2006)). The Union argues the Court's finding has become the law of the case. (Pl. Opp. at 5, 9-10 n.2). However, "[i]n general, orders denying motions to dismiss are not final decisions because such orders ensure that litigation will continue in District Court." U.S. v. Rose, 28 F. 3d 181, 185 (D.C. Cir. 1994) (internal quotations omitted). Morever, the Court's Order states, "the ultimate issues in these cases remain undecided." (Mem. Op. & Order at 13). Accordingly, the Court is free to revise its finding based on the NLRB's February 23 Order and the more extensive briefing now before it in support of the parties' motions for summary judgment. The Court should do so because the Carey rule renders the arbitral award void and to reduce the likelihood of disputes that a finding of finality (even though in a denial of a motion to dismiss) may inject into the resolution of the pending disputes on remand.


## CONCLUSION

For all of the foregoing reasons and those set forth in the Postal Service's memorandum, filed August 28, 2006, the Postal Service respectfully requests that the Court find the AMS

24

arbitral award void and unenforceable and deny the APWU motion for summary judgement.  In

addition, the Postal Service requests the Court to grant its motion for summary judgment.

Dated: March 30, 2007                          Respectfully submitted,


                                               _____Jeffrey Taylor_____
                                               JEFFREY A. TAYLOR, D.C. BAR # 498610
                                               United States Attorney


                                               _____Rudolph Contreras_____
                                               RUDOLPH CONTRERAS, D.C. BAR #  434122
                                               Assistant United States Attorney


                                               ____s/Sherease Louis_____
                                               SHEREASE LOUIS
                                               Special Assistant United States Attorney
                                               United States Attorney's Office
                                               Civil Division
                                               555 4th Street, N.W.
                                               Washington, D.C. 20530
                                               (202) 307-0895/FAX (202) 514-8780
                                               sherease.louis@usdoj.gov


        OF COUNSEL:

        Peter J. Henry
        Labor Counsel
        United States Postal Service


                                      25

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AMERICAN POSTAL WORKERS UNION, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: 04-1404 (HHK) |
| | ) | 05-1771 (HHK) |
| v. | ) | |
| | ) | |
| UNITED STATES POSTAL SERVICE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S SUPPLEMENTAL STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE ISSUE**

Pursuant to Local Civil Rule 56.1, Defendant hereby submits a Supplemental Statement of Material Facts as to which there is no genuine issue:

<u>National Labor Relations Board</u>

NN.     By decision and order dated February 23, 2007, the NLRB clarified the APWU bargaining unit to exclude the AMS Specialist classification. USPS Ex. 9, Wilcox Decl. ¶ 4 & Attach. 1 (NLRB Decision and Order Clarifying Unit (Feb. 23, 2007)). Neither party requested review of the February 23 clarification decision. <u>Id.</u>

OO.     Shortly before the unit clarification hearing, the APWU requested that the Board dismiss the Postal Service's petition by letter dated February 1, 2007. The APWU attached a letter dated January 29, 2007, to its request for dismissal. USPS Ex. 9, Wilcox Decl. ¶ 7 & Attach. 4 (APWU February 1 request for dismissal and attached letter of January 29). On February 7, 2007 the Board ordered the Postal Service to show cause why the petition to clarify the APWU unit should not be dismissed. <u>Id.</u> ¶ 8 & Attach. 5.

PP.     The Postal Service responded to the NLRB's order to show cause on February 13, 2007. USPS Ex. 9, Wilcox Decl. ¶ 9 & Attach. 6 (USPS Response to NLRB Show Cause Order).

QQ.     The Board cancelled the hearing of the Postal Service unit clarification petition concerning the AMS Specialists on or about February 15, 2007. USPS Ex. 9, Wilcox Decl. ¶ 10.

RR.    The Postal Service established the AMS Specialist position no later than October 19, 1992. USPS Ex. 9, Wilcox Decl. ¶ 11 & Attach. 7 (AMS Specialist Position Description (Oct. 19, 1992)).

SS.    The establishment of the AMS Specialist position occurred during the term of the parties' 1990 labor contract. USPS Ex. 9, Wilcox Decl. ¶ 14 & Attach. 10 (Excerpts from 1990 collective bargaining agreement). Article 43 of the contract states that, unless otherwise provided, the agreement was effective on June 12, 1991 and expired on November 20, 1994.

TT.    The effective date of successor collective bargaining agreement to the 1990 contract was October 1, 1995. USPS Ex. 9, Wilcox Decl. ¶ 15 & Attach. 11 (Excerpts from 1994 collective bargaining agreement).

