UNITED STATES OF AMERICAN
BEFORE THE NATIONAL LABOR RELATIONS BOARD
REGION 5

| | | |
|---|---|---|
| UNITED STATES POSTAL SERVICE,<br>Employer/Petitioner | ) | |
| | ) | |
| and | ) | Case 5-UC-386 |
| | ) | |
| AMERICAN POSTAL WORKERS UNION,<br>Union | ) | |
| | ) | |

## RESPONSE OF THE UNITED STATES POSTAL SERVICE
## TO THE NOTICE TO SHOW CAUSE

### INTRODUCTION

On February 6, the American Postal Workers Union ("APWU") filed a motion to dismiss the Postal Service petition. The Region instructed the Postal Service to explain by February 13 why there should be a hearing in light of the APWU's disclaimer. Because the disclaimer is equivocal and the Union continues to pursue all of the work of every Address Management Systems ("AMS") Specialist, the Region should not dismiss the instant petition. Moreover, the APWU should be ordered to proceed first at the hearing because the Union bears the burden of showing the AMS Specialist is an accretion to APWU's unit.

## STANDARD

I.    ACCRETIONS ARE DISFAVORED

    A.    The Party Seeking to Include Employees Without an Election Has the Burden of Proving Inclusion Is Lawful.

The term accretion "means the addition of employees into a unit without an election."[1] Because the APWU seeks to accrete the entirety of the work of all AMS Specialists into a unit of employees it represents, the APWU must bear this burden.

> In practical effect, there is a heavy burden on a party seeking to prove "accretion" to show that the group sought to be added to an existing unit is an "accretion" within the meaning of the Board's long-standing use of that term, whether it be a union claiming that group (in an 8(a)(5) case, for example), or an employer seeking to justify its recognition of that group (in a 8(a)(2) case, for example).[2]

As discussed below, it will be unable to satisfy this burden vis-à-vis the position, the work, or the employees at issue.

    B.    The Parties May Not Lawfully Accrete Historically Excluded Employees.

Parties to a collective bargaining agreement deprive non-unit employees of their section 7 rights when they place them in a bargaining after they have been excluded from a unit for a sufficient period.

> When a group has in fact been excluded for a significant period of time from an existing ... unit, the Board will not permit their

---

[1] <u>Frontier Tel. of Rochester, Inc. and Communication Workers</u>, 344 N.L.R.B. No. 153, 2005 NLRB LEXIS 356, at *3 n.3 (July 29, 2005) (internal quotations omitted).

[2] <u>Rice Food Markets, Inc. and Retail Clerks Union, Local No. 455</u>, 255 N.L.R.B. 884, 887 (1981).

accretion without an election or showing of majority support among them even if no other union could obtain representation status for them.[3]

Regardless of whether traditional community of interests factors may favor of accretion and the non-unit employees perform the same functions as the unit employees, "[i]f a group of employees comes into existence during the term of a contract for an existing unit, then the parties must address the unit status of those employees prior to executing a successor agreement."[4] A period of fourteen months is sufficient to establish historical exclusion where the functions are assigned during the term of one collective bargaining agreement, but the union is not recognized by the employer as the representative of the classification until the following contract term.[5] "It is the fact of exclusion that is determinative, and not whether the union acquiesced in that exclusion or whether the excluded group has some common job-related characteristics distinct from unit employees."[6]

    C.    The NLRB Will Confirm the Exclusion of a Historically Excluded Classification to Prevent Its Unlawful Inclusion in a Bargaining Unit Via the Grievance-Arbitration Process.

Accretion is a matter for decision of the Board rather than an arbitrator. Accordingly, the Board does not defer to the grievance and arbitration

---

[3] Laconia Shoe, 215 N.L.R.B. 573 (1974) (quoted in Teamsters Nat'l UPS Negotiating Committee v. NLRB, 17 F.3d 1518, 1521 (D.C. Cir. 1994)).

[4] United Parcel Service, Inc. and Griffin, 303 N.L.R.B. 326, 327 (1991).

[5] Frontier, 2005 NLRB LEXIS 359, at *22-*24, *4-*5.

[6] Teamsters UPS Negotiating Comm. and Porter Lady, etc., 346 N.L.R.B. No. 49, 2006 NLRB LEXIS 63, at *4 (Feb. 17, 2006).

process vis-à-vis a pending grievance or an arbitral award, and will clarify a unit to exclude a classification that may be or has been unlawfully accreted.[7]

>    D.    Accretion Requires the Demonstration of an Overwhelming Community of Interest Even Where Employees Have Not Been Historically Excluded.

Because the NLRB follows a restrictive policy in applying the accretion doctrine, it permits "accretion only when the employees sought be added to an existing bargaining unit have little or no separate identity and share an overwhelming community of interest with the preexisting unit to which they are accreted."[8] This standard contrasts with "the traditional community of interest test that the Board applies in deciding appropriate units in initial representation cases. In that context, the Board will certify *an* appropriate unit, even if it is not the most appropriate."[9]

## DISCUSSION

I.    THE AMS SPECIALIST HAS BEEN HISTORICALLY EXCLUDED FROM ANY BARGAINING UNIT.

The Postal Service established the AMS Specialist, EAS-15, classification at issue no later than October 19, 1992.[10] At that time, the Postal Service placed the AMS Specialist in the Executive and Administrative Service

---

[7] Ziegler, Inc. and Int'l Union of Operating Eng'rs, Local 49, 333 N.L.R.B. 949 (2001); Williams Transp. Co. and Teamsters, 233 N.L.R.B. 837 (1977).

[8] Frontier, 2005 NLRB LEXIS 356, at *7-*8 (internal quotations omitted).

[9] Id. at *8 n.6 (emphasis in original).

[10] See AMS Specialist, EAS-15 Position Description (Oct. 19, 1992) (Attach. 1). The evidence at hearing will show that the core functions of the classification preexisted the publication of this position description by many years.

4

("EAS") series.[11] In the Postal Service, "[a]ll non-bargaining unit positions, with the exception of high-ranking executives[,] are placed in the EAS series."[12]

The establishment of the AMS Specialist position occurred during the term of the parties' 1990 labor contract.[13] No action was taken to include the AMS Specialist within the APWU bargaining unit until after the 1990 agreement expired on November 20, 1994.[14] It was not until 1997, nearly three years after the expiration of the 1990 contract and two years after the effective date of the successor agreement, that the APWU filed a unit clarification petition that encompassed, among many other positions, the AMS Specialist classification at issue.[15] The AMS Specialist classification continued to remain within the EAS series and therefore outside of a unit when the APWU filed its 1997 unit clarification petition.[16]

In April 2003, an arbitrator found the Postal Service violated the parties' collective bargaining agreement by excluding the specialists from the

---

[11] Id. at title block, AMS Specialist, EAS-15.

[12] U.S. Postal Service and APWU, Decision and Order Dismissing Petition, Case No. 5-UC-374, at 1 n.2 (Nov. 26, 2001).

[13] USPS-APWU and NALC Agreement, EL-901. Article 43 of the contract states that, unless otherwise provided, the agreement was effective on June 12, 1991 and expired on November 20, 1994 (Attach. 2).

[14] The effective date of successor collective bargaining agreement was October 1, 1995 (Attach. 3).

[15] APWU Petition for Clarification of Bargaining Unit, 5-UC-353 dated Oct. 27, 1997 (Attach. 4).

[16] Id. at page 5 of the list of position attached to 1997 APWU clarification petition.

APWU unit.[17] The arbitrator explained that "[i]t is the position of the APWU that the Employer violated the parties' agreement by treating the employees in the 'AMS Specialist' position as nonmembers of the APWU bargaining unit."[18] Despite the arbitration decision, the AMS Specialist, EAS-15, classification remains a non-bargaining unit position as evidenced by the APWU's efforts to enforce the arbitration award that would accrete the classification into the unit represented by the APWU.[19]

Because the AMS Specialist has been historically excluded from any bargaining unit, the specialists cannot be accreted into an existing bargaining unit. The employees must be allowed the opportunity to exercise the statutory right to choose whether or not to be represented by a union.

II.    THE ARBITRATION AWARD THE APWU SEEKS TO ENFORCE ILLEGALLY ACCRETES HISTORICALLY EXCLUDED EMPLOYEES INTO THE APWU BARGAINING UNIT.

