# USPS RESPONSE TO SHOW CAUSE ORDER 5-UC-386

# ATTACHMENT 6

FROM U.S. ATTTORNEY'S    OFFICE    (THU) 9. 22' 05 13:53/ST. 13:52/NO. 4861391409 P  4

AO 440 (Rev. DC - September 2003) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
## District of Columbia

American Postal Workers Union, AFL-CIO
1300 L Street, NW, Suite 1200
Washington, DC 20005

**SUMMONS IN A CIVIL CASE**

V.

United States Postal Service
475 L'Enfant Plaza, SW
Washington, DC 20260

CASE

CASE NUMBER  1:05CV01771

JUDGE: Henry H. Kennedy

DECK TYPE: Labor/ERISA (non-employment

DATE STAMP: 09/06/2005

TO: (Name and address of Defendant)

Civil Process Clerk at Office of
United States Attorney
District of Columbia
555 4th Street, NW
Washington, DC 20530

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Melinda Holmes
O'Donnell, Schwartz & Anderson, P.C.
1300 L Street, N.W., Suite 1200
Washington, D.C. 20005

an answer to the complaint which is served on you with this summons, within _____60_____ days after service
of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for
the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this
Court within a reasonable period of time after service.

NANCY M. MAYER-WHITTINGTON

SEP 0 6 2005

CLERK                                    DATE

(By) DEPUTY CLERK

G-12-05
LC

FROM U. S. ATTTORNEY'S    OFFICE          (THU) 9. 22' 05 13:53/ST. 13:52/NO. 4861391409 P  5

AO 440 (Rev. DC – September 2003) Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | |
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served: _____

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were left: _____

☐ Returned unexecuted: _____

☐ Other (specify): _____

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____          _____
              *Date*                    *Signature of Server*


                                       _____
                                        *Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

Nancy M. Mayer-Whittington
Clerk of Court

## NOTICE OF RIGHT TO CONSENT TO TRIAL
### BEFORE A UNITED STATES MAGISTRATE JUDGE

The substantial criminal caseload in this Court and the requirements of the criminal Speedy Trial Act frequently result in the delay in the trial of civil cases. Aware of the hardship and expense to the parties, counsel, and witnesses caused by the delays which are beyond the control of the Court, this notice is to advise you of your right to trial of your case by a United States Magistrate Judge. By statute, 28 USC § 636(c), Fed.R.Civ.P. 73 and Local Civil Rule 73.1, the parties, by consent, can try their case by means of a jury trial or bench trial before a United States Magistrate Judge. Appeals from judgments and final orders are taken directly to the United States Court of Appeals for the District of Columbia Circuit, in the same manner as an appeal from a judgment of a District Judge in a civil case.

### WHAT IS THE PROCEDURE?

One of the matters you are required to discuss at the meet-and-confer conference mandated by Local Civil Rule 16.3 is whether the case should be assigned to a United States Magistrate Judge for all purposes, including trial

All parties must consent before the case is assigned to a Magistrate Judge for trial. You may consent at any time prior to trial. If you expressly decline to consent or simply fail to consent early in the case, you are not foreclosed from consenting later in the case. However, a prompt election to proceed before a Magistrate Judge is encouraged because it will facilitate a more orderly scheduling of the case.

Counsel for the plaintiff has been furnished a copy of the "Consent to Proceed Before a United States Magistrate Judge for all Purposes" form. If and when the form is executed, your response should be made to the Clerk of the United States District Court only.

### WHAT IS THE ADVANTAGE?

The case will be resolved sooner and less expensively. The earlier the parties consent to assigning the case to a Magistrate Judge the earlier a firm and certain trial date can be established, even if the case is to be tried to a jury.

Upon the filing of the consent form and with the approval of the District Judge, the case will be assigned to all purposes to a Magistrate Judge.

CO-942A
Rev. 7/99

FROM U. S. ATTTORNEY'S     OFFICE     (THU) 9. 22' 05 13:53/ST. 13:52/NO. 4861391409 P  7

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

2005 SEP 12  P 4: 53

| | |
|---|---|
| AMERICAN POSTAL WORKERS UNION, AFL-CIO 1300 L Street, N.W. Washington, D.C. 20005, | ) ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| UNITED STATES POSTAL SERVICE, 475 L'Enfant Plaza, S.W. Washington, D.C. 20260, | ) ) ) ) |
| Defendant. | ) ) |

CASE NUMBER 1:05CV01771

JUDGE: Henry H. Kennedy

DECK TYPE: Labor/ERISA (non-employment)

DATE STAMP: 09/06/2005

### COMPLAINT

1.     This is an action for breach of a collective bargaining agreement brought in accordance with Section 15 (b) of the Postal Reorganization Act, 39 U.S.C. § 1208 (b), by the American Postal Workers Union, AFL-CIO against the United States Postal Service. In this action, Plaintiff seeks an order enforcing and directing Defendant's compliance with an April 29, 2003, arbitration award issued by Arbitrator Carlton J. Snow.

### JURISDICTION AND VENUE

2.     This Court has jurisdiction over this action under the Postal Reorganization Act, 39 U.S.C. §§ 409 and 1208, and under 28 U.S.C. §§ 1331 and 1337.

3.     Venue properly lies in this court pursuant to 39 U.S.C. § 1208 and 28 U.S.C. § 1391.

### PARTIES

4.     Plaintiff American Postal Workers Union, AFL-CIO is an unincorporated labor organization with headquarters at 1300 L Street, N.W., Washington, DC 20005.  Plaintiff is

recognized as the exclusive bargaining representative of postal clerks as well as other classifications of employees of the Postal Service in accordance with 39 U.S.C. § 1203.

5.      Defendant United States Postal Service is, in accordance with 39 U.S.C. § 201, an independent establishment of the executive branch of the United States Government. Postal Service headquarters are located at 475 L'Enfant Plaza, S.W., Washington, DC 20260.

### FACTUAL ALLEGATIONS

6.      At all material times, Plaintiff and Defendant have been parties to a collective bargaining agreement that sets forth the terms and conditions of employment of employees in bargaining units represented by Plaintiff at various Postal Service facilities throughout the United States.

7.      On December 13, 1999, Plaintiff and Defendant executed an agreement negotiated by the parties and entitled "USPS Settlement Agreement, NLRB Case No. 5-UC-353" (hereinafter "Settlement Agreement").

8.      By its terms, the Settlement Agreement "represents an understanding between the parties to fully and completely resolve any and all issues, and all currently pending grievances regarding the above-captioned Unit Clarification petition."