UU.    In 1997, the APWU filed a unit clarification petition that encompassed, among many other positions, the AMS Specialist classification. USPS Ex. 9, Wilcox Decl. ¶ 16 & Attach. 12 (APWU Petition for Clarification of Bargaining Unit, 5-UC-353, dated Oct. 27, 1997).

VV.    The parties have not conducted an individualized assessment of the work performed by the AMS Specialists to avoid the indiscriminate removal of work from the AMS classification. USPS Ex. 9, Wilcox Decl. ¶ 17.

Dated: March 30, 2007                    Respectfully submitted,


                                         ___Jeffrey Taylor_____
                                         JEFFREY A. TAYLOR, D.C. BAR # 498610
                                         United States Attorney


                                         ___Rudolph Contreras_____
                                         RUDOLPH CONTRERAS, D.C. BAR # 434122
                                         Assistant United States Attorney


                                         ___s/Sherease Louis_____
                                         SHEREASE LOUIS
                                         Special Assistant United States Attorney
                                         United States Attorney's Office
                                         Civil Division
                                         555 4th Street, N.W.
                                         Washington, D.C. 20530

OF COUNSEL:
Peter J. Henry, Esq.
United States Postal Service

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| AMERICAN POSTAL WORKERS UNION, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: 04-1404 (HHK) |
| | ) | 05-1771 (HHK) |
| v. | ) | |
| | ) | |
| UNITED STATES POSTAL SERVICE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT OF NEW MATERIAL
FACTS AS TO WHICH THERE IS NO MATERIAL ISSUE**

Pursuant to Local Rule 7(h), Defendant hereby replies to Plaintiff's statement of new

material facts as to which there is no genuine issue:

44.     The Postal Service concedes this statement of fact.

45.     The Postal Service concedes the NLRB reversed the dismissal of the USPS unit

clarification petition (5-UC-386) and remanded the case to Region 5 for "further

appropriate action." See APWU Am. Guffey Decl. Ex. 5 at 2.

46.     The Postal Service concedes this statement of fact. See USPS Ex. 9, Wilcox Decl. ¶ 5 &

Attach. 2.

47.     The Postal Service concedes that the NLRB scheduled the hearing of the Postal Service's

unit clarification petition to begin on February 20, 2007. However, on or about February

15, the Board cancelled the hearing and, on February 23, clarified the APWU bargaining

unit to exclude the AMS Specialist classification. See USPS Ex. 9, Wilcox Decl. ¶¶ 4, 10.

48.     The Postal Service concedes this statement of fact.

49.    The Postal Service concedes this statement of fact.

50.    The Postal Service concedes that during negotiation of the 2006 APWU-USPS collective

bargaining agreement, the parties made no changes to the text of Article 15. However, the

grievance and arbitration process, though substantially similar, is not identical to the

process in the 2000 APWU-USPS contract. See USPS Ex. 9, Wilcox Decl. ¶ 18.

51.    The Postal Service concedes this statement of fact.

52.    The Postal Service concedes that by letter dated January 29, 2007, the APWU disclaimed

interest in representing the employees in the AMS Specialist classification. The Postal

Service also concedes that this statement of fact accurately quotes from the January 29

letter. The statement that the disclaimer is "unequivocal" is a legal conclusion for which

no response is required, but the Postal Service notes the disclaimer is equivocal. Indeed,

the Union's action to enforce the AMS award contradicts its disclaimer, shows the

2

disclaimer is not "unequivocal", and conflicts with the Board's exclusion of the AMS specialist from the APWU bargaining unit.

Dated: March 30, 2007                    Respectfully submitted,

                                         ___Jeffrey Taylor_____
                                         JEFFREY A. TAYLOR, D.C. BAR # 498610
                                         United States Attorney

                                         ___Rudolph Contreras_____
                                         RUDOLPH CONTRERAS, D.C. BAR # 434122
                                         Assistant United States Attorney

                                         ___s/Sherease Louis_____
                                         SHEREASE LOUIS
                                         Special Assistant United States Attorney
                                         United States Attorney's Office
                                         Civil Division
                                         555 4th Street, N.W.
                                         Washington, D.C. 20530
                                         (202) 307-0895/FAX (202) 514-8780
                                         sherease.louis@usdoj.gov


OF COUNSEL:
Peter J. Henry
Labor Counsel
United States Postal Service

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AMERICAN POSTAL WORKERS UNION, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: 04-1404 (HHK) |
| | ) | 05-1771 (HHK) |
| v. | ) | |
| | ) | |
| UNITED STATES POSTAL SERVICE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT OF DISPUTED FACTS**

**INTRODUCTION**

Defendant United States Postal Service ("Defendant"), respectfully submits this response

to Plaintiff's Statement of Facts it contends are in dispute. Plaintiff's Statement of Disputed Facts

does not establish the existence of any genuine, material factual disputes. To the contrary,

Plaintiff has admitted many of Defendant's Statements of Fact, and has failed to controvert many

of the Defendant's Statements of Fact that it denied.