The evident illegality of the arbitration award forced the APWU to issue its January 29 disclaimer. As discussed below, the disclaimer is unavailing because the APWU continues to claim all the work of every specialist.

---

[17] U.S. Postal Service and APWU with NALC, Case No. Q94C-4Q-C 98117564, at ii (April 29, 2003) (Snow, Arb.) (Attach. 5). Hereinafter "Award." For the reasons expressed in this response in addition to others set forth in filing in federal district court, the Postal Service opposes the APWU's efforts to enforce the Award.

[18] Award at 19.

[19] See APWU v. U.S. Postal Serv., Case No. 05-1771, Compl. ¶¶ 12, 13, 20 (filed Sept. 6, 2005) (Attach. 6).

A.    The Assignment of the Work by the Arbitrator is Solely a Con-
sequence of the Assignment of the Position.

The arbitration improperly treated the AMS Specialist position and

work as a classification and would, if enforced, deprive the specialists of their

section 7 rights.[20] The award states, "[T]he arbitrator concludes that the

[AMS] position is a part of the APWU bargaining unit and that it is a viola-

tion of Article 1.2 of the National Agreement to exclude the position and the

disputed work from the bargaining unit."[21] The first clause is limited to posi-

tions and the second clause is no more than a recapitulation of the first. This

is nothing more than a categorical transfer of the position and all of the work

without any of the specific factual inquiry necessary to avoid violating the

statutory rights of the affected employees.

The fact that the award's assignment of the work cannot be distin-

guished from the assignment of the positions is evidenced by the APWU's de-

scription of the parameters of the arbitrator's task after the last day of hear-

ing and before the close of the record. The APWU explained, "The question

whether any part of the work of AMS personnel is clerk work is an issue

which you must reach only if you find that the AMS position is properly clas-

sified as an EAS position but that all or some of the work is craft (not EAS)

---

[20] One of the issues presented in the district court litigation is whether the report is suffi-
ciently complete to be enforced. As the Board will clarify units after the filing of a grievance
that threatens an unlawful accretion, it is unnecessary for the Board to consider this issue.

[21] Award at 37 (emphasis added) (Attach. 5).

7

work."[22] According to the APWU's own description of the task before the arbitrator, there was no need to reach the question of work independently from the question of positions. It is clear from the award that the arbitrator did no more than that which the APWU requested.

B.    The Arbitrator Followed Several Lines of Reasoning Expressly Rejected by the Board to Accrete the AMS Specialist into the Bargaining Unit.

Rather than treating employee free choice as the core of employee statutory rights, the arbitrator treats the desires of employees as a mere "tie breaker."[23] Contrary to the arbitral award, free choice in the context of historical exclusion is the determinative consideration. The Arbitrator turns the accretion analysis on its head by concluding that the APWU did not acquiesce in the assignment of the new position.[24] However, it is clear that union acquiescence is irrelevant to the question of whether employees have been deprived of their freedom to choose union representation or not.[25]

Even assuming the historical exclusion analysis does not apply, a view with which the Postal Service would strenuously disagree, the arbitrator applied the traditional community of interest test rather than requiring the APWU to demonstrate an overwhelming community of interest between the employees in the existing unit and the AMS Specialists. The award incor-

---

[22] Letter from Hajjar to Snow 9/19/02 (Attach. 7).

[23] Award at 31.

[24] Id. at 32.

[25] Teamsters, 2006 NLRB LEXIS 63, at *4.

8

rectly states "[t]he search is not for the most appropriate unit but only a unit in which employees share a reasonable community of interests \*\*\*."[26]

Moreover, before the arbitrator, the APWU argued for accretion because the parties' recognition clause did not explicitly exclude the AMS position. "It is the conclusion of the APWU that none of the duties of the 'AMS Specialist' position is excluded from the bargaining unit and, therefore, that the entire position is more appropriately placed in the APWU bargaining unit."[27] This is precisely the argument rejected by the Board,[28] but accepted by Arbitrator Snow. The arbitrator concluded, "In view of the fact that the disputed work is not excluded under exceptions listed in Article 1.2 of the APWU·USPS agreement, the Employer bound itself to assign the work to the most appropriate craft, namely, the Clerk Craft."[29] The APWU's arguments before Arbitrator Snow have been conclusively rejected by the Board. The arbitral award conflicts with the National Labor Relations Act because it ignored the historical exclusion of the specialists, did not give the employees the right to determine for themselves whether to be represented by a union, and otherwise applied legal analyses rejected by the Board. Accordingly it deserves no deference and the Postal Service clarification petition must be

---

[26] Award at 25-26.

[27] Award at 9 (emphasis added).

[28] Kaiser Foundation Hospitals and OPEIU, 343 NLRB No. 8, 2004 NLRB LEXIS 590 at \*3 n.1 (Sept. 30, 2004).

[29] Award at 34.

granted to protect the section 7 rights of the AMS Specialists, EAS-15.

III.    THE APWU DISCLAIMER IS DEEPLY EQUIVOCAL AND SACRI-
FICES EMPLOYEE FREE CHOICE IN ORDER TO UNLAWFULLY
EXPAND THE UNIT.

    A.    The APWU's Disclaimer is Merely a Tactical Maneuver De-
signed to Avoid the Board's Jurisdiction in Order to Deprive the
AMS Specialists the Right to Choose Whether to Be Represented
by a Union.

The APWU claims to have unequivocally disclaimed interest in repre-
senting the AMS Specialist, EAS-15 position by letter dated January 29.
However, in the same letter and in federal district court, the APWU seeks the
entirety of the work performed by the classification. Because the Board pro-
hibits the Union, with or without the Employer's assistance, from treating a
position categorically, the APWU's disclaimer cannot be given effect.

    1.    Standard Applicable to Disclaimers

If a disclaimer is merely a tactical maneuver[30] designed to avoid an au-
thoritative decision[31] from the Board, it is not effective:

> [A] disclaimer to be effective must be unequivocal and must
> have been made in good faith. A union's "bare statement" of dis-
> claimer is not sufficient to establish that it has abandoned its
> claim to representation if the surrounding circumstances justify
> an inference to the contrary. The union's conduct must not be
> "inconsistent" with its alleged disclaimer.[32]

---

[30] International Bhd. of Elec. Workers and Texlite, Inc., 119 N.L.R.B. 1792, 1799 (1958).

[31] Laborers Int'l Union and Kenny Constr. Co., 338 N.L.R.B. 977, 978 (2003).

[32] Texlite, 119 N.L.R.B. at 1798-99.

In this case, the APWU's January 29 is nothing more than a sham to circumvent the Board's jurisdiction in order to deprive the AMS Specialists of the freedom to choose whether or not to be represented by a union.

      2.     The APWU Disclaimer Is Deeply Equivocal as the Union Continues to Pursue Enforcement of the Categorical Arbitration Award in Federal District Court.

The timing of the disclaimer demonstrates that it is part of the APWU's strategy in district court to enforce the arbitration award and avoid the Board's jurisdiction. The day before requesting dismissal of the Postal Service's instant clarification petition, the Union assured the Court that its disclaimer deprives the Board of jurisdiction to consider whether all of the AMS Specialists may be deprived of all of the work the Postal Service hired them to perform.[33] This position cannot be reconciled with governing NLRB precedent.

      B.     The Union May Not Deprive the Board of Jurisdiction by Depriving the AMS Specialists of Their Livelihood.

The APWU explained to the Court that there are "possible practical consequences" if its maneuver is successful.[34] The Union is undoubtedly correct: the AMS Specialists will have no work to perform. Because the deprivation of work would be the price of maintaining the freedom to choose whether or not the APWU will represent them, it is unlawful.

---

[33] See APWU Opp. to USPS Mot. Sum. J., Case No. 04-1404 at 14 (Attach. 8).

[34] Id. at 16.

11

In <u>Kaiser</u>, the employer and union argued that their grievance settlement merely recaptured bargaining unit work and was therefore not an accretion. Because that agreement expanded the description of the unit, the Board rejected that argument and found that the agreement effected an accretion.[35] The employees' free choice is violated unless a detailed factual inquiry ensures that only the bargaining unit work is transferred. Such an inquiry would include, *e.g.*, interviewing individual incumbents of the positions at issue.[36] It is clear that the arbitrator did not perform the individualized assessment the Board requires in order to avoid a finding of an illegal accretion. Because no such individualized assessment has taken place in this case, neither the AMS Specialist position nor all of the position's work may be taken from the specialists and placed in the unit.