9.      By its terms, the Settlement Agreement also recognizes that "[i]n initiating the several August 27, 1998 grievances, the APWU intended to broadly encompass disputes over whether the positions belong in the bargaining unit or whether the positions contain duties which should be assigned to the bargaining unit. The parties shall apply the national level arbitration awards which are issued as a result of this settlement agreement as broadly as possible in an effort to resolve other pending EAS grievances raising the same or similar issues or arguments."

2

10.    The Settlement Agreement specified grievances filed by Plaintiff that, unless resolved before arbitration, the parties agreed to arbitrate, including Plaintiff's grievance concerning the "Address Management System Specialist" ("AMS Specialist") position, which was assigned case number Q94C-4Q-C 98117564 by Defendant.

11.    In accordance with the Settlement Agreement, the parties arbitrated Case No. Q94C-4Q-C 98117564 over two days of hearings before Arbitrator Carlton J. Snow on February 22 and July 23, 2002.

12.    Arbitrator Snow issued an award in Case No. Q94C-4Q-C 98117564 dated April 29, 2003.

13.    Arbitrator Snow's award sets out the following holding:

### AWARD

Having carefully considered all evidence submitted by the parties concerning this matter, the arbitrator concludes that the "Address Management System Specialist" position is a part of the APWU bargaining unit and that it is a violation of Article 1.2 of the National Agreement to exclude the position and the disputed work from the bargaining unit. The arbitrator shall retain jurisdiction in this matter for ninety days from the date of the report in order to resolve any problems resulting from the remedy in the award. It is so ordered and awarded.

14.    The decision of Arbitrator Snow in Case No. Q94C-4Q-C 98117564 is final and binding.

15.    Upon information and belief, Defendant has directed its local-level managers not to arbitrate or resolve any grievances concerning the AMS Specialist position or work, or citing, relying upon, or otherwise referring to Arbitrator Snow's April 29, 2003, award in Case No. Q94C-4Q-C 98117564.

3

16.    Defendant refuses to arbitrate or resolve any grievances concerning the AMS Specialist position, including a grievance arising in Asheville, North Carolina in USPS Grievance No. C00C4CC03175549.

17.    By its actions and inaction, Defendant has failed and refused to comply with Arbitrator Snow's April 29, 2003, award in Case No. Q94C-4Q-C 98117564 and implement the award's holding.

18.    By failing and refusing to comply with Arbitrator Snow's April 29, 2003, award in Case No. Q94C-4Q-C 98117564, Defendant has violated and continues to violate its contractual obligations to Plaintiff.

## COUNT I
### (ENFORCE ARBITRATION AWARD)

19.    Plaintiff alleges paragraphs one through eighteen above as though fully set forth herein.

20.    Defendant has failed and refused to comply with Arbitrator Snow's April 29, 2003, award in Case No. Q94C-4Q-C 98117564 and implement the award's holding.

WHEREFORE, Plaintiff prays that this Court issue a decision and order:

(A)    Enforcing and directing Defendant to comply with Arbitrator Snow's April 29, 2003, award in Case No. Q94C-4Q-C 98117564;

(B)    Directing Defendant to pay in full Plaintiff's attorneys' fees and costs in this action; and

4

(C)    Granting Plaintiff such other and further legal and equitable relief as the Court
deems just and proper.

## COUNT II
### (COMPEL ARBITRATION OF AMS SPECIALIST GRIEVANCES)

21.    Plaintiffs allege paragraphs one through twenty above as though fully set forth
herein.

22.    The grievance arising in Asheville, North Carolina in USPS Grievance No.
C00C4CC03175549 concerns the same or similar issues or arguments raised in the AMS
Specialist grievance and resolved by Arbitrator Snow's April 29, 2003, award in Case No. Q94C-
4Q-C 98117564.

23.    By refusing to arbitrate the grievance arising in Asheville, North Carolina in
USPS Grievance No. C00C4CC03175549, and other similarly-situated grievances, Defendant
has failed and refused to comply with the settlement agreement.

WHEREFORE, Plaintiff prays that this Court issue a decision and order:

(A)    Directing Defendant to arbitrate all grievances concerning the Address
Management System Specialist position or work, or citing, referring to, or otherwise referencing
Arbitrator Snow's April 29, 2003, award in Case No. Q94C-4Q-C 98117564, including USPS
Grievance No. C00C4CC03175549;

(B)    Directing Defendant to pay in full Plaintiff's attorneys' fees and costs in this
action; and

(C)    Granting Plaintiff such other and further legal and equitable relief as the Court
deems just and proper.

FROM U.S. ATTTORNEY'S    OFFICE                    (THU) 9.22'05 13:54/ST. 13:52/NO. 4861391409 P 12

Respectfully submitted,

O'DONNELL, SCHWARTZ & ANDERSON, P.C.

Date: September 6, 2005                    By:    *Anton G. Hajjar*  mkh
                                                  Anton G. Hajjar (DC Bar No. 359267)
                                                  ahajjar@odsalaw.com


                                                  *Melinda K. Holmes*
                                                  Melinda K. Holmes (DC Bar No. 458043)
                                                  mholmes@odsalaw.com

                                                  1300 L Street, N.W., Suite 1200
                                                  Washington, D.C. 20005
                                                  (202) 898-1707

6

FROM U. S. ATTTORNEY'S     OFFICE          (THU) 9. 22' 05 13:54/ST. 13:52/NO. 4861391409 P 13

CLERK'S OFFICE                                    CO-932
UNITED STATES DISTRICT COURT                      Rev. 4/96
FOR THE DISTRICT OF COLUMBIA

## NOTICE OF DESIGNATION OF RELATED CIVIL CASES PENDING IN THIS OR ANY OTHER UNITED STATES COURT

Civil Action No. _____
(To be supplied by the Clerk)

### NOTICE TO PARTIES:

Pursuant to Rule 405(b)(2), you are required to prepare and submit this form at the time of filing any civil action which is related to any pending cases or which involves the same parties and relates to the same subject matter of any dismissed related cases. This form must be prepared in sufficient quantity to provide one copy for the Clerk's records, one copy for the Judge to whom the cases is assigned and one copy for each defendant, so that you must prepare 3 copies for a one defendant case, 4 copies for a two defendant case, etc.

### NOTICE TO DEFENDANT:

Rule 405(b)(2) of this Court requires that you serve upon the plaintiff and file with your first responsive pleading or motion any objection you have to the related case designation.