**I.    EACH POSTAL SERVICE STATEMENT THAT THE APWU DENIED
WITHOUT EVIDENTIARY SUPPORT SHOULD BE DEEMED ADMITTED.**

**A.    Legal Standard**

Local Rule 7(h) requires that an opposition to a summary judgment motion be

accompanied by a "separate concise statement of genuine issues setting forth all material facts as

to which it is contended there exists a genuine issue necessary to be litigated, which shall include

references to the parts of the record relied on to support the statement." The opposing statement

of genuine issue must respond directly to the factual statements asserted in the motion for

summary judgment. As stated in the Rule:

> In determining a motion for summary judgment, the court may assume that facts identified by the moving party in its statement of material fact are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.

LCvR 7(h). See also LCvR 56.1.

### B.    Plaintiff's Responses Are Insufficient to Create a Genuine Dispute as to Any Material Fact

Plaintiff merely denies without purporting to dispute paragraphs D and E, as well as Y through LL, of Defendant's Statement of Material Facts. Having failed to address these facts, the APWU must be deemed to have conceded these facts under LCvR 7(h). See Jackson, Finnegan, Henderson, Farabow, Garrett & Dunner, 101 F.3d 145, 150-51 (D.C. Cir. 1996); Twist v. Meese, 854 F.2d 1421, 1423-25 (D.C. Cir. 1988); Heasley v. D.C. Gen. Hosp., 180 F. Supp. 2d 158, 163 (D.D.C. 2002); Trawick v. Hantman, 151 F. Supp. 2d 54, 58-59 (D.D.C. 2001).

### 1.    Plaintiff's Response to Paragraphs D and E.

Paragraphs D and E concern when the AMS Specialist position was established and whether it has been represented by a union. Despite the years of litigation in this case preceded by the Union's own claims in 1980s concerning the work of the "non-bargaining unit" position at issue, (see APWU Am. Guffey Decl., Ex. 2 (AMS award at 6, 32); see also APWU Am. Guffey Decl. ¶ 5), the APWU has elected merely to deny the factual allegations set forth in these paragraphs without adducing evidence in support of the its denials. As both paragraphs D and E are supported by a sworn statement in accordance with the rule 7(h), the Postal Service respectfully requests this Court to assume that Plaintiff has admitted these facts.

### 2.    Plaintiff's Response to Paragraphs Y through LL.

Paragraphs Y through LL concern the intervention of the separate union party in the

hearing of the APWU's grievance concerning the AMS Specialist position. These paragraphs also address the parties' post-award correspondence and prior awards in which Arbitrator Snow retained jurisdiction. The APWU merely denies every, single one of these allegations by arguing they are not material without adducing any evidence to support its denials. As each of the Postal Service supported each paragraph in accordance with the local rules, the Postal Service respectfully requests this Court to assume that Plaintiff has admitted these facts.

## CONCLUSION

Plaintiff has failed to raise a genuine issue of material fact in accordance with L.R. 7(h). Accordingly, Defendant requests the Court assume the facts identified herein are admitted.

Dated: March 30, 2007              Respectfully submitted,


                                          Jeffrey Taylor
                                   JEFFREY A. TAYLOR, D.C. BAR # 498610
                                   United States Attorney


                                          Rudolph Contreras
                                   RUDOLPH CONTRERAS, D.C. BAR #  434122
                                   Assistant United States Attorney


                                          s/Sherease Louis
                                   SHEREASE LOUIS
                                   Special Assistant United States Attorney
                                   United States Attorney's Office
                                   Civil Division
                                   555 4th Street, N.W.
                                   Washington, D.C. 20530
                                   (202) 307-0895/FAX (202) 514-8780
                                   sherease.louis@usdoj.gov


OF COUNSEL:
Peter J. Henry, Labor Counsel
United States Postal Service