An examination of other recent Board precedent confirms that the APWU's approach is unlawful. In <u>UPS</u>, the NLRB concluded the employer and union had unlawfully accreted historically excluded employees by extending the collective bargaining agreement to cover them.[37] The Board ordered the employer to cease and desist from encouraging union membership or coercing employees in the exercise of their section 7 rights.[38] If the APWU's view of the law were correct, the employer had only to hire new employees

---

[35] 2004 NLRB LEXIS 590, at *5-*6.

[36] <u>Id.</u> at *5-*6.

[37] 303 N.L.R.B. 326 (1991).

[38] <u>Id.</u> at 328.

12

inside the existing unit and transfer all of the work of the historically ex-
cluded employees to the new, represented employees. The APWU cannot seri-
ously contend that Congress intended or the Board would countenance so cal-
lous and patent a ploy to deny employees of their section 7 rights. But that is
exactly what the APWU is attempting to foist on the AMS Specialists in this
case.

The Board has recently rejected a union's effort to distinguish work
from positions. In <u>Teamsters</u>, the union argued that it had lawfully recap-
tured work and permitted the non-unit employees to "follow the work."[39] The
union in that case explained that "rather than terminating the non-unit em-
ployees who were performing the work, they were given the opportunity to
transfer into the unit."[40] In this case, the APWU wants to cut the lifeline be-
tween the work and the employees in hopes of depriving the AMS Specialist
of gainful employment. Obviously, the Union hopes this will circumvent
Board jurisdiction, but leaving the AMS Specialist position a title with no
work is a greater deprivation of the employees' section 7 rights than at least
allowing them to follow their own work. The "practical consequence" the
APWU refers to is that the Union will have taken the specialists work and
left them with nothing to do. Section 7 does not permit the Union to give non-

---

[39] <u>Teamsters UPS National Negotiating Comm. and Lady, et al.</u>, 346 N.L.R.B. No. 49 at 7-9.

[40] <u>Id.</u> at 7-8.

unit employees the Hobson's choice between inclusion in the unit or complete deprivation of work.

Accordingly, the APWU disclaimer cannot be given effect. The Postal Service respectfully requests the Region to clarify the unit to exclude the AMS Specialist EAS-15 position, the employees, and the work.

## CONCLUSION

Because of the clarity of the law as it applies to the facts of this case, the Region need not hold a hearing in order to clarify that the AMS Specialist, EAS-15 position, the employees, and the work are excluded from the APWU bargaining unit or any other unit. Based on the forgoing, it is clear the APWU cannot satisfy the heavy burden placed on the party seeking to include a classification within an existing bargaining unit. Because the APWU will be unable to satisfy this burden, the unit should be clarified as requested by the Postal Service without a hearing. Should the Region determine that a hearing is necessary, the APWU, as the party bearing the burden to show the AMS Specialist, EAS-15, classification is an accretion to an existing unit and not an expansion of that unit, should proceed first. If a hearing is held, the Postal Service will be prepared to amplify and expand upon the points made in this response.

Peter J. Henry/By JAEl

Peter J. Henry
U.S. Postal Service
475 L'Enfant Plaza, SW
Washington, DC 20260
Peter.J.Henry@usps.gov
202-268-2809 office
202-268-4997 fax

Date: February 13, 2007

15

UNITED STATES OF AMERICAN
BEFORE THE NATIONAL LABOR RELATIONS BOARD
REGION 5

| | |
|---|---|
| UNITED STATES POSTAL SERVICE,<br>        Employer/Petitioner<br><br>        and<br><br>AMERICAN POSTAL WORKERS UNION,<br>        Union | )<br>)<br>)<br>)       Case 5-UC-386<br>)<br>)<br>)<br>) |

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing response of the United States

Postal Service to the Notice to Show Cause was sent on February 13,

2007, by electronic mail to Anton Hajjar, Esq. at Ahajjar@odsalaw.com.

*Peter J. Henry /by JAd*

Peter J. Henry

# USPS RESPONSE TO SHOW CAUSE ORDER 5-UC-386

# ATTACHMENT 1

STD POSITION DESCRIPTION ·        U. S. Postal Service

## ADDRESS MANAGEMENT SYSTEMS SPECIALIST,  EAS-15

**FUNCTIONAL PURPOSE**

Performs address information collection, verification, and coding activities in support of the Address Management System (AMS) within a district for a designated area.

**DUTIES AND RESPONSIBILITIES**

1. Collects, reports, and maintains address management information in support of national address management programs.

2. Analyzes address information data submitted by post offices and delivery units to ensure completeness and accuracy; contacts associate offices, stations, and delivery units to resolve data discrepancies; coordinates immediate data correction as necessary.

3. Inputs address information data into on-line computer systems to maintain the AMS data base.

4. Maintains route delivery line of travel information for routes within an assigned area.

5. Provides technical guidance to postmasters, delivery, processing, and distribution employees on the collection of address information and walk sequence data.

6. Coordinates requests for delivery area ZIP Code boundary changes, new delivery areas, and unique post office box and firm ZIP Codes; assigns five-digit ZIP Codes and ZIP+4 Codes in accordance with national policies; prepares and communicates ZIP Code approvals.

7. Responds directly or provides technical support to Postal Business Center employees in responding to inquiries related to address management information products and services.

**SUPERVISION**

Manager, Address Management Systems

**SELECTION METHOD**

(End of Document)

# USPS RESPONSE TO SHOW CAUSE ORDER 5-UC-386

# ATTACHMENT 2



**UNITED STATES
POSTAL SERVICE**

# AGREEMENT

## between

### United States Postal Service

### and

### American Postal Workers Union, AFL-CIO

### National Association of Letter Carriers, AFL-CIO

 

## 1990-1994

**Handbook EL-901**

**PREAMBLE**

This Agreement (referred to as the **1990** National Agreement) is entered into by and between the United States Postal Service (hereinafter referred to as the "Employer") and the American Postal Workers Union, AFL-CIO; and the National Association of Letter Carriers, AFL-CIO (hereinafter referred to collectively as the "Unions"), **pursuant to an Arbitration Award issued June 12, 1991. In accordance with terms of this Award, the Agreement is effective as of the date of the Award unless otherwise provided.**

**ARTICLE 1**

**UNION RECOGNITION**

**Section 1. Unions**

The Employer recognizes each of the Unions designated below as the exclusive bargaining representative of all employees in the bargaining unit for which each has been recognized and certified at the national level:

National Association of Letter Carriers, AFL-CIO—City Letter Carriers

American Postal Workers Union, AFL-CIO—Maintenance Employees

American Postal Workers Union, AFL-CIO—Special Delivery Messengers

American Postal Workers Union, AFL-CIO—Motor Vehicle Employees

American Postal Workers Union, AFL-CIO—Postal Clerks

**Section 2. Exclusions**

The employee groups set forth in Section 1 above do not include, and this Agreement does not apply to:

1. Managerial and supervisory personnel;

2. Professional employees;

3. Employees engaged in personnel work in other than a purely non-confidential clerical capacity;

1

**Article 1.2**

4. Security guards as defined in Public Law 91-375, 1201(2);

5. All Postal Inspection Service employees;

6. Employees in the supplemental work force as defined in Article 7;

7. Rural letter carriers; or

8. Mail handlers.

## Section 3. Facility Exclusions

This Agreement does not apply to employees who work in other employer facilities which are not engaged in customer services and mail processing, previously understood and expressed by the parties to mean mail processing and delivery, including but not limited to Headquarters, Regional Offices, Postal Data Centers, Postal Service Training and Development Institute, Oklahoma Postal Training Operations, Postal Academies, Postal Academy Training Institute, Stamped Envelope Agency, Supply Centers, Mail Equipment Shops, or Mail Bag Depositories and Repair Centers.

## Section 4. Definition

Subject to the foregoing exclusions, this Agreement shall be applicable to all employees in the regular work force of the U.S. Postal Service, as defined in Article 7, at all present and subsequently acquired installations, facilities, and operations of the Employer, wherever located.