### NOTICE TO ALL COUNSEL

Rule 405(b)(3) of this Court requires that as soon as an attorney for a party becomes aware of the existence of a related case or cases, such attorney shall immediately notify, in writing, the Judges on whose calendars the cases appear and shall serve such notice on counsel for all other parties.

The plaintiff , defendant or counsel must complete the following:

1. **RELATIONSHIP OF NEW CASE TO PENDING RELATED CASE(S).**

   A new case is deemed related to a case pending in this or another U.S. Court if the new case:  [Check appropriate box(e's) below.]

   | | (a) | relates to common property |
   | --- | --- | --- |
   | [ ] | (a) | relates to common property |
   | [X] | (b) | involves common issues of fact |
   | [X] | (c) | grows out of the same event or transaction |
   | [ ] | (d) | involves the validity or infringement of the same patent |
   | [ ] | (e) | is filed by the same pro se litigant |

2. **RELATIONSHIP OF NEW CASE TO DISMISSED RELATED CASE(ES)**

   A new case is deemed related to a case dismissed, with or without prejudice, in this or any other U.S. Court, if the new case involves the same parties and same subject matter.

   Check box if new case is related to a dismissed case: [ ]

3. NAME THE UNITED STATES COURT IN WHICH THE RELATED CASE IS FILED (IF OTHER THAN THIS COURT):

   _____

4. CAPTION AND CASE NUMBER OF RELATED CASE(E'S). IF MORE ROOM IS NEED PLEASE USE OTHER SIDE.

   American Postal Workers Union, AFL-CIO   v.   United States Postal     C.A.No.  04-CV-1404

   September 6, 2005                  _[signature]_
   DATE                       Signature of Plaintiff /Defendant (or counsel)

FROM U. S. ATTTORNEY'S    OFFICE    (THU) 9. 22' 05 13:54/ST. 13:52/NO. 4861391409 P 14

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

# INITIAL ELECTRONIC CASE FILING
# ORDER

Subsequent filings in this case must be made electronically using the Court's Electronic Case Filing System (ECF) pursuant to Local Rule 5.4.

ORDERED that counsel shall:

- Submit in paper, the original and copy of the complaint/notice of removal/petitions for habeas corpus and any accompanying papers. Additionally, litigants are hereby required to provide those filings in PDF Format on a floppy disk or CD-Rom compact disk. The disk should be clearly labeled with the case number (if known) and the name of the parties. If unable to deliver the filing on a disk at the time of the new case filing, counsel should e-mail the initiating document and accompanying papers to dcd_cmecf@dcd.uscourts.gov by the close of business the day the new case was filed. Failure to supply electronic copies of the new case in a timely manner, will result in the attorney's name being added to the attorney non-compliant list and shared with the Court's ECF Judge's Committee. Regardless of what option, counsel chooses the complaint/notice of removal and accompanying papers must come to the Court as PDF documents. Each exhibit to the new case shall be in a separate PDF file. Failure to submit PDF versions of the complaint/notice of removal and other documents will delay the opening of the case in ECF.

- Register, if not previously registered, to become an electronic filer by completing and returning the enclosed ECF Registration Form found on the Court's Website at (www.dcd.uscourts.gov). The login and password are case specific and can be used for all cases.

- All subsequent filings must be made electronically.

- Have a PACER (Public Access to Court Electronic Records) account, in order to view dockets and documents. Call 1-800-676-6856 or visit www.pacer.psc.uscourts.gov for additional information.

- Schedule a training class at the Courthouse by going to the Court's ECF Internet Website (www.dcd.uscourts.gov/ecf.html). Also, filing instructions and an interactive tutorial can be found at this Internet Website.

KENNEDY, JR. J. HHK

_____
UNITED STATES DISTRICT JUDGE

FROM U. S. ATTTORNEY'S    OFFICE         (THU) 9. 22' 05 13:54/ST. 13:52/NO. 4861391409 P 15

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

## ELECTRONIC CASE FILES
### Attorney/Participant Registration Form

## LIVE SYSTEM

This form shall be used to register for an account on the Court's Electronic Case Files (ECF) system and to subscribe to the ECF EMail (Listserver) notification service. Registered attorneys and other participants will have privileges both to electronically submit documents, and to view and retrieve electronic docket sheets and documents for all cases assigned to the Electronic Case Files system.  Listserver subscribers receive email messages whenever the Court wishes to electronically notify ECF registrants of pertinent ECF information.

The following information is required for registration:

First Name/Middle Initial/Last Name    _____

Last four digits of Social Security Number    _____

DC Bar ID#.    _____

Firm Name    _____

Firm Address    _____

Voice Phone Number    _____

FAX Phone Number    _____

Internet E-Mail Address    _____

By submitting this registration form, the undersigned agrees to abide by the following rules:

1.    This system is for use only in cases permitted by the **U.S. District Court for the District of Columbia**.  It may be used to file and view electronic documents, docket sheets, and notices.  Please visit the Court's ECF Internet, www.dcd.uscourts.gov, website to schedule training.

2.    Pursuant to Federal Rule of Civil Procedure 11, every pleading, motion, and other paper (except list, schedules, statements or amendments thereto) shall be signed by at least one attorney of record or, if the party is not represented by an attorney, all papers shall be signed by the party. An attorney's/participant's password issued by the court

FROM U. S. ATTTORNEY'S      OFFICE            (THU) 9. 22' 05 13:54/ST. 13:52/NO. 4861391409 P 16

combined with the user's identification, serves as and constitutes the attorney's/participant's signature. Therefore, an attorney/participant must protect and secure the password issued by the court. If there is any reason to suspect the password has been compromised in any way, it is the duty and responsibility of the attorney/participant to immediately notify the court. This should include the resignation or reassignment of the person with authority to use the password. The Court will immediately delete that password from the electronic filing system and issue a new password.

3.    An attorney's/participant's registration will not waive conventional service of a summons and complaint, subpoena, or other judicial process; submit the client to the jurisdiction of the Court; or operate as a consent to accept service of pleadings, documents, and orders in actions in which such attorney/participant has not entered an appearance. An attorney's/participant's registration will constitute a waiver in law only of conventional service of other non-process pleadings, documents, and orders in the case. The attorney/participant agrees to accept, on behalf of the client, service of notice of the electronic filing by hand, facsimile or authorized e-mail.