## Section 5. New Positions

A. Each newly created position shall be assigned by the Employer to the national craft unit most appropriate for such position within thirty (30) days after its creation. Before such assignment of each new position the Employer shall consult with all of the Unions signatory to this Agreement for the purpose of assigning the new position to the national craft unit most appropriate for such position. The following criteria shall be used in making this determination:

1. existing work assignment practices;

2. mar

3. avoi assi

4. effe Post craf

5. the norn

6. the men

B. All Uni promptly by tl this provision ment of the date the Unio of the position of the grievan

## Section 6. Pe

A. Supervi unit work at employees, e

1. in ar

2. for tl ees;

3. to as

4. to pr

5. to pr

B. In office supervisors ar work except a or when the d description.

**(The prece itional Emplo**

2

Article 43.2

# ARTICLE 42
## ENERGY SHORTAGES

In the event of an energy crisis, the Employer shall make every reasonable attempt to secure a high priority from the appropriate Federal agency to obtain the fuel necessary for the satisfactory maintenance of postal operations. In such a case, or in the event of any serious widespread energy shortage, the Employer and the Unions shall meet and discuss the problems and proposed solutions through the Labor-Management Committee provided in Article 17.

**(The preceding Article, Article 42, shall apply to Transitional Employees)**

# ARTICLE 43
## SEPARABILITY AND DURATION

### Section 1. Separability

Should any part of this Agreement or any provision contained herein be rendered or declared invalid by reason of any existing or subsequently enacted legislation or by a court of competent jurisdiction, such invalidation of such part or provision of this Agreement shall not invalidate the remaining portions of this Agreement, and they shall remain in full force and effect.

### Section 2. Duration

**Unless otherwise provided,** this Agreement shall be effective **June 12, 1991,** and shall remain in full force and effect to and including 12 midnight **November 20, 1994**, and unless either party desires to terminate or modify it, for successive annual periods. The party demanding such termination or modification must serve written notice of such intent to the other party, not less than 90 or more than 120 days before the expiration date of the Agreement.

**(The preceding Article, Article 43, shall apply to Transitional Employees)**

219

# USPS RESPONSE TO SHOW CAUSE ORDER 5-UC-386

# ATTACHMENT 3

# AGREEMENT

BETWEEN THE

UNITED STATES POSTAL SERVICE

AND

AMERICAN POSTAL WORKERS UNION

AFL–CIO

## 1994-1998

 

HANDBOOK EL-912

## PREAMBLE

This Agreement (referred to as the **1994** National Agreement) is entered into by and between the United States Postal Service (hereinafter referred to as the "Employer") and the American Postal Workers Union, AFL-CIO (hereinafter referred to as the "Union"), pursuant to an Arbitration Award issued **October 1, 1995 and Supplemental Award issued June 7, 1996.** In accordance with terms of this Award, the Agreement is effective as of the date of the Award unless otherwise provided.

## ARTICLE 1
## UNION RECOGNITION

### Section 1. Union

The Employer recognizes the Union designated below as the exclusive bargaining representative of all employees in the bargaining unit for which each has been recognized and certified at the national level:

American Postal Workers Union, AFL-CIO—Maintenance Employees

American Postal Workers Union, AFL-CIO—Special Delivery Messengers

American Postal Workers Union, AFL-CIO—Motor Vehicle Employees

American Postal Workers Union, AFL-CIO—Postal Clerks

**American Postal Workers Union, AFL-CIO—Mail Equipment Shops Employees**

**American Postal Workers Union, AFL-CIO—Materiel Distribution Centers Employees**

**Article 1.2**

## Section 2. Exclusions

The employee groups set forth in Section 1 above do not include, and this Agreement does not apply to:

1.  Managerial and supervisory personnel;

2.  Professional employees;

3.  Employees engaged in personnel work in other than a purely non-confidential clerical capacity;

4.  Security guards as defined in Public Law 91-375, 1201(2);

5.  All Postal Inspection Service employees;

6.  Employees in the supplemental work force as defined in Article 7;

7.  Rural letter carriers; or

8.  Mail handlers; **or**

9.  **Letter carriers**

## Section 3. Facility Exclusions

This Agreement does not apply to employees who work in other employer facilities which are not engaged in customer services and mail processing, previously understood and expressed by the parties to mean mail processing and delivery, including but not limited to Headquarters, **Area** Offices, **Information Services** Centers, Postal Service Training and Development Institute, Oklahoma Postal Training Operations, Postal Academies, Postal Academy Training Institute, Stamped Envelope Agency or **Mail Transport Equipment Centers.**

2

Joint Labor-Management Safety Committee as provided in Article 14 of this Agreement. The Employer will continue past practices with regard to anti-fatigue devices.

## ARTICLE 42
## ENERGY SHORTAGES

In the event of an energy crisis, the Employer shall make every reasonable attempt to secure a high priority from the appropriate Federal agency to obtain the fuel necessary for the satisfactory maintenance of postal operations. In such a case, or in the event of any serious widespread energy shortage, the Employer and the Union shall meet and discuss the problems and proposed solutions through the Labor Management Committee provided in Article 17.

(The preceding Article, Article 42, shall apply to Transitional Employees)

## ARTICLE 43
## SEPARABILITY AND DURATION

### Section 1. Separability

Should any part of this Agreement or any provision contained herein be rendered or declared invalid by reason of any existing or subsequently enacted legislation or by a court of competent jurisdiction, such invalidation of such part or provision of this Agreement shall not invalidate the remaining portions of this Agreement, and they shall remain in full force and effect.

### Section 2. Duration

Unless otherwise provided, this Agreement shall be effective **October 1, 1995,** and shall remain in full force and effect to and including 12 midnight **November 20, 1998,** and unless

267

## Article 43.2

either party desires to terminate or modify it, for successive annual periods. The party demanding such termination or modification must serve written notice of such intent to the other party, not less than 90 or more than 120 days before the expiration date of the Agreement.

(The preceding Article, Article 43, shall apply to Transitional Employees)



Al

Re:

1.

a.

b.

c.

d.

e.

268

# USPS RESPONSE TO SHOW CAUSE ORDER 5-UC-386

# ATTACHMENT 4



**United States Government**
**NATIONAL LABOR RELATIONS BOARD**
**Region 5**
**103 South Gay Street, 8th Floor**
**Baltimore, MD   21202-4061**

(410) 962-2822

October 30, 1997

ATTN: MR. JOSEPH J. MANON, JR.
UNITED STATES POSTAL SERVICE
475 L'ENFANT PLAZA, SW
WASHINGTON, DC  20260

Re:  Case 5-UC-353

Dear Mr. Manon:

Enclosed is a copy of a Petition for Clarification of Bargaining Unit filed in the above case pursuant to provisions of Section 102.61 of the Rules and Regulations of the National Labor Relations Board.   Also enclosed is a copy of Form NLRB-4812 pertaining to our procedures.

Investigation of this matter has been assigned to Gary W. Muffley, (202) 208-3076, who will communicate with you promptly.

In the interim, please submit as soon as possible to this office the following information:

Copies of correspondence pertaining to the matter and of any pertinent collective-bargaining agreements;

An alphabetized list of employees described in the petition, together with their job classifications for the payroll period as of or immediately preceding the date of the petition.

The attached commerce questionnaire filled out in the appropriate sections;

A copy of the current collective-bargaining agreement and, if the bargaining unit is certified, the case name and number;

Copy of any certification that may be involved;

A description of the proposed clarifications;

Reason why petitioner desires clarification of unit.

Re: Case 5-UC-353                    - 2 -                    October 30, 1997

Please advise this office of any other interested parties who should be apprised of this petition.

Customer service standards concerning the processing of representation cases have been published by the Agency and are available upon request from the Regional Office.