4.    Upon receipt of your login and password, you are strongly encouraged to change your password, which may be done through the Utilities function, to a name easily recalled. **You may be subjected to a fee, should the Clerk's Office have to create a new password for you, or alternatively, you may be required to appear in person to receive your new password.**

5.    Attorneys who are active members of the bar of this Court, or government attorneys who are employed or retained by the United States, or who have been permitted to proceed *pro hac vice*, must file pleadings electronically.

Please return this form to:            U.S. District Court for the District of Columbia
                                        Attn:   Attorney Admissions
                                        333 Constitution Avenue NW, Room 1825
                                        Washington, DC 20001

Or FAX to:                             Peggy Trainum
                                        U.S. District Court for the District of Columbia
                                        (202) 354-3023

Applicant's Signature

Full Last Name          Initial of          Last 4 Digits SS#
                        First Name

ECF Registration Form (May 2004)              Page 2
                        U.S. District Court for the District of Columbia

# USPS RESPONSE TO SHOW CAUSE ORDER 5-UC-386

# ATTACHMENT 7

*O'Donnell, Schwartz & Anderson, P.C.*

*Counselors at Law*

*1300 L Street, N.W. Suite 1200*

*Washington, D.C. 20005*

(202) 898-1707

FAX (202) 682-9276

ASHER W. SCHWARTZ
DARRYL J. ANDERSON
MARTIN R. GANZGLASS
LEE W. JACKSON
ARTHUR M. LUBY
ANTON G. HAJJAR*
SUSAN L. CATLER
RICHARD S. EDELMAN
PETER J. LEFF**
MELINDA K. HOLMES
MURSHED ZAHEED
DANIEL B. SMITH***

*ALSO MD
**ALSO VA
***MD BAR ONLY

JOHN F. O'DONNELL
(1907-1993)

1300 L Street, N.W.
Suite 707
Washington, D.C. 20005
(202) 898-1824

September 19, 2002

Carlton Snow, Arbitrator
P.O. Box 5246
Salem, OR 97304

     Re. Case Q94C-4Q-C 9811764 (EAS - AMS Specialist)

Dear Professor Snow:

     I am delighted to inform you that Mindy Holmes is a new mother as of Monday, although this happy event occurred a month before it was expected. Mother and son Wesley (and father Des Hogan) are all well. I am therefore replying for her to Keith Secular's letter of September 9. I am authorized to say that if you sustain the grievance to the extent that the EMS positions should have been assigned to a bargaining unit, the APWU is willing to have the question of which unit referred to the Article 1.5 procedure, as the NALC has suggested. The question whether any part of the work of AMS personnel is clerk work is an issue which you must reach only if you find that the AMS position is properly classified as an EAS position but that the all or some of the work is craft (not EAS) work. In this event the APWU accepts the NALC's suggestion to bifurcate the case, leaving the question for you to decide on the basis of a record supplemented by NALC evidence, absent the parties' agreement.

               Respectfully submitted,

               Anton Hajjar

Keith Secular
Howard Kaufman

# USPS RESPONSE TO SHOW CAUSE ORDER 5-UC-386

# ATTACHMENT 8

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN POSTAL WORKERS UNION, AFL-CIO, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil No. 04-1404 (HHK) ) |
| UNITED STATES POSTAL SERVICE, | ) ) |
| Defendant. | ) ) |

PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S OPPOSITION
TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGEMENT AND
REPLY TO DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

The Postal Service's attempts to recast this case as a suit of its own simply cannot change that this matter is and continues to be a case about enforcement of a labor arbitration award and honoring the commitment to labor arbitration. There is no real dispute about the facts relevant to whether to enforce the arbitration award issued by Arbitrator Snow that concerned assignment of the work performed by the Address Management System ("AMS") Specialist. While there does appear to be significant disagreement about the interpretation and meaning of a large number of other facts, the nature of this disagreement underscores the basic fundamental nature of the only issue before the Court. Unless Arbitrator Snow's award meets the limited high standards for the Court to refuse enforcement, it is a "presumptively valid product of collective bargaining" that must be enforced. Communication Workers of America v. Bell Atlantic-West Virginia, Inc., 27 F.Supp.2d 66, 69 (1998).

The issue before the Court is further simplified by developments that arose since the APWU filed its summary judgment motion in June 2006, and the Postal Service opposed with its own cross-motion for summary judgment in August 2006. First, the National Labor Relations Board ("NLRB") finally issued its decision on the Postal Service's request for review of a Postal Service unit clarification petition concerning the same position addressed by Arbitrator Snow's award. As the APWU anticipated and repeatedly explained, the NLRB's decision did <u>not</u> address the merits of the Postal Service's petition. Rather, it determined only that the Postal Service's petition could be processed by the NLRB's Region 5, and the matter is now set for a hearing at the regional level on February 20, 2007. The result of that hearing is subject to the same appeal process exercised by the Postal Service over Region 5's preliminary dismissal of the unit clarification petition in 2003.

Second, the APWU has disclaimed interest in representing employees in the AMS Specialist position that Arbitrator Snow found was properly a part of the APWU bargaining unit by operation of the parties' collective bargaining agreement. As a result, the APWU is no longer seeking the Court's enforcement of that part of the AMS Award assigning the AMS Specialist position to the APWU bargaining unit. This leaves merely a work assignment issue that is undisputedly outside of the NLRB's jurisdiction to address, and was very clearly within the authority of Arbitrator Snow to decide as a matter of law and contract. The work assignment award is final and binding, and is ripe for implementation and enforcement; the Postal Service's opposition to the Court's enforcement of the work assignment

2

holding is not only indefensible, but is time-barred. As such, the Court should enforce Arbitrator Snow's award assigning the work performed by the AMS Specialist to the APWU.

Another positive development is that the Postal Service has suggested a resolution to the APWU's companion claim to compel arbitration. Based on the Postal Service's representations in its cross-motion for summary judgment, the Court should order that arbitration of the grievances set forth in the 1999 Settlement Agreement go forward in accordance with the arbitration process found in the parties' National Agreement. The remainder of the 1999 Settlement Agreement providing for resolution of other matters and principles for resolving these disputes outside of arbitration should be left intact. The APWU is satisfied that the Court ordering such a resolution will dispose of the Union's claims seeking an order compelling the Postal Service to arbitrate. It will also preserve arbitration as the parties' preferred method of dispute resolution as well as maintain the other terms of the parties' settlement agreement that are separable from the agreement's special arbitration process and valuable in their own right.