Very truly yours,

Louis J. D'Amico
Regional Director

Attachments

cc:  ATTN:  MR. ROBERT L. TUNSTALL
     AMERICAN POSTAL WORKERS UNION, AFL-CIO
     1300 L STREET, NW
     WASHINGTON, DC  20005

     ATTN:  MS. MARY ANNE GIBBONS
     UNITED STATES POSTAL SERVICE
     LAW DEPARTMENT
     400 VIRGINIA AVENUE, SW, STE. 650
     WASHINGTON, DC  20024-2730

     ATTN:  MR. EDWARD F. WARD, JR.
     UNITED STATES POSTAL SERVICE
     475 L'ENFANT PLAZA, SW
     WASHINGTON, DC  20260-1134

     ATTN:  MR. MOE BILLER
     AMERICAN POSTAL WORKERS UNION, AFL-CIO
     1300 L STREET, NW, 7TH FLOOR
     WASHINGTON, DC  20005

FORM NLRB-4701
(3-83)

NATIONAL LABOR RELATIONS BOARD
**NOTICE OF APPEARANCE**

UNITED STATES POSTAL SERVICE
Employer


and                                                    CASE NO.  5-UC-353


AMERICAN POSTAL WORKERS UNION, AFL-CIO
Petitioner and Union

TO:  (Check one Box Only) [1]

☑ REGIONAL DIRECTOR
NLRB, REGION 5
CANDLER BLDG., ROOM 4200
111 MARKET PLACE
BALTIMORE, MD 21202

☐ EXECUTIVE SECRETARY
NATIONAL LABOR RELATIONS BOARD
WASHINGTON, D.C.  20570

☐ GENERAL COUNSEL
NATIONAL LABOR RELATIONS BOARD
WASHINGTON, D.C.  20570


THE UNDERSIGNED HEREBY ENTERS APPEARANCE AS REPRESENTATIVE OF _____


_____

IN THE ABOVE-CAPTIONED MATTER.


| SIGNATURE OF REPRESENTATIVE (PLEASE SIGN IN INK) | REPRESENTATIVE'S NAME, ADDRESS, ZIP CODE (PRINT OR TYPE) |
|---|---|
| DATE | AREA CODE          TELEPHONE NUMBER |


[1]  IF CASE IS PENDING IN WASHINGTON AND NOTICE OF APPEARANCE IS SENT TO THE GENERAL COUNSEL OR THE EXECUTIVE
SECRETARY A COPY SHOULD BE SENT TO THE REGIONAL DIRECTOR OF THE REGION IN WHICH THE CASE WAS FILED SO THAT THOSE
RECORDS WILL REFLECT THE APPEARANCE.

FORM NLRB-4813
(11-81)

NATIONAL LABOR RELATIONS BOARD
## NOTICE OF DESIGNATION OF REPRESENTATIVE
### AS AGENT FOR SERVICE OF DOCUMENTS

UNITED STATES POSTAL SERVICE
Employer

and

CASE NO. 5-UC-353

AMERICAN POSTAL WORKERS UNION, AFL-CIO
Petitioner and Union

TO:    REGIONAL DIRECTOR
       NLRB, REGION 5
       CANDLER BLDG., ROOM 4200
       111 MARKET PLACE
       BALTIMORE, MD 21202

I, the undersigned party, hereby designate my representative, whose name and address appear below and who has entered an appearance on my behalf in this proceeding, as my agent to receive exclusive service of all documents and written communications relating to this proceeding, including complaints and decisions and orders, but not including charges, amended charges, subpoenas, directions of elections or notices of elections, and I authorize the National Labor Relations Board to serve all such documents only on said representative. This designation shall remain valid until a written revocation of it, signed by me, is filed with the Board.

| Full name of party | Representative's name, address, zip code *(print or type)* |
|---|---|
| Signature of party  *(please sign in ink)* | |
| Title | |
| Date | Area Code        Telephone Number |

FORM NLRB-4812
(4-89)

UNITED STATES GOVERNMENT

NATIONAL LABOR RELATIONS BOARD

**NOTICE:  PARTIES INVOLVED IN A REPRESENTATION PETITION SHOULD BE AWARE OF THE FOLLOWING PROCEDURES:**

### Right to be represented by counsel

Any party has the right to be represented by counsel or other representative in any proceeding before the National Labor Relations Board and the courts. In the event you wish to have a representative appear on your behalf, please have your representative complete Form NLRB-4701, Notice of Appearance, and forward it to the respective regional office as soon as counsel is chosen.

### Designation of representative as agent for service of documents

In the event you choose to have a representative appear on your behalf, you may also, if you so desire, use Form NLRB-4813 to designate that representative as your agent to receive exclusive service on your behalf of all formal documents and written communications in the proceeding, except decisions directing an election and notices of an election, and further except subpoenas, which are served on the person to whom they are addressed. If this form is not filed, both you and your representative, will receive copies of all formal documents. If it is filed, copies will be served only upon your representative, and that service will be service upon you under the statute. The designation once filed shall remain valid unless a written revocation is filed with the Regional Director.

### Investigation of petition

Immediately upon receipt of the petition, the regional office conducts an impartial investigation to determine if the Board has jurisdiction, whether the petition is timely and properly filed, whether the showing of interest is adequate, and if there are any other interested parties to the proceeding or other circumstances bearing on the question concerning representation.

### Withdrawal or dismissal

If it is determined that the Board does not have jurisdiction or that other criteria for proceeding to an election are not met, the petitioner is offered an opportunity to withdraw the petition. Should the petitioner refuse to withdraw, the Regional Director dismisses the petition and advises the petitioner of the reason for the dismissal and of the right to appeal to the Board.

### Agreement and conduct of election

Upon the determination that the criteria are met for the Board to conduct a secret ballot election to resolve the question concerning representation, the parties are afforded the opportunity to enter into a consent election agreement. There are two forms: (1) Form NLRB-651, Agreement for Consent Election, provides that the parties accept the final determination of the Regional Director. (2) Form NLRB-652, Stipulation for Certification Upon Agreement for Consent Election, provides for the right of appeal to the Board on postelection matters. The secret ballot election will be conducted by an agent of the NLRB under the agreement and the parties shall have the right to observe and certify to the conduct of the election.

### Hearing

If there are material issues which the parties cannot resolve by agreement, the Regional Director may issue a notice of hearing on the petition. At the hearing, all parties will be afforded the opportunity to state their positions and present evidence on the issues.

Scheduling of a hearing does not preclude the possibility of a consent election agreement. Approval of an agreement will serve as withdrawal of the notice of hearing.

### Names and addresses of eligible voters

Upon approval of an election agreement, or upon issuance of a direction of election, the employer will be required to prepare a list of the names and addresses of eligible voters. The employer must file the eligibility list with the Regional Director within seven days after approval of the election agreement, or after the Regional Director or the Board has directed an election. The Regional Director then makes the list available to all other parties. The employer is advised early of this requirement so that there will be ample time to prepare for the eventuality that such a list becomes necessary. (This list is in addition to list of employees in the proposed unit and their job classifications to be used to verify the showing of interest by a union.).

FORM NLRB-502
(5-85)

UNITED STATES GOVERNMENT
NATIONAL LABOR RELATIONS BOARD
**PETITION**

FORM EXEMPT UNDER 44 U.S.C. 3512

**DO NOT WRITE IN THIS SPACE**

| Case No. | Date Filed |
|---|---|
| 5-UC-353 | 10/27/97 |

**INSTRUCTIONS:** Submit an original and 4 copies of this Petition to the NLRB Regional Office in the Region in which the employer concerned is located. If more space is required for any one item, attach additional sheets, numbering item accordingly.

The Petitioner alleges that the following circumstances exist and requests that the National Labor Relations Board proceed under its proper authority pursuant to Section 9 of the National Labor Relations Act.

1. PURPOSE OF THIS PETITION *(If box RC, RM, or RD is checked and a charge under Section 8(b)(7) of the Act has been filed involving the Employer named herein, the statement following the description of the type of petition shall not be deemed made.)* (Check One)

☐ **RC-CERTIFICATION OF REPRESENTATIVE** - A substantial number of employees wish to be represented for purposes of collective bargaining by Petitioner and Petitioner desires to be certified as representative of the employees.

☐ **RM-REPRESENTATION (EMPLOYER PETITION)** - One or more individuals or labor organizations have presented a claim to Petitioner to be recognized as the representative of employees of Petitioner.

☐ **RD-DECERTIFICATION** - A substantial number of employees assert that the certified or currently recognized bargaining representative is no longer their representative.

☐ **UD-WITHDRAWAL OF UNION SHOP AUTHORITY** - Thirty percent (30%) or more of employees in a bargaining unit covered by an agreement between their employer and a labor organization desire that such authority be rescinded.