I.     ADDITIONAL MATERIAL FACTS NOT IN DISPUTE

Since the parties' last filings, significant developments related to the case have occurred. First, the NLRB finally issued its decision on the Postal Service's request for review of the NLRB Region 5's dismissal of the Postal Service's unit clarification petition. (Amended Declaration of Clifford J. Guffey ("Guffey Am. Dec.") at ¶39, Ex. 5.) As the APWU repeatedly expressed in response to the Postal

3

Service's characterization of those proceedings, the NLRB did not rule on the merits

of the Postal Service's petition. Instead, the NLRB found that the 1999 Settlement

Agreement was not a waiver of the Board's representation processes and remanded

the matter back to Region 5 of the NLRB for further proceedings on the merits of

the petition. (Guffey Am. Dec. at ¶39, Ex. 5 at 2.) The Postal Service has since

amended its petition to seek the exclusion of only the AMS Specialist position from

the APWU bargaining unit. (Guffey Am. Dec. at ¶42.) Presently, a hearing on the

Postal Service's petition is scheduled for February 20, 2007. (Guffey Am. Dec. at

¶42.) The outcome of that hearing is subject to the same appeal process exercised by

the Postal Service over Region 5's preliminary dismissal of the unit clarification

petition in 2003. See NLRB Rule101.21(d).

The parties have also settled a successor collective bargaining agreement.

(Guffey Am. Dec. at ¶43.) This new agreement, the 2006 National Agreement, was

officially ratified by the APWU membership by a ballot vote that was certified in

January 2007. (Guffey Am. Dec. at ¶44.) The 2006 National Agreement includes

substantively the same Article 15 arbitration provision as described in the Postal

Service's statement of material facts not in dispute. (Guffey Am. Dec. at ¶45.) The

negotiations did not, however, resolve the issues underlying the APWU's grievances

and the 1999 Settlement Agreement. (Guffey Am. Dec. at ¶46.)

Finally, the APWU has disclaimed interest in representing the employees in

the AMS Specialist position. By letter dated January 29, 2007, the APWU put the

Postal Service on notice that it "unequivocally disclaims interest in representing

4

postal employees in the classification Address Management System Specialist, EAS-
15 ("AMS") notwithstanding the award of Arbitrator Carleton Snow's award dated
April 29, 2003..." (Guffey Am. Dec. at ¶47, Ex. 7.)

I.    ARGUMENT

    A.    <u>That Part of the Arbitrator Snow's Award Assigning the Work of the
         AMS Specialist to the APWU Bargaining Unit Should Be Enforced.</u>

        1.    <u>The Court Should Enforce Arbitrator Snow's Award Assigning
           the AMS Specialist Work to the APWU Bargaining Unit.</u>

The Court should enforce the work assignment holding of Arbitrator Snow's
award. As this Court has noted

> A court's review of an arbitration award under a collective bargaining
> agreement is "extremely narrow." American Postal Workers Union v.
> U.S. Postal Service, 52 F.3d 359, 361 (D.C. Cir. 1995). "[A]s long as the
> arbitrator is even arguably construing of applying the contract and
> acting within the scope of his authority, that a court is convinced he
> committed serious error does not suffice to overturn his decision."
> United Paperworkers v. Misco, 484 U.S. 29, 38, 108 S.Ct. 364, 371, 98
> L.Ed.2d 286 (1987).

<u>CWA</u>, 27 F.Supp.2d at 69. Here, there is no valid or articulated contention that

Arbitrator Snow's holding that work assignments performed by the AMS Specialist

should be assigned to APWU bargaining unit positions is incorrect or improper,

much less unlawful or in violation of public policy. In the absence of any evidence

supporting the narrow exceptions to enforcement of a labor arbitration award, an

award that the Court has already found is final and that the parties' collective

bargaining agreement makes binding should be enforced.

There is no legal bar to enforcement of the work assignment award. The work

assignment issue does not implicate the exception to enforcement for awards that are in direct conflict with the law. See id. (in suit to vacate labor arbitration award, the court "must find that the arbitrator's decision either compels the violation of law or accepted public policy or dispenses the arbitrator's 'own brand of industrial justice' rather than 'draw[ing] its essence from the collective bargaining agreement.'")(citation omitted). The Postal Service does not dispute that Arbitrator Snow's work assignment holding is not within the NLRB's jurisdiction to address. Thus, even if the NLRB ultimately finds that the AMS Specialist position should be excluded from the APWU bargaining unit in contrast to Arbitrator Snow's finding, this finding is immaterial to the work assignment holding. Nor is the award conceivably in conflict with any law or public policy that the Postal Service has articulated and supported with anything other than hyperbole. To the contrary, Arbitrator Snow's finding that the work performed by the AMS Specialist should be assigned to APWU bargaining unit employees is explicitly and squarely based on Arbitrator Snow's interpretation and application of Article 1 of the National Agreement. It is a valid expression of undisputed arbitral authority and is legally sound, even if the Postal Service thinks it is wrong. See American Postal Workers Union v. U.S. Postal Service, 789 F.2d 1, 7 (D.C. Cir 1986)(arbitration award cannot be vacated even if court finds errors of fact and law). There is, therefore, no basis for the Court to refuse enforcement of the work assignment holding of Arbitrator Snow's award.

6

2.    The Postal Service is Precluded from Raising Any Defense to the
       APWU's Suit to Enforce Arbitrator Snow's Award.

When it failed to affirmatively challenge Arbitrator Snow's award in court,

the Postal Service also lost its opportunity to challenge the merits of the award in

this proceeding. The weight of authority is overwhelming: Once the time limit for

vacating an arbitration award has run, the Postal Service is precluded from

advancing any defense to the APWU's enforcement action that it could have

asserted in a timely motion to vacate, modify, or correct the award. IBEW, Local 26

v. CWS Electric, 669 F. Supp. 495 (D.D.C. 1986); International Union of Operating

Engineers v. Murphy Co., 82 F.3d 185, 188, n.1 (7th Cir. 1996) (citing authority from

nine federal circuits supporting this proposition); see also Service Employees, Local

722 v. Washington Hospital Center, 1983 WL 2085, *2 n.2 (D.D.C. 1983).  Although

the time limitation which attaches to suits to vacate arbitration awards under

Section 1208 (b) of the Postal Reorganization Act is unsettled, the longest possible

period is six months. See American Postal Workers Union v. U.S. Postal Service,

823 F.2d 466 (11th Cir. 1987)(adopting three month limitation period of the Federal

Arbitration Act over six month period under National Labor Relations Act or [90-

day] period under state law); DelCostello v. Int'l Brotherhood of Teamsters, 462

U.S. 151 (1983)(adopting six month statute of limitations of National Labor

Relations Act § 10 (b) for duty of fair representation actions). And as this Court has

noted in this case, "asking an arbitrator to reconsider his or her decision does not

extend the statute of limitations for moving to vacate an arbitration award."