☒ **UC-UNIT CLARIFICATION** - A labor organization is currently recognized by Employer, but Petitioner seeks clarification of placement of certain employees: *(Check one)* ☒ In unit not previously certified. ☐ In unit previously certified in Case No. _____

☐ **AC-AMENDMENT OF CERTIFICATION** - Petitioner seeks amendment of certification issued in Case No. _____
Attach statement describing the specific amendment sought.

2. Name of Employer
United States Postal Service

Employer Representative to contact
Joseph J. Mahon,Jr
Vice Pres.Labor Relations

Telephone Number
202-268-3619

3. Address(es) of Establishment(s) involved *(Street and number, city, State, ZIP code)*
475 L'Enfant Plaza, S.W.  Washington, D.C. 20260

4a. Type of Establishment *(Factory, mine, wholesaler, etc.)*

4b. Identify principal product or service

5. Unit Involved *(In UC petition, describe present bargaining unit and attach description of proposed clarification.)*
Included: All postal clerks at all facilities of the employer engaged in customer services and mail processing nationwide.

See Attachment, Page 1-3

Excluded: Managerial and supervisory personnel; professional employees, employees engaged... (See attached).

6a. Number of Employees in Unit:
Present
Approx. 240,000
Proposed *(By UC/AC)*
Unknown

6b. Is this petition supported by 30% or more of the employees in the unit? * Yes ___ No ___
*Not applicable in RM,UC,and AC

*(If you have checked box RC in 1 above, check and complete EITHER item 7a or 7b, whichever is applicable)*

7a. ☐ Request for recognition as Bargaining Representative was made on *(Date)* _____ and Employer declined recognition
on or about *(Date)* _____ *(If no reply received, so state).*

7b. ☐ Petitioner is currently recognized as Bargaining Representative and desires certification under the Act.

8. Name of Recognized or Certified Bargaining Agent *(If none, so state)*
American Postal Workers Union, Attn: Robert Tunstall

Affiliation
AFL-CIO

Address and Telephone Number
1300 L Street, N.W., Washington, D.C. 20005

Date of Recognition or Certification
1971

9. Expiration Date of Current Contract, If any *(Month, Day, Year)*
November 20, 1998

10. If you have checked box UD in 1 above, show here the date of execution of agreement granting union shop *(Month, Day, and Year)*

11a. Is there now a strike or picketing at the Employer's establishment(s)
Involved?    Yes ___    No  x

11b. If so, approximately how many employees are participating?

11c. The Employer has been picketed by or on behalf of *(Insert Name)* _____, a labor
organization, of *(Insert Address)* _____    Since *(Month, Day, Year)* _____

12. Organizations or individuals other than Petitioner *(and other than those named in items 8 and 11c)*, which have claimed recognition as representatives and other organizations and individuals known to have a representative interest in any employees in unit described in item 5 above. *(If none, so state)*

| Name | Affiliation | Address | Date of Claim *(Required only if Petition is filed by Employer)* |
|---|---|---|---|
| None | | | |

I declare that I have read the above petition and that the statements are true to the best of my knowledge and belief.
American Postal Workers Union, AFL-CIO

*(Name of Petitioner and Affiliation, if any)*

By *Robert L. Tunstall*    Director Clerk Division
Robert L. Tunstall
*(Signature of Representative or person filing petition)*    *(Title, if any)*

Address 1300 L Street, N.W. Washington, D.C. 20005    202-842-4220
*(Street and Number, City, State, and ZIP Code)*    *(Telephone Number)*

WILLFUL FALSE STATEMENTS ON THIS PETITION CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)

Attachment to #5 of Form NLRB-502 (5-85)

Article 1.1

## PREAMBLE

This Agreement (referred to as the 1994 National Agreement) is entered into by and between the United States Postal Service (hereinafter referred to as the "Employer") and the American Postal Workers Union, AFL-CIO (hereinafter referred to as the "Union"), pursuant to an Arbitration Award issued **October 1, 1995 and Supplemental Award issued June 7, 1996.** In accordance with terms of this Award, the Agreement is effective as of the date of the Award unless otherwise provided.

## ARTICLE 1
## UNION RECOGNITION

### Section 1. Union

The Employer recognizes the Union designated below as the exclusive bargaining representative of all employees in the bargaining unit for which each has been recognized and certified at the national level:

American Postal Workers Union, AFL-CIO—Maintenance Employees

American Postal Workers Union, AFL-CIO—Special Delivery Messengers

American Postal Workers Union, AFL-CIO—Motor Vehicle Employees

American Postal Workers Union, AFL-CIO—Postal Clerks

**American Postal Workers Union, AFL-CIO—Mail Equipment Shops Employees**

**American Postal Workers Union, AFL-CIO—Materiel Distribution Centers Employees**

1

## Section 2. Exclusions

The employee groups set forth in Section 1 above do not include, and this Agreement does not apply to:

1.   Managerial and supervisory personnel;

2.   Professional employees;

3.   Employees engaged in personnel work in other than a purely non-confidential clerical capacity;

4.   Security guards as defined in Public Law 91-375, 1201(2);

5.   All Postal Inspection Service employees;

6.   Employees in the supplemental work force as defined in Article 7;

7.   Rural letter carriers; or

8.   Mail handlers;  or

9.   **Letter carriers**

## Section 3. Facility Exclusions

This Agreement does not apply to employees who work in other employer facilities which are not engaged in customer services and mail processing, previously understood and expressed by the parties to mean mail processing and delivery, including but not limited to Headquarters, **Area** Offices, **Information Services** Centers, Postal Service Training and Development Institute, Oklahoma Postal Training Operations, Postal Academies, Postal Academy Training Institute, Stamped Envelope Agency or **Mail Transport Equipment Centers.**

2

## Section 4. Definition

Subject to the foregoing exclusions, this Agreement shall be applicable to all employees in the regular work force of the U.S. Postal Service, as defined in Article 7, at all present and subsequently acquired installations, facilities, and operations of the Employer, wherever located.

## Section 5. New Positions

A.   Each newly created position shall be assigned by the Employer to the national craft unit most appropriate for such position within thirty (30) days after its creation. Before such assignment of each new position the Employer shall consult with the Union signatory to this Agreement for the purpose of assigning the new position to the national craft unit most appropriate for such position. The following criteria shall be used in making this determination:

1.   existing work assignment practices;

2.   manpower costs;

3.   avoidance of duplication of effort and "make work" assignments;

4.   effective utilization of manpower, including the Postal Service's need to assign employees across craft lines on a temporary basis;

5.   the integral nature of all duties which comprise a normal duty assignment;

6.   the contractual and legal obligations and requirements of the parties.

B.   **The** Union party to this Agreement shall be notified promptly by the Employer regarding assignments made under this provision. Should **the** Union dispute the assignment of the new position within thirty (30) days from

3

11/12/97    09:25    ☎202 208 3013    NLRB WRO    ☒002

## Article 16

the date the Union has received notification of the assignment of the position, the dispute shall be subject to the provisions of the grievance and arbitration procedure provided for herein.

### Section 6. Performance of Bargaining Unit Work

A. Supervisors are prohibited from performing bargaining unit work at post offices with 100 or more bargaining unit employees, except:

1. in an emergency;

2. for the purpose of training or instruction of employees;

3. to assure the proper operation of equipment;

4. to protect the safety of employees; or

5. to protect the property of the USPS.

B. In offices with less than 100 bargaining unit employees, supervisors are prohibited from performing bargaining unit work except as enumerated in Section 6.A. 1 through 5 above or when the duties are included in the supervisor's position description.