7

American Postal Workers Union v. U.S. Postal Service, 422 F.Supp.2d 240, 247 n.4
(D.D.C. 2006).

Arbitrator Snow's award was issued on April 29, 2003, almost four years ago.
In that time, the Postal Service never brought suit to vacate or clarify the award
despite its hearty opposition to Arbitrator Snow's findings. The Postal Service's unit
clarification petition before the NLRB is insufficient to preserve the Postal Service's
opportunity to offer a defense in court. This is not a case that was deferred to
arbitration – the unit clarification petition must be litigated and supported in its
own right, and the NLRB does not sit to review and adopt Arbitrator Snow's award.
Nor does the NLRB have jurisdiction to affirmatively vacate the award, and the
NLRB will not even reach the work assignment issue that Arbitrator Snow decided.
The unit clarification petition is not, therefore, a surrogate to a suit to vacate,
modify, or clarify an arbitration award. E.g. Advanced Architectural Metals, Inc.,
347 NLRB No. 111 (2006)("The principal issue presented in this case is whether the
shop unit constitutes a separate appropriate unit...The threshold question to
addressed in this case is not whether the arbitrator's analysis of the unit issues is
correct, but whether the issues raised by the Employer's petition turn, at least in
part, on the statute")(emphasis added). The Postal Service is therefore time-barred
from putting forth any argument that it could have pursued as a basis for vacating,
modifying, or clarifying Arbitrator Snow's award in court.

Other than whether it has complied with the award (which it undisputedly
has not), there is no defense or argument the Postal Service has asserted in

8

opposition to the APWU's claim for enforcement that would not have been the basis for a suit to vacate, modify, or correct Arbitrator Snow's award. The Postal Service's pleadings are almost entirely based on criticisms of Arbitrator Snow's reasoning that the Postal Service contends should lead the Court effectively to vacate the award and order a new arbitration. Because all of these arguments are time-barred, they are not fairly at issue. The only issue is whether there is a reason the Court cannot enforce Arbitrator Snow's award; there being none, as set forth herein, enforcement of the award is proper, if not required, notwithstanding the Postal Service's improper objections.

> a.    There is No Remand To Arbitration That Is Appropriate Or
>        Warranted.

Because the Postal Service is precluded from defending against the APWU's claim to enforce Arbitrator Snow's award, it hopes instead to accomplish through its demands for a remand to arbitration what it otherwise is time-barred from asserting as a defense. By phrasing the remand issue as one encompassing the complete arbitration rule,[2] procedural error, and the incorrect application of NLRB

---

[2]    The Postal Service's arguments concerning the overall finality of Arbitrator Snow's award and the complete arbitration rule have already been addressed and disposed of by the Court's decision of March 23, 2006. As the Court has already found, "application of the so-called 'complete arbitration' rule to preclude judicial review by this court is inappropriate in this case." APWU, 422 F.Supp.2d at 246. The Court will recall that it also held that

> In light of the fact that the USPS argued against NALC's request and
> specifically advocated for a 'full and final decision in this matter,'
> [citations omitted], the court believes that Arbitrator Snow's silence
> with regards to NALC's request and the subsequent issuance of a full

9

law, (see Def. Opp. and Mot. Sum. Jdgmt. at 2), the Postal Service is contending

that a remand to re-hear the APWU's grievance or to clarify Arbitrator Snow's

remedy is necessary because Arbitrator Snow's interpretation and application of the

parties' collective bargaining agreement was wrong. These contentions about the

propriety of Arbitrator Snow's findings, proceedings, and remedy are all potential

(although incorrect) grounds for vacating, modifying, or clarifying an arbitration

award.[3] As such, the Postal Service is precluded from raising them as defenses to

the APWU's claim for enforcement, and remanding for further arbitration is equally

impermissible. See <u>Local 2222, Int'l Brotherhood of Electrical Workers v. New

England Telephone and Telegraph Co.</u>, 628 F.2d 644, 649 (1st Cir. 1980)(unions are

---

and final decision demonstrates that he intended to reject that request.
The mere fact that NALC and USPS later wrote to Arbitrator Snow to
repeat this request <u>does not negate the finality of the award</u>. [footnote
omitted] Therefore, <u>because the award was final when issued by the
arbitration and the request for clairfication did nothing to undermine
that finality</u>, the court must deny the USPS's motions to dismiss for
failure to exhaust."

Id. at 246-247 (emphasis added). The APWU does not believe it is proper or
productive to reargue points that have already been established as the law in the
case.

[3]    The APWU believes that the Court has already disposed of the Postal
Service's continuing arguments that this lawsuit is an elaborate ruse intended to
cut the National Association of Letter Carriers ("NALC") out of the proceedings.
<u>APWU</u>, 422 F.Supp.2d at 246-247. The NALC is, of course, free to participate in
these court proceedings and has done so at least indirectly. (See Def. Mot. Sum.
Jdg., Declaration of Gary H. Mullins, NALC Vice President.) As with its other
defenses, a purported denial of due process in the arbitration proceedings can be
raised here only if it was first raised in a suit to vacate. Neither the Postal Service
or the NALC brought such a suit.

10

not required "to invoke the 'time-consuming and burdensome grievance process
again' in order that the parties might resolve the remnants of a dispute which has
already once traveled that route...")(citations omitted). The Court should reject the
Postal Service's backdoor attempt to litigate time-barred defenses as well as to re-
litigate the issues it fairly lost the first time.

      b.   <u>Arbitrator Snow's Award Addresses the Work Assignment Issue.</u>

     The Postal Service's argument that Arbitrator Snow did not clearly issue an
award on the work assignment issue is both time-barred and incorrect. As argued
above, the Postal Service's claim is time-barred because the Postal Service never
raised it in a suit to clarify or vacate the award. Moreover, the Postal Service's
position that "the assignment of the work by the Arbitrator is solely a consequence
of the assignment of the position" is factually incorrect and unsupported. (Def. Opp.
and Mot. Sum. Judg. at 10.) This argument is not a basis for the Court to refuse to
enforce the work assignment holding of Arbitrator Snow's award.