(The preceding Article, Article 1, shall apply to Transitional Employees)

[see Memo, page 312 ]

The unit should be clarified to include the following positions in the bargaining unit.

| LEVEL | TITLE | OCCUPATION CODE |
|-------|-------|-----------------|
| EAS-08 | Supply Clerk | 2005-2008 |
| EAS-08 | Time & Attendance Clerk | 0590-2006 |
| EAS-09 | Duplicator Operator | 0301-2089 |
| EAS-09 | Inspection Service Technician | 0301-2086 |
| EAS-09 | Receptionist (Purchasing) | 0304-2008 |
| EAS-09 | Senior Stenographer | 0312-2006 |
| EAS-09 | Staff Secretary | 0318-2039 |
| EAS-10 | Machinist Helper | 3414-1001 |
| EAS-10 | Office Services Assistant (Area) | 0342-2003 |
| EAS-10 | Office Service Clerk (Area) | 0301-2100 |
| EAS-11 | Administrative Services Technician | 0301-5364 |
| EAS-11 | Chauffeur | 5703-2010 |
| EAS-11 | Communications Control Technician | 0394-2003 |
| EAS-11 | Confidential Secretary (Field Division) | 0318-2037 |
| EAS-11 | Confidential Secretary Field | 0318-2030 |
| EAS-11 | Draftsman | 0818-3002 |
| EAS-11 | Examinations Processing Clerk (NTAC) | 0301-2097 |
| EAS-11 | Human Resources Associate Inspection Service | 0201-5123 |
| EAS-11 | Human Resources Associate | 0201-5108 |

1

| LEVEL | TITLE | OCCUPATION CODE |
|:---:|:---:|:---:|
| EAS-11 | Human Resources Associate | 0201-5112 |
| EAS-11 | Human Resources Associate (HQ) | 0201-5109 |
| EAS-11 | Inspection Service Operations Technician | 0301-2234 |
| EAS-11 | Personnel Programs Assistant | 0212-2001 |
| EAS-11 | Postal Operations Technician | 2340-2010 |
| EAS-11 | Postmaster | 2301-6111 |
| EAS-11 | Receptionist Corporate Personnel Operations | 0304-2007 |
| EAS-11 | Secretary | 0318-2020 |
| EAS-11 | Secretary | 0318-2041 |
| EAS-11 | Sewing Machine Mechanic | 5312-1010 |
| EAS-11 | Stamp Distribution Technician | 2003-4005 |
| EAS-11 | Support Services Technician | 0341-3002 |
| EAS-11 | Superintending Engineer | 4704-6007 |
| EAS-11 | Telemarketing Assistant | 2005-2018 |
| EAS-11 | Telephone Operator | 0382-2002 |
| EAS-11 | Telephone Sales Representative | 1101-2001 |
| EAS-11 | Warehouse | 6960-6008 |
| EAS-12 | Head Storekeeper | 2040-6005 |
| EAS-12 | Maintenance Mechanic Machinist | 3414-1003 |
| EAS-12 | Photographer | 1060-3001 |
| EAS-13 | Accountable Paper Specialist (PFSC) | 0530-2009 |

## JOB DESIGNATIONS

| LEVEL | TITLE | OCCUPATION CODE |
|-------|-------|-----------------|
| EAS-13 | Accounting Technician (MES) | 0525-2026 |
| EAS-13 | Administrative Specialist | 0341-6026 |
| EAS-13 | Arbitration Scheduling Coordinator | 0303-5001 |
| EAS-13 | Assistant Recorder | 0986-3007 |
| EAS-13 | Business Center Representative | 2345-4015 |
| EAS-13 | Customer Service Representative | 2345-4018 |
| EAS-13 | Engineering And Drafting Services (Chicago Only) | 0818-3003 |
| EAS-13 | Machinist | 3414-1002 |
| EAS-13 | Parking Services Coordinator (HQ) | 0342-5027 |
| EAS-13 | Philatelic Stamp Stock Examiner (Chairman of Committee) | 0525-4008 |
| EAS-13 | Philatelic Procurement Assistant | 1105-5007 |
| EAS-13 | Postmaster | 2301-6113 |
| EAS-13 | Postmaster | 2301-6213 |
| EAS-13 | Purchasing Assistant | 1105-5006 |
| EAS-13 | Railway Or Highway Transportation Specialist | 2330-2007 |
| EAS-13 | Repair Parts Cataloger | 2050-5001 |
| EAS-14 | Accounting And Budgeting Technician | 0525-3010 |
| EAS-14 | Administrative Services Coordinator | 0342-5029 |
| EAS-14 | Appeals Technician | 0301-5350 |
| EAS-14 | Appeals Technician | 0335-3019 |

3

| LEVEL | TITLE | OCCUPATION CODE |
|-------|-------|-----------------|
| EAS-14 | Computer Analysis Technician | 0301-5535 |
| EAS-14 | Computer Systems Operator | 0332-4003 |
| EAS-14 | Coordinator Terminal Handling Facility | 2330-2011 |
| EAS-14 | Correspondence Control Coordinator | 0301-5195 |
| EAS-14 | Equipment Inventory Technician | 2005-3001 |
| EAS-14 | Human Resources Associate | 0201-5107 |
| EAS-14 | Human Resources Associate (HFU) | 0201-5110 |
| EAS-14 | Inspection Service Coordinator | 0341-5055 |
| EAS-14 | Labor Relations Technician | 0301-5349 |
| EAS-14 | Legal Secretary (Gen. Counsel) | 0986-3008 |
| EAS-14 | Library Technician | 1411-5002 |
| EAS-14 | Maintenance Control Specialist | 1641-6004 |
| EAS-14 | Mail Flow Controller | 2315-2011 |
| EAS-14 | Operations Support Specialist | 2340-5046 |
| EAS-14 | Personnel Management Associate (Recruitment) | 0201-5089 |
| EAS-14 | Postal Accounting Specialist Staff | 0510-5044 |
| EAS-14 | Product Promotion/Specialist | 1140-5026 |
| EAS-14 | Property Maintenance And Inventory Technician (Headquarters) | 2001-2003 |
| EAS-14 | Purchasing And Supply Technician | 0301-5294 |

4

| LEVEL | TITLE | OCCUPATION CODE |
|-------|-------|-----------------|
| EAS-14 | Quality Assurance Administrative Coordinator | 1910-5003 |
| EAS-14 | Relocation Specialist | 0303-5004 |
| EAS-14 | Safety Specialist (A) | 0018-5004 |
| EAS-14 | Secretary | 0318-2042 |
| EAS-14 | Shipping Coordinator | 2340-5011 |
| EAS-14 | Senior Photographer | 1060-4001 |
| EAS-14 | Tool And Die Maker | 3416-1002 |
| EAS-14 | Transportation Analyst | 2330-5014 |
| EAS-14 | Trayed Mail Flow Controller | 2315-2014 |
| EAS-15 | Account Representative | 2345-5031 |
| EAS-15 | Account Representative | 2345-5008 |
| EAS-15 | Address Information Systems Analyst | 2310-4009 |
| EAS-15 | Address Information Systems Analyst | 2310-4014 |
| EAS-15 | Address Management System Specialist | 2310-5027 |
| EAS-15 | Administrative Specialist | 0341-5025 |
| EAS-15 | Analyst, Schemes And Schedules | 2350-4003 |
| EAS-15 | Automation Readability Specialist | 2315-4013 |
| EAS-15 | Boiler Inspector | 5401-3002 |
| EAS-15 | Business Mail Entry Analyst | 2345-4019 |
| EAS-15 | Classification Support Technician | 2345-3002 |
| EAS-15 | Computer Operations Support Specialist | 0332-3026 |

Table title: JOB DESCRIPTIONS

| LEVEL | TITLE | OCCUPATION CODE |
|-------|-------|-----------------|
| EAS-15 | Contract Assistant | 1102-5017 |
| EAS-15 | Contract Administrator | 1102-5054 |
| EAS-15 | Customer Support Specialist | 0335-3011 |
| EAS-15 | Directory Analysis Specialist | 2340-5029 |
| EAS-15 | EDP Systems Coordinator | 0330-5010 |
| EAS-15 | Elevator Inspector | 5401-3003 |
| EAS-15 | Employee Transportation Coordinator | 0301-5360 |
| EAS-15 | Facilities Contract Technician | 1106-5005 |
| EAS-15 | Information Systems Coordinator | 0330-5017 |
| EAS-15 | Logistics Coordinator | 0343-5006 |
| EAS-15 | Mailpiece Design Analyst | 2345-5033 |
| EAS-15 | Material Management Specialist | 2003-5026 |
| EAS-15 | Material Management Specialist | 2003-5036 |
| EAS-15 | Operations Quality Improvement Analyst | 1910-3001 |
| EAS-15 | Physical Therapist | 0633-3001 |
| EAS-15 | Post Office Accountant | 0510-3007 |
| EAS-15 | Postal Systems Coordinator | 0525-5020 |
| EAS-15 | Sales Information And Promotion Specialist | 1140-5023 |
| EAS-15 | Supply Assistant, (Mail Equipment Shops) | 2005-5006 |
| EAS-15 | Transportation Requirements Analyst | 2330-4025 |