     The same deference the courts grant labor arbitration awards applies equally
to questions of ambiguity in an award. A purported or actual ambiguity in an award
does not entitle the courts to review the merits of the contract disputes themselves.
See <u>W.R. Grace & Co. v. Rubber Workers</u>, 461 U.S.757, 764 (1983); <u>APWU</u>, 789 F.2d
at 5 ("even in the face of an ambiguous arbitration award, a judge has no authority
to second-guess arbitral judgments."). So long as there is a contractual basis for an
award, whether or not it is articulated by the arbitrator, ambiguity is not a reason
to refuse enforcement of an arbitration award. See <u>United Steelworkers v.</u>

11

Enterprise Wheel & Car Corp., 363 U.S. 593, 598 (1960); Chicago Typographical
Union No. 16 v. Chicago Sun-Times, Inc., 953 F.2d 1501, 1505-05 (7th Cir. 1991). To
the extent the Postal Service's argument is one of ambiguity, it is not properly
before the Court nor is it a valid basis for the Court to refuse enforcement of
Arbitrator Snow's award.

 In addition, the facts simply do not support the Postal Service's position. The
Postal Service looks to the parties' statements after the arbitration hearing rather
than the explicit language of the award itself to assess whether Arbitrator Snow
addressed the work assignment issue. It is clear from both the undisputed issue
before him, his reasoning, and his holding that he did take up and decide the work
assignment issue. For example, it is undisputed that, as set forth in the award, the
issues before Arbitrator Snow were whether the AMS Specialist position was
properly part of the APWU bargaining unit as well as whether the "position
contains duties belonging in the APWU bargaining unit". (Guffey Am. Dec. at ¶11,
Ex. 2 ("Snow Award") at 3.) Arbitrator Snow recounts that the Postal Service
argued that the AMS Specialists' duties were not bargaining unit duties; the APWU
argued that they were. (Snow Award at 10-11, 8-9.) Arbitrator Snow addressed the
issues of position and work assignment concurrently but separately in finding that
the National Agreement meant to include what it did not exclude; he specifically
held that "it is reasonable to conclude that the parties intended the work and the
position to be in the bargaining unit." (Snow Award at 22.)

 Arbitrator Snow went on to compare the duties of the AMS Specialist with

12

duties performed by bargaining unit positions. Contrary to the Postal Service's representations in its motion, Arbitrator Snow specifically noted and commented on specific tasks performed by the AMS Specialist which he found to be similar if not identical to those performed by bargaining unit positions. (Snow Award at 26-27.) He commented on the usefulness of position descriptions in assessing whether the AMS Specialist is performing bargaining unit work. (Snow Award at 27.) He went on to find that "the Employer bound itself to assign the work to the most appropriate craft, namely, the Clerk Craft." (Snow Award at 34.) Arbitrator Snow's ultimate award stating that "the arbitrator concludes that the 'Address Management System Specialist' position is part of the APWU bargaining unit and that it is a violation of Article 1.2 of the National Agreement to exclude the position and the disputed work from the bargaining unit" is therefore not a qualified holding limited to answering only one of the APWU's two issues. (Snow Award at 37.) It is an explicit, reasoned, and supported holding that the non-managerial non-supervisory work performed by the AMS Specialist should be assigned to the APWU bargaining unit.

The Postal Service's claimed confusion about how to implement Arbitrator Snow's finding emphasizes its own failings. If, as it claims, the Postal Service does not understand Arbitrator Snow's award, a suit seeking clarification might have been appropriate. No such suit was, however, pursued, the failing of which bars any

complaints about the clarity of the award.[4] The Postal Service is capable of

assigning the work assignments of the AMS Specialist to the APWU bargaining

unit, but does not want to. Its intransigence is unjustifiable. Accordingly, the Postal

Service's criticism of the clarity of Arbitrator Snow's award is not a legitimate

excuse for the Postal Service's non-compliance or the Court's non-enforcement.

    B.    <u>There Is No Need to Defer to Any Action by or Decision of the NLRB
Because There Is No Dispute That Will Not Address the Part of the
Arbitration Award That the Union Seeks to Have Enforced.</u>

The work assignment issue decided by Arbitrator Snow is beyond the

jurisdiction of the NLRB to address. There is, therefore, no value in staying or

dismissing the APWU's claim for enforcement of that part of the Snow Award for a

decision from the NLRB addressing the unit placement issue. Although it mainly

revisits authority and argument already disposed of by the Court's March 2006

Decision, the Postal Service's argument for a stay pending decision of the NLRB on

the Postal Service's unit clarification petition is obviated by the APWU foregoing

the representation of the AMS Specialists and enforcement of the unit placement

issue decided by Arbitrator Snow.

In order to bring this litigation to an end, the APWU will withdraw or accept

without opposition the Court's dismissal of the APWU's claim for enforcement of

that part of Arbitrator Snow's award on the proper unit placement of the AMS

---

    [4]    The previous award issued by Arbitrator Snow under the 1999
Settlement Agreement was limited to a work assignment issue and made a nearly
identical holding which the Postal Service also did sue to clarify or vacate.

Specialist position. Although the APWU is justified in its original claim to enforce
the entirety of Arbitrator Snow's award, the Postal Service's delay in implementing
that part of Arbitrator Snow's award is too damaging to continue. The Postal
Service has deprived the APWU of the benefit of the bargain for which it negotiated
in both its grievance procedure with the Postal Service as well as the supplemental
arbitration agreement of the 1999 Settlement Agreement. This benefit is one that
ultimately inures to the tens of thousands of employees represented by the APWU
by way of work and positions that should be available to them. So that the injustice
caused by the Postal Service's intransigence in the face of an arbitral loss not be
continued, however, the APWU has disclaimed interest in the AMS position and
seeks the Court's enforcement of only that part of the award assigning the AMS
work to the APWU bargaining unit.