The table title above is: **JOB DESCRIPTIONS**

| LEVEL | TITLE | OCCUPATION CODE |
|-------|-------|-----------------|
| EAS-15 | Accountant, Postal Facilities (A) | 0510-3020 |
| EAS-16 | Acquisitions Librarian | 1411-5003 |
| EAS-16 | Budget Associate | 0560-5021 |
| EAS-16 | Business Center Representative, Senior | 2345-5029 |
| EAS-16 | Communications Specialist | 1081-5013 |
| EAS-16 | Computer Programmer | 0334-3058 |
| EAS-16 | Computer Programmer/Analyst Staff | 0334-3058 |
| EAS-16 | Customer Service Analyst | 2310-5027 |
| EAS-16 | Customer Service Representative | 2345-5034 |
| EAS-16 | Electrical Engineer Associate | 0850-3007 |
| EAS-16 | Facilities Analyst (Field) | 1601-4020 |
| EAS-16 | Illustrator, Technical | 1020-5010 |
| EAS-16 | Information Systems Coordinator | 0334-4058 |
| EAS-16 | Logistics Support Specialist | 2003-5037 |
| EAS-16 | Maintenance Information Specialist | 1641-4019 |
| EAS-16 | Purchasing Specialist | 1102-5049 |
| EAS-16 | Purchasing Specialist (Inspection Service) | 1102-5060 |
| EAS-16 | Retail Marketing Specialist | 2345-5028 |
| EAS-16 | Retail Specialist | 2345-5030 |
| EAS-16 | Safety And Health Associate | 0018-5023 |
| EAS-16 | Safety Specialist (B) | 0018-5005 |
| EAS-16 | Secretary | 0318-2043 |

7

| LEVEL | TITLE | OCCUPATION CODE |
|-------|-------|-----------------|
| EAS-16 | Statistical Programs Analyst (SPSC) | 1530-5007 |
| EAS-16 | Translator | 1045-5002 |
| EAS-17 | Accountable Paper Control Specialist | 2001-5008 |
| EAS-17 | Address Information Systems Specialist, Senior | 2310-4011 |
| EAS-17 | Budget And Planning Analyst | 0560-4013 |
| EAS-17 | Building Services Specialist | 1601-4025 |
| EAS-17 | Computer Operations Support Specialist | 0332-3025 |
| EAS-17 | Computer Systems Operator Lead | 0332-4002 |
| EAS-17 | Contract Administrator, Senior | 1102-5053 |
| EAS-17 | Customer Relations Coordinator | 2345-5035 |
| EAS-17 | Design Production Specialist Associate | 1084-3015 |
| EAS-17 | Delivery And Retail Analyst | 2310-5026 |
| EAS-17 | Distribution Programs Specialist | 2315-5021 |
| EAS-17 | Diversity Development Specialist (Field) | 0160-5060 |
| EAS-17 | EEO Counselor/Investigator | 0160-5060 |
| EAS-17 | Elevator And Boiler Inspector | 5401-3001 |
| EAS-17 | Food And Housekeeping Coordinator | 0301-5240 |
| EAS-17 | Government Relations Analyst | 0301-5356 |
| EAS-17 | Facilities Specialist | 1601-3008 |
| EAS-17 | Telecommunications Specialist | 0393-5001 |
| EAS-18 | Customer Requirements Specialist (BMC) | 2345-5024 |

8

## JOB DESCRIPTIONS

| LEVEL | TITLE | OCCUPATION CODE |
|---|---|---|
| EAS-18 | Marketing Service Analyst | 2345-5037 |
| EAS-18 | Technical Training Specialist | 1712-5022 |
| EAS-19 | Electro-Mechanical Engineering Tech. | 0802-3009 |
| EAS-19 | Environmental Compliance Coordinator | 0819-5003 |
| EAS-19 | Writer/Editor (Field) | 1082-5016 |
| EAS-20 | Architect-Engineer, Staff | 0808-3005 |
| EAS-20 | Architect/Engineer | 9808-3014 |
| EAS-20 | Audio Visual Specialist | 1071-3008 |
| EAS-20 | Automated Operations Software Specialist | 0334-4116 |
| EAS-20 | Budget & Financial Analyst | 0560-5022 |
| EAS-20 | Budget & Cost Analyst | 0560-4030 |
| EAS-20 | Computer Systems Analyst/Programmer | 0334-3044 |
| EAS-20 | Contract Price Analyst | 1102-5034 |
| EAS-20 | Customer Service Specialist | 0301-5353 |
| EAS-20 | Electrical Equipment And Tower Engineer | 0850-3005 |
| EAS-20 | Engineering Technician | 0802-4011 |
| EAS-20 | Inventory Specialist | 2010-5008 |
| EAS-20 | Librarian | 1410-5009 |
| EAS-20 | Operations Support Specialist | 2340-5043 |
| EAS-20 | Philatelic Sales Program Analyst | 1101-5040 |

| LEVEL | TITLE | OCCUPATION CODE |
|-------|-------|-----------------|
| EAS-20 | Presentation Specialist | 1084-4001 |
| EAS-20 | Preventive Maintenance Engineer | 0802-3017 |
| EAS-20 | Program Analyst | 0345-4037 |
| EAS-20 | Space Management Specialist | 0342-5010 |
| EAS-21 | Language Services Specialist | 1047-5001 |
| EAS-21 | Market Research Specialist | 1140-5047 |
| EAS-21 | Mechanical Engineer | 0830-4010 |
| EAS-21 | Graphics Production Specialist | 1084-5010 |
| EAS-21 | Advertising Specialist | 1081-5032 |
| EAS-23 | Communications Engineer | 0855-4031 |
| EAS-23 | Community Relation Specialist (Senior) | 0801-5035 |
| EAS-23 | Network Performance Specialist | 0391-4008 |
| EAS-23 | Records Specialist | 0343-5058 |
| EAS-23 | Reference Librarian | 1410-4011 |
| EAS-23 | Speech Writer | 1081-5053 |
| EAS-23 | Local Area Network Administrator | 0334-3063 |
| EAS-24 | Philatelic Design Specialist | 1001-5030 |
| EAS-24 | Graphics Productions Specialist | 1084-5009 |
| | | |
| | | |
| | | |
| | | |

Table title: JOB DESCRIPTIONS

10

| JOB DESCRIPTIONS | | |
|---|---|---|
| **LEVEL** | **TITLE** | **OCCUPATION CODE** |
|  |  |  |
|  |  |  |

Also two titles are utilized which have no position description which the American Postal Workers Union believes should be bargaining unit positions.

Postmaster Relief (PMR)
Post Office Administrator (POA)

11



## American Postal Workers Union, AFL-CIO

1300 L Street, NW, Washington, DC 20005

October 17, 1997

**Moe Biller, President**
(202) 842-4246

Joseph J Mahon, Jr., Vice President
United States Postal Service
Labor Relations Division
475 L'Enfant Plaza, S.W.
Washington, D.C. 20260-4126

**National Executive Board**
Moe Biller
President

William Burrus
Executive Vice President

Douglas C. Holbrook
Secretary-Treasurer

Greg Bell
Industrial Relations Director

Robert L. Tunstall
Director, Clerk Division

James W. Lingberg
Director, Maintenance Division

Robert C. Pritchard
Director, MVS Division

George N. McKeithen
Director, SDM Division

**Regional Coordinators**
Leo R Persals
Central Region

Jim Burke
Eastern Region

Elizabeth "Liz" Powell
Northeast Region

Terry Stapleton
Southern Region

Raydell R. Moore
Western Region

Dear Mr. Mahon:

Pursuant to Article 31.3 of the National Agreement, please provide copies of all non-bargaining unit position descriptions if those positions are utilized in mail processing and/or customer service facilities. If this information is available in electronic recordings, please provide the information in electronic form.

Please contact Robert Tunstall, Director Clerk Division, at (202) 842-4220, if you have any questions.

Sincerely,

*Moe Biller*

Moe Biller, President

MB:sec
opeiu #2
afl-cio