There is no dispute that the NLRB has no jurisdiction of the work
assignment issue decided by Arbitrator Snow. Although the Postal Service
challenges the quality of Arbitrator Snow's decision on the work assignment issue,
see infra, it raises no challenge to the exclusion, particularly through a unit
clarification petition, of that issue from the NLRB's jurisdiction. Instead, the Postal
Service suggests that the work assignment issue is constructively a unit placement
issue if most or all of the work performed by the AMS Specialist is re-assigned to
APWU bargaining unit positions. (See USPS Mot. Sum. Judg. And Opp., Dkt No.
27, at 10 ("This is nothing more than a categorical transfer of the position and all of
the work...").) Such a theory, the Postal Service seems to suggest, would place the

work assignment issue within the purview of the NLRB to address. But the Postal
Service fails to cite to any NLRB authority adopting such a theory. Fundamentally,
the issues are distinct notwithstanding the possible practical consequences to which
the Postal Service alludes. Thus, what the Postal Service identifies as the most
important principle is maintained – regardless of the re-assignment of the job
duties of the AMS Specialist, the position remains outside of the bargaining unit
and the Postal Service can work the AMS Specialists positions as it wishes per the
Postal Service's design. Ancillary consequences were always in play, and the Court
should not accept the Postal Service's invitation to embroil itself in the substantive
work assignment dispute that Arbitrator Snow already decided.

Further delay in this case is unwarranted, particularly on an issue that is
valuable in its own right and which is beyond the purview of the NLRB to decide
differently. There is no benefit to the Court in awaiting a decision from the NLRB
on the unit placement award that the APWU is no longer pursuing in this
enforcement action. In furtherance of efficiency and justice, the Court should
enforce only that part of Arbitrator Snow's award concerning the work assignment
issue, and do so without waiting for or in regard to the immaterial proceedings
before the NLRB.

16

C.  In Accordance with the Postal Service's Representations, the Court Should Order the Parties to Arbitrate the Undecided Grievances Described in the 1999 Settlement Agreement in Accordance with the Process Set Forth in the Parties' Current Collective Bargaining Agreement.

The Postal Service represents, and the APWU agrees, that arbitral disposition of the undecided grievances described in the 1999 Settlement Agreement should occur in accordance with the arbitration procedure set forth in the parties' current collective bargaining agreement ("the National Agreement"). Having the undecided grievances listed in the 1999 Settlement Agreement heard in arbitration in accordance with Article 15 of the National Agreement is a solution consistent with both parties' positions. In its motion and opposition, the Postal Service represents that the inability of the parties to arbitrate their grievances in accordance with the 1999 Settlement Agreement returns the grievances to the national arbitration docket established in accordance with Article 15 of the National Agreement. Thus, reforming the 1999 Settlement Agreement's arbitration provision with Article 15 completes the 1999 Settlement Agreement without unnecessarily doing violence to the remainder of its terms, allows for resolution of the Union's grievances through arbitration, and also resolves the APWU's lawsuit seeking the Court's compulsion of arbitration.

Replacing the arbitration process of the 1999 Settlement Agreement with the Article 15 process does not require discharge of the remainder of the 1999 Settlement Agreement's terms. Although the Postal Service appears to make the contrary assumption, it cites absolutely no authority requiring such a drastic outcome. Its arguments and authority on impossibility and the death of an arbitrator are premised

17

on specific and limited contracts to submit disputes to particular arbitrators. See Backus-Brooks Co. v. Northern Pacific Railroad Co., 21 F.2d 4, 13 (8th Cir. 1927). Where, as here, the agreement embodying a term concerning a particular arbitrator is broader than just the assignment of particular disputes to a particular person, there is no authority supporting the discharge of the entirety of the agreement on the inability to perform one particular term specifically as written. It is not necessary or prudent, therefore, for the Court to nullify the entire settlement agreement in making this reformation.

This reformation resolve other disputes as well. Replacing the term providing for arbitration in the 1999 Settlement Agreement with the arbitration process in the National Agreement obviously nullifies the parties' dispute over the "dead arbitrator rule." The Article 15 process also obviates the need for the Court to decide whether the procedural condition for the next case to be scheduled have been met. Although the simple condition in the 1999 Settlement Agreement that an award be issued in the preceding grievance has undeniably been met by Arbitrator Snow's issuance of the award at issue here, Article 15 has no such requirement. Rather, Article 15 establishes a docket administered by the Postal Service that operates generally on a first-in-first-out basis, but which allows the parties to agree to a different order of having cases heard. Consistent with the Postal Service's representation that the remaining grievances are naturally returned to the Article 15 process from which they were removed, the APWU understands the Postal Service to be representing that the Article 15 process for scheduling cases, and any conditions it may impose, will now apply.

18

Finally, the Postal Service's demand that the arbitration process be stayed until the NLRB resolves the Postal Service's unit clarification petition is completely unjustified. The Postal Service is attempting to use the Court and the NLRB's processes to tell the next arbitrator that he or she risks reversal if he or she follows Arbitrator Snow's reasoning. This is another end-run around the Postal Service's agreement that "[t]he parties shall apply the national level arbitration awards which are issued as a result of this settlement agreement as broadly as possible in an effort to resolve other pending EAS grievances raising the same or similar issues or arguments." (Guffey Am. Dec. at ¶6, Ex. 1 at 2.) It is an end-run around the principle that arbitration awards like this one do not have binding precedential effect. See Fournelle v. NLRB, 670 F.2d 331, 344-345 (D.C. Cir. 1982)("Thus, it is simply inconsistent with the realities of labor arbitration to maintain that, without an express contractual term giving the results of past arbitrations precedential effect, the arbitrator's rulings are isolated utterances without a general application to the ongoing collective bargaining relationship. This is especially true, as in the present case, of arbitration awards rendered by permanent umpires...we find an adherence to arbitral precedent that is as scrupulous as a court's application of the doctrine of stare decisis.") Undoubtably it is the Postal Service's desire to avoid yet another loss, but as the APWU does not seek enforcement of the objectionable holding of Arbitrator Snow's award, the Postal Service can raise its defense in arbitration. The Court should not be deciding the merits of any issues presented by the award, and the Postal Service's demand to delay future arbitrations should not be granted.

19

III.    CONCLUSION

For the foregoing reasons and those set forth in the APWU's Motion for Summary Judgment, the Court should (1) enforce the work assignment award of Arbitrator Snow's April 27, 2003, AMS Specialist arbitration award and (2) reform the parties' 1999 Settlement Agreement by replacing the second to last paragraph of the agreement with Article 15 of the National Agreement.


Date: January 31, 2007            Respectfully submitted,

                                  O'DONNELL, SCHWARTZ & ANDERSON, P.C.

                                  By:_____
                                      Anton G. Hajjar
                                        ahajjar@odsalaw.com
                                      Melinda K. Holmes
                                        mholmes@odsalaw.com
                                      1300 L Street N.W., Suite 1200
                                      Washington, DC 20005-4178
                                      (202) 898-1707/ FAX (202) 682-